DANIEL F. POLSENBERG
Nevada Bar No. 2376
DPolsenberg@lrrlaw.com
DAN R. WAITE
Nevada Bar No.4078
DWaite@lrrlaw.com
MATTHEW W. PARK
Nevada Bar No. 12062
MPark@lrrlaw.com
LEWIS ROCA ROTHGERBER, LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Telephone: (702) 949-8200
Facsimile: (702) 949-8398

*Attorneys for Defendants*
*Clark County School District (CCSD);*
*Pat Skorkowsky, CCSD Board of School*
*Trustees; Erin A. Cranor; Linda E. Young;*
*Patrice Tew; Stavan Corbett; Carolyn Edwards;*
*Chris Garvey; Deanna Wright; Thurman White*
*Middle School (TWMS); Principal Andrea Katona;*
*Dean Ron Kamman; Dean April Barr; Sabreena*
*Adams; Mrs. Kim Jefferson; and Andre Long*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JASON LAMBERTH, as father in his individual capacity and estate representative of HAILEE JOY LAMBERTH; JENNIFER LAMBERTH, as mother in her individual capacity and estate representative of HAILEE JOY LAMBERTH; and JACOB LAMBERTH, brother of HAILEE JOY LAMBERTH, | Case No.:   2:14-cv-02044-APG-GWF |
| Plaintiffs, | **DEFENDANTS' MOTION TO DISMISS** |
| vs. | |
| CLARK COUNTY SCHOOL DISTRICT (CCSD); Pat Skorkowsky, in his official capacity as CCSD superintendent; CCSD BOARD OF SCHOOL TRUSTEES; Erin A. Cranor, Linda E. Young, Patrice Tew, Stavan Corbett, Carolyn Edwards, Chris Garvey, Deanna Wright, in their official capacities as CCSD BOARD OF SCHOOL TRUSTEES; THURMAN WHITE MIDDLE SCHOOL (TWMS); Principal Andrea Katona, in her individual and official capacity as principal of | |

i

TWMS; Dean Ron Kamman, in his individual and official capacity as Dean at TWMS; Dean April Barr, in her individual and official capacity as Dean at TWMS; Mrs. Kim Jefferson, in her individual and official capacity as instructor at TWMS; Sabreena Adams, as her individual and official capacity as counselor at TWMS; Andre Long, in his individual and official capacity as Academic Manager of CCSD,

Defendants.

Defendants Clark County School District ("CCSD"); Pat Skorkowsky, Clark County School District Board of School Trustees; Erin A. Cranor; Linda E. Young; Patrice Tew; Stavan Corbett; Carolyn Edwards; Chris Garvey; Deanna Wright; Thurman White Middle School ("TWMS") (a non-entity, erroneously sued); Principal Andrea Katona; Dean Ron Kamman; Dean April Barr; Sabreena Adams; Mrs. Kim Jefferson; and Andre Long, hereby move, pursuant to Fed. R. Civ. Pro 12(b)(6), to dismiss plaintiff's complaints as more fully specified herein. Defendants' motion is based on the following memorandum of points and authorities, the pleadings on file in this matter, and the oral argument of counsel as may be presented at a hearing of this matter if any.

DATED this 11th day of December, 2014.

LEWIS ROCA ROTHGERBER LLP

By: _____

DANIEL F. POLSENBERG (SBN: 2376)
DAN R. WAITE (SBN: 4078)
MATTHEW W. PARK (SBN: 12062)
LEWIS ROCA ROTHGERBER, LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

*Attorneys for Defendants Clark County School District (CCSD); Pat Skorkowsky, CCSD Board of School Trustees; Erin A. Cranor; Linda E. Young; Patrice Tew; Stavan Corbett; Carolyn Edwards; Chris Garvey; Deanna Wright; Thurman White Middle School (TWMS); Principal Andrea Katona; Dean Ron Kamman; Dean April Barr; Sabreena Adams; Mrs. Kim Jefferson; and Andre Long*

LEWIS ROCA
ROTHGERBER

ii

# TABLE OF CONTENTS

TABLE OF CONTENTS ..........................................................................................................iii

TABLE OF AUTHORITIES ....................................................................................................iv

I.    INTRODUCTION ....................................................................................................... 1

II.   RUDENESS VS. MEANNESS VS. BULLYING ........................................................ 1

III.  THE ALLEGED FACTS AND CLAIMS ................................................................... 2

IV.  THE LEGAL STANDARD—PLEADING UNDER
      *IQBAL* AND *TWOMBLY* ............................................................................................ 5

V.  LEGAL ARGUMENT .................................................................................................. 5

    A.   The First Seven Claims Must Be Dismissed Because, As a Matter of Law
        The Defendants Did Not Proximately Cause the Alleged Harm ............................ 5

        1.   Suicide Is An Intervening, Superseding Event Which Breaks The
            Line of Causation ........................................................................................ 6

        2.   Plaintiffs Have Failed to Adequately Allege that CCSD's Nonfeasance
            was the "Cause In Fact" of Hailee Lamberth's Death .................................. 7

        3.   As a Matter of Law, Hailee Lamberth's Intervening Suicide was the
            Superseding Cause of Her Death ............................................................... 8

            a.   Nevada's test for foreseeability demonstrates that Hailee's action
               was the superseding cause of her death .................................................. 9

               1)   Whether the intervention causes the kind of harm expected to
                  result from the actor's negligence .................................................... 9

               2)   Whether the intervening event is normal or extraordinary
                  under the circumstances alleged ..................................................... 10

               3)   Whether the intervening source is independent or a moral
                  result of the actor's negligence ....................................................... 11

               4)   Whether the intervening act or omission is that of a third
                  party ............................................................................................... 11

               5)   Whether the intervening act is a wrongful act that would
                  subject the actor to liability ............................................................ 11

               6)   The culpability of the intervening act .............................................. 12

               7)   Balancing the *Bower* factors .......................................................... 12

b.  In Nevada, an intervening intentional tort or crime is, as a matter of law, the superseding cause of the resulting harm ............................. 12

c.  In the wrongful death context, a decedent's voluntary suicide is, as a matter of law, the superseding cause of death ................................ 13

4.  Because Hailee's Suicide is the Superseding Cause of Her Death, Plaintiffs' Civil Rights Claims Fail as a Matter of Law .............................. 14

B.  Plaintiffs' Wrongful Death Claims Must Be Dismissed ...................................... 15

1.  Plaintiffs Have Failed to State a Claim for Which Relief Can be Granted Under NRS 41.085 ...................................................................... 15

2.  Heirs or Personal Representatives Cannot Pursue Multiple Claims For Wrongful Death ..................................................................................... 16

3.  Under Nevada Law, Hailee's Brother, Jacob Lamberth, Lacks Standing to Pursue A Wrongful Death Action ................................................ 17

4.  NRS 41.085 Does Not Allow Plaintiffs To Pursue Wrongful Death Actions Against CCSD .................................................................................. 17

C.  Plaintiff's First Claim for Relief for "Wrongful Death/Negligence" Should Be Dismissed ................................................................................................ 18

D.  Plaintiffs' Second Claim for Relief for Negligence Per Se Must Be Dismissed ___ ................................................................................................... 20

1.  Plaintiffs' Do Not Plead a Valid Wrongful Death Claim ............................. 20

2.  Plaintiffs' negligence Per Se Claim is Not a Valid Cause of Action .......................................................................................................... 20

a.  Plaintiffs have not pled a viable negligence per se claim because each cited statute lacks a private right of action ..................................... 21

b.  Plaintiffs fail to allege violations under NRS § 388.1351(2) or NRS § 388.135 that are sufficient to plead negligence per se .......... 21

c.  Plaintiffs fail to allege violations under NRS § 388.132 ...................... 22

E.  Plaintiffs' First and Second Claims are Barred by Discretionary Immunity ....... 24

F.  Plaintiffs' Third Claim for Relief for Negligent Infliction of Emotional Distress Must Be Dismissed ................................................................................... 25

LEWIS ROCA
ROTHGERBER

iv

G.   Plaintiffs' Fourth Claim for Violation of Substantive Due Process (Against All Defendants Except CCSD) Fails to State a Claim for Which Relief Can be Granted .................................................................. 26

1.   The United States Supreme Court Ruled In DeShaney That The Due Process Clause Does Not Require State Actors To Protect Private Citizens From Harmful Conduct Inflicted Upon Them By Other Private Citizen ...................................... 26

2.   The "State-Created Danger" Exception ................................ 29

3.   The Fourth Cause of Action Must Be Dismissed Because It Fails To Allege Any Affirmative Conduct and Any Deliberate Indifference By Defendants ............................................. 31

H.   Plaintiffs' Fifth Claim (*Monell* Liability) for Violations of Substantive Due Process (Against CCSD Only) Fails to State a Claim for Which Relief Can be Granted .................................................................. 33

I.   Plaintiffs' Sixth Claim For Expressive Association Against The Individual Defendants Must Be Dismissed .................................... 37

1.   Plaintiffs' Expressive Association Claim Under the First Amendment Must Be Dismissed ......................................... 37

2.   Plaintiffs' Expressive Association Claim Under the Fourteenth Amendment Must Be Dismissed ........................................ 38

J.   Plaintiffs Seventh Claim for Expressive Association Against CCSD (*Monell* Liability) Must Be Dismissed ..................................... 40

K.   Plaintiffs' Eighth Claim For Defamation Must Be Dismissed ............... 42

1.   Mrs. Lamberth Does Not Have a Viable Defamation Claim Against Any Defendants .............................................. 43

2.   The  Defamation Claim is Pled Only Against Katona and CCSD ..... 43

3.   Mr. Lamberth Has Not Pled a Viable Defamation Claim Against CCSD .................................................... 43

a.   Parental disciplinary methods are not defamatory ............... 44

b.   The statement was one of several student comments about Hailee, it was not presented as fact ............................. 45

4.   Mr. Lamberth fails to plead actual damages ......................... 46

v

L.   Plaintiffs' Ninth Claim for Relief for Negligent Infliction of Emotional Distress (Against Sabreena Adams) Must Be Dismissed .......................... 46

M.   Plaintiffs' Tenth Claim For Relief for Public Disclosure of Private Facts (Against Sabreena Adams) Must Be Dismissed ............................ 47

    1.   None of the Alleged Statements are Offensive Private Facts About Plaintiffs .......................................................................... 48

        a.   The first statement concerns Principal Katona, not Plaintiffs ............... 48

        b.   The second statement concerns the bully, not Plaintiffs ........................ 49

        c.   The third statement is not offensive or objectionable to an ordinary person .................................................................. 49

    2.   None of the Alleged Statements Were Given The "Publicity" Necessary For Public Disclosure .............................................. 49

    3.   The Alleged Statements Are Protected by the Newsworthiness Exception .......................................................................... 51

    4.   The Alleged Statements Are Protected by the Reply Privilege ................... 51

N.   Plaintiffs' Eleventh Claim For Relief For False Light Must Be Dismissed .......... 52

    1.   Plaintiffs Do Not Plead a Viable False Light Claim ..................... 53

    2.   The False Light Claim Fails Due to Lack of Publicity ................... 53

    3.   The False Light Claim Fails Because the Statement Was Not Highly Offensive to a Reasonable Person ............................... 53

    4.   The Complaint Fails to Adequately Plead "Mental Distress" .................... 54

O.   Defendant TWMS Is A School Building Not Capable Of Being Sued ............... 54

P   Plaintiffs' Request For Punitive Damages Must Be Dismissed .......................... 54

VI.   CONCLUSION ........................................................................... 57

CERTIFICATE OF SERVICE ................................................................. 58

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Alcantara v. Wal-Mart Stores, Inc.*,
130 Nev. __, __, 321 P.3d 912, 914 (2014) .................................................................... 16

*Alsenz v. Clark Cnty. School Dist.*,
109 Nev. 1062, 1064, 864 P.2d 285, 286 (1993) ........................................................ 15

*Andolino v. State*,
97 Nev. 53, 55, 624 P.2d 7, 9 (1981) .......................................................................... 24

*Arnold v. IBM Corp.*,
637 F.2d 1350, 1355 (9th Cir. 1981) ........................................................................... 14

*Arrington v. Clark County Dep't of Family Services*,
2014 WL 4699698 *5 (D. Nev., Sept. 22, 2014) ........................................................ 33

*Ashcraft v. Iqbal*,
556 U.S. 662, 678 (2009) ....................................... 5, 7, 8, 18, 21, 35, 38, 46, 47, 54, 55

*Barmettler v. Reno Air, Inc.*,
956 P.2d 1382, 1387 (Nev. 1998) ............................................................................... 54

*Bauchman v. West High Sch.*,
900 F. Supp. 254, 263-64 (D. Utah 1995) .................................................................. 55

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 555 (2007) ........................................... 5, 7, 8, 21, 35, 28, 46, 47, 54, 55

*Betsinger v. D.R. Horton, Inc.*,
232 P.3d 433, 436 (Nev. 2010) ................................................................................... 55

*Bilbrey v. Myers*,
1 So. 3d 887, 892 (Fla. Dist. Ct. App. 2012) ............................................................. 50

*Bogust v. Iverson*,
102 N.W.2d 228, 232 (Wisc. 1960) ............................................................................... 8

*Bonavito v. Nevada Prop. 1 LLC*,
2014 WL 1347051, at *1 (D. Nev. Apr. 2, 2014) ....................................................... 55

*Bonnie v. Star Spencer High Sch.*,
2005 U.S. Dist. LEXIS 21765 *7 (W.D. Okla. 2005) ................................................ 55

*Bower v. Harrah's Laughlin, Inc.*,
125 Nev. 470, 492, 215 P.3d 709, 725 (2009) ........................................... 9, 10, 12, 13, 14

*Branda v. Sanford*,
97 Nev. 643, 637 P.2d 1223, 1225–26 (1981) ........................................................... 42

*Bryan Cnty. v. Brown*,
520 U.S. 397, 410 (1997) ............................................................................................ 32

LEWIS ROCA
ROTHGERBER

*Campbell v. Richardson*,
   2006 U.S. Dist. LEXIS 16414 *7-9 (W.D. Tenn. 2006)...................................54

*Cervantes v. Health Plan of Nevada, Inc.*,
   127 Nev. Adv. Op. 70, 263 P.3d 261, 264 n.4 (2011)...................................20

*Chowdhry v. NLVH, Inc.*,
   109 Nev. 478, 483, 851 P.2d 459, 462 (1993) ...................................42, 43, 46

*City of Dallas v. Stanglin*,
   490 U.S. 19, 24 (1989) ...................................37

*Clemens v. Daimler Chrysler Corp.*,
   534 F.3d 1017, 1022 (9th Cir. 2008)...................................47

*Coppola v. Smith*, 982 F. Supp.2d 1133,
   1144 (E.D. Cal. 2013) ...................................55

*Corales v. Bennett*,
   567 F.3d 554, 572–73 (9th Cir. 2009)...................................8, 10

*Crippens v. Sav On Drug Stores*, 114 Nev. 760, 961 P.2d 761 (1998)...................................25

*Crump-Richmond v. Arambula*, 2
   007 WL 429931 *5 (D. Nev. 2007) ...................................56

*Daniels v. Williams*,
   474 U.S. 327, 331 (1986) ...................................26

*Davis v. Monroe County Bd. of Educ.*,
   526 U.S. 629, 651-52 (1999)...................................1, 4

*Davidson v. Cannon*,
   474 U.S. 344, 348 (1986) ...................................31

*DeShaney v. Winnebago County Dept. of Social Services,*
   489 U.S. 189 (1989) ...................................26, 27, 28, 29, 31, 32

*Dobson v. Sprint Nextel Corp.*,
   2014 WL 553314, at *5 (D. Nev. Feb. 10, 2014)...................................53, 54

*Doud v. Las Vegas Hilton Corp.*,
   109 Nev. 1096, 1105, 864 P.2d 796, 801 (1993) ...................................6

*Drussel v. Elko County School District*,
   2013 WL 3353531 *3 (D. Nev., July 2, 2013) ...................................35

LEWIS ROCA
ROTHGERBER

*Edberg v. Desert Palace, Inc.*, No. 2:10-cv-00873-RLH-LRL,
   2011 WL 1157301, at *2 (D. Nev. 2011) .................................................. 47

*Fakoya v. Cnty. of Clark*, No. 2:12-CV-02149-JAD,
   2014 WL 5020592, at *4 (D. Nev. Oct. 8, 2014) ..................................... 39

*Fed. Deposit Ins. Corp. v. Jones*, No. 2:13-CV-168-JAD,
   2014 WL 4699511, at *12 (D. Nev. Sept. 19, 2014) ................................ 12

*Fernandez v. Kozar*,
   107 Nev. 446, 449, 814 P.2d 68, 70 (1991) ............................................ 15

*Flores v. County of Los Angeles*,
   758 F,.3d 1154, 1159 (9th Cir. 2014).............................................. 35, 41

*Flowers v. Carville*,
   310 F.3d 1118, 1132 (9th Cir. 2002)................................................ 52, 54

*Folkerts v. City of Waverly, Iowa*,
   707 F.3d 975, 980 (8th Cir. 2013) .......................................................... 39

*Franchise Tax Board of Cal. v. Hyatt*,
   ___ P.3d ___, 2014 WL 4656423 at *12-13 ......................................... 52

*Franchise Tax Bd. of Cal. v. Hyatt*,
   130 Nev. Adv. Op. 71, 335 P.3d 125, 154 (2014)................................... 56

*Grotts v. Zahner*,
   115 Nev. 339, 989 P.2d 415 (1999) ................................................. 25, 47

*Hamm v. Carson City Nugget Inc.*,
   85 Nev. 99, 102, 450 P.2d 358, 360 (1969) ........................................... 21

*Harlow v. LSI Title Agency, Inc.*,
   2012 WL 5425722, *4 (D. Nev. 2012) ................................................... 22

*Harper v. City of Los Angeles*,
   533 F.3d 1010, 1026 (9th Cir. 2008)...................................................... 14

*Haynes v. Alfred A. Knopf, Inc.*,
   8 F.3d 1222, 1232 (7th Cir. 1993).......................................................... 51

*Hernandez v. County of Tulare*,
   666 F.3d 631, 636 (9th Cir. 2012)............................................................ 33

*Ibarra v. California Coastal Com.*,
   182 Cal.App.3d 687, 694 [227 Cal.Rptr. 371, 376 (1986)............................ 23

ix

*IDK, Inc. v. Clark Cnty.*,
   836 F.2d 1185 (9th Cir.1988) ............................................................... 37

*Jacobs v. Adelson*,
   130 Nev. Adv. Op. 44, 325 P.3d 1282, 1288 (2014) .................................. 51

*Jasperson v. Anoka-Hennepin Indep. Sch. Dist. No. 11*,
   No. A06-1904, 2007 WL 3153456, at *5 (Minn. Ct. App. Oct. 30, 2007) .................... 8

*J.K. v. Arizona Board of Regents*,
   2008 WL 4446712 *5 (D. Ariz. 2008) ................................................... 30, 31

*Judd v. Am. Tel. &Tel. Co.*,
   95 P.3d 337, 341 (Wash. 2004) ........................................................ 22, 23

*Kennedy v. City of Ridgefield*,
   439 F.3d 1035, 1062-63 (9th Cir. 2006) .................................................. 31

*Kerns v. Independent School Dist. No. 31 of Ottawa County*,
   2014 WL 4411178 *9 (N.D. Okla., Sept. 8, 2014) ........................................ 39

*Kuhn v. Account Control Tech., Inc.*,
   865 F.Supp. 1443, 1448 (D. Nev. 1994) .................................................. 49

*Kusmirek v. MGM Grand Hotel, Inc.*,
   7 F. App'x 734, 736 (9th Cir. 2001) ..................................................... 6

*Leidholdt v. L.F.P. Inc.*,
   860 F.2d 890, 895 (9th Cir. 1988) ....................................................... 48

*Long v. City of Charlotte*,
   306 N.C. 187, 293 S.E.2d 101, 114 (1982) ............................................... 56

*Lubin v. Kunin*,
   117 Nev. 107, 17 P.3d 422, 425–26 (2001) ............................................ 42, 43

*L.W. v. Grubbs*,
   974 F.2d 119, 121 (9th Cir. 1992) .................................................. 28, 29, 30

*Lytle v. Carl*,
   382 F.3d 978, 982 (9th Cir. 2004) ............................................ 34, 35, 36, 41

*MacDonald v. State of California*,
   230 Cal. App. 3d 319, 330, 281 Cal. Rptr. 317, 324 (Ct. App. 1991) ..................... 23

*Maloney v. Badman*,
   938 A.2d 883, 886 (N.H. 2007) ......................................................... 13

LEWIS ROCA
ROTHGERBER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Martinez v. Maruszczak,*
    123 Nev. 433, 445, 168 P.3d 720 (2007) ........................................ 24

*McLaughlin v. Sullivan,*
    461 A.2d 123 (N.H. 1983) .............................................................. 13

*McNeal v. Nye County School District,*
    2014 WL 293939 *3 (D. Nev., Jan. 23, 2014) ............................ 36, 42

*Monell v. New York City Dep't of Social Services,*
    436 U.S. 658 (1978) .......................... 4, 5, 33, 34, 35, 36, 37, 40, 41, 42

*Montesano v. Donrey Media Group,*
    99 Nev. 644, 668 P.2d 1081 (1983) ........................................... 48, 51

*Moore v. Chilton County Bd. of Educ.,*
    936 F. Supp.2d 1300, 1309 (M.D. Ala. 2013) ............................... 28

*Morrow v. Balaski,*
    719 F.3d 160, 163 (3rd Cir. 2013) .......................................... 2, 29, 32

*Munda v. Summerlin Life & Health Insur. Co.,*
    127 Nev. Adv. Op. 83, 267 P.3d 771, 773 n.3 (2011) ................... 20

*Munger v. City of Glasgow Police Dept.,*
    227 F.3d 1082, 1086 (9th Cir. 2000) ......................................... 30, 31

*N.K. v. St. Mary's Springs Academy of Fond du Lac Wisconsin, Inc.,*
    965 F. Supp.2d 1025, 1026 (E.D. Wisc. 2013) ................................ 1

*Newman v. State,*
    129 Nev. Adv. Op. 24, 298 P.3d 1171, 1178 (2013) ...................... 44

*Nichols v. Hager,*
    2012 WL 3135861 *4 (D. Nev., Aug. 1, 2012) .............................. 34

*Palmer v. State Gaming Control Bd.,*
    106 Nev. 151, 154, 787 P.2d 803, 804 (1990) .............................. 21

*Papsan v. Allain,*
    478 U.S. 265, 286 (1986) ................................................................ 5

*Patel v. Kent School District,*
    648 F.3d 965, 971-72 (9th Cir. 2011) .............................. 29, 30 , 31, 32

*Pegasus v. Reno Newspapers, Inc.,*
    118 Nev. 706, 57 P.3d 82, 87 (2002) ........................................ 42, 45

LEWIS ROCA
ROTHGERBER

xi

*Pembaur v. City of Cincinnati*,
  475 U.S. 469, 479-80 (1986) .......................................................................... 36

*PETA v. Bobby Berosini, Ltd.*,
  111 Nev. 615, 619 ............................................................................... 42, 52

*Peterson v. Miranda*,
  991 F. Supp.2d 1109, 1119-20 (D. Nev. 2014) ........................................... 56

*Pitman v. Thorndike*,
  762 F. Supp. 870, 871 (D. Nev. 1991) ......................................................... 16

*Porter v. Osborn*,
  546 F.3d 1131, 1137 (9th Cir. 2008) ...................................................... 38, 39

*Posadas v. City of Reno*,
  109 Nev. 448, 851 P.2d 438, 443 (1993) ..................................................... 43

*Richardson v. State Farm Fire & Cas. Co.*,
  2014 WL 2960360, at *2 (D. Nev. June 27, 2014) ....................................... 20

*Roasio v. Clark Cnty. Sch. Dist.*,
  2013 WL 3679375, at *10 (D. Nev. July 3, 2013) ........................................ 43

*Roberts v. U.S. Jaycees*,
  468 U.S. 609, 617-18 (1984) ................................................................... 37, 38

*Rodriguez-Cirilo v. Garcia*,
  115 F.3d 50, 52 (1st Cir. 1997) ................................................................... 14

*Rosenstein v. Clark County School District*,
  2014 WL 3002075 *2 (D. Nev., July 2, 2014) ............................................ 5, 8

*Sanchez v. Wal-Mart Stores, Inc.0*,
  125 Nev. 818, 824, 221 P.3d 1276, 1280 (2009) ....................... 19, 20, 22, 23

*Schmutz v. Bradford*, No. 58612,
  2013 WL 7156301, at *3 (Nev. Dec. 19, 2013) ........................................... 15

*Scialabba v. Brandise Constr. Co.*,
  112 Nev. 965, 968, 921 P.2d 928, 930 (1996) ............................................. 18

*Scoggins v. Wal-Mart Stores, Inc.*,
  560 N.W.2d 564, 570 (Iowa 1997) ............................................................... 11

*Scott v. Montgomery Cnty. Bd. of Educ.*,
  120 F.3d 262 (4th Cir. 1997) ................................................................... 7, 15

*Shoen v. Amerco, Inc.*,
   896 P.2d 469, 477 (Nev. 1995) ................................................................. 47

*Solano v. Playgirl, Inc.*,
   292 F.3d 1078, 1082, 1084 (9th Cir. 2002) .......................................... 52

*Sprewell v. Golden State Warriors*,
   266 F.3d 979, 988 (9th Cir.) ....................................................................... 7

*State v. Eighth Judicial Dist. Court*,
   118 Nev. 140, 42 P.3d 233 (2002) .................................................. 48, 49

*State ex rel Dep't of Transp. v. Hill*,
   114 Nev. 810, 818, 963 P.2d 480, 485  (1998) ............................... 25

*Stevenson v. Koskey*,
   877 F.2d 1435, 1438 (9th Cir. 1989) ................................................. 14

*Talley v. Danek Med., Inc.*,
   179 F.3d 154, 158 (4th Cir. 1999) ...................................................... 21

*Trevino v. Gates*,
   99 F.3d 911, 918 (9th Cir. 1996) ...................................................... 36

*United States v. Gaubert*,
   499 U.S. 315, 324 (1991) ......................................................................... 25

*Van Cleave v. Kietz-Mill Minit Mart*,
   97 Nev. 414, 633 P.2d 1220, 1222 (Nev. 1981) ................................. 6

*Van Ort v. Estate of Stanewich*,
   92 F.3d 831, 837 (9th Cir. 1996) ......................................................... 14

*Vasquez–Brenes v. Las Vegas Metro. Police Dep't*, No. 2:12-cv-1635 JCM VCF,
   2014 WL 4471542, at *8 (D. Nev. Sept. 10, 2014) ...................... 38

*Vega v. E. Courtyard Assocs.*,
   117 Nev. 436, 24 P.3d 219, 221 (2001) ............................................ 21

*Vidovic v. Mentor City Sch. Dist.*,
   921 F. Supp. 2d 775, 799 (N.D. Ohio 2013) ............................ 4, 7, 29, 33, 34

*Villagomes v. Labatory Corp. of Am.*,
   783 F. Supp. 2d 1121, 1126 (D. Nev. 2011) ................................... 47

*Washington v. Glucksberg*,
   521 U.S. 702, 713–14 (1997) ................................................................. 11

LEWIS ROCA
ROTHGERBER

*Webb v. Sloan*,
   330 F.3d 1158, 1164 (9th Cir. 2004) ........................................................ 34

*Wells, Inc. v. Shoemake*,
   64 Nev. 57, 177 P.2d 451 (1947) ............................................................... 16

*Wilkinson v. Torres*,
   610 F.3d 546, 554 (9th Cir. 2010) ............................................................. 38

*Williams v. City of Minneola*,
   575 So.2d 683, 689 (Fla. 5th DCA 1991) ................................................. 50

*Williams v. Underhill*,
   2008 WL 822241 *6 (D. Nev. 2008) ......................................................... 34

*Wood v. Ostrander*,
   879 F.2d 583, 589 (9th Cir. 1989) ..................................................... 26, 30

*Wyke v. Polk County School Bd.*,
   898 F. Supp. 852, 858 (M.D. Fla. 1995) ................................................... 28

*Ximines George Wingate High Sch.*,
   2008 U.S. App. LEXIS 3494 *8 (2d Cir. 2008) ........................................ 54

**STATUS**

NRS 0.010. ................................................................................................... 17

NRS 0.039 .................................................................................................... 17

NRS 41.035(1) .............................................................................................. 56

NRS 41.085 ............................................................................... 15, 16, 17, 37

NRS 41.085(2) ........................................................................................ 17, 18

NRS 42.005(1) .............................................................................................. 55

NRS 386.010(2) ............................................................................................ 24

NRS 386.110 ........................................................................................... 34, 41

NRS 388.132 ............................................................................... 21, 22, 23, 24

NRS 388.135 ............................................................................... 21, 22, 24

NRS 388.1351 ................................................................................. 3, 12, 24

LEWIS ROCA
ROTHGERBER

NRS 388.1351(2) ........................................................................................................ 21, 22

**OTHER AUTHORITIES**

*Civil Liability for Death by Suicide*, 11 A.L.R. 2d 751 (1950) ............................................ 13

W. Prosser, Law of Torts § 41 at 238–39 (4th ed. 1971)…………………………………10

## I. INTRODUCTION

There are many sad stories.  This is one of the saddest.  Beautiful 13-year-old Hailee Lamberth, a star soccer player who loved to go camping, hiking and fishing, was called names by other students at school, obtained a loaded gun at home and committed suicide on December 12, 2013.  If cases were decided on a sadness or tragedy scale, defendants would certainly be liable.  However, cases are decided on the rule and reason of law.

Plaintiffs here are Hailee's mother (Jennifer), father (Jason) and brother (Jacob).  Defendants are the Clark County School District ("CCSD"), its Superintendent, all Board of Trustee members, and the CCSD Academic Manager.  Plaintiffs also sued the principal, two deans, a counselor, and a P.E. teacher at Thurman White Middle School, the school Hailee attended when she took her own life.  The Complaint asserts eleven causes of action which include a variety of constitutional and tort claims.

When the allegations are scrutinized _not_ through a distorted lens of emotion, but through the clear optic of applicable law, each claim must be dismissed as defectively plead; almost all the claims must be dismissed with prejudice.

## II. RUDENESS VS. MEANNESS VS. BULLYING

As a preliminary matter, since this is the first time this case has come before the Court and since this case involves a tragic student death due to allegations of bullying, a few distinctions are important.  "One must be careful not to label as bullying every single instance of spiteful conduct between children." *N.K. v. St. Mary's Springs Academy of Fond du Lac Wisconsin, Inc.*, 965 F. Supp.2d 1025, 1026 (E.D. Wisc. 2013).  The United States Supreme Court recognizes that:

> Courts . . . must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults.   (Citation omitted but the Court quoted the citation as "describing [a] 'dizzying array of immature … behaviors by students'").  Indeed, at least early on, students are still learning how to interact appropriately with their peers.  It is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it.  Damages are not available for simple acts of teasing and name-calling among school children.

*Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 651-52 (1999).

1

In short, not all objectionable conduct at school constitutes bullying. Conduct which is merely rude or even mean may not constitute bullying. What's the difference?

As one scholar observed: "[I]ncidents of rudeness are usually spontaneous, unplanned inconsideration based on thoughtlessness, poor manners or narcissism, but not meant to actually hurt anyone. . . . . The main distinction between 'rude' and 'mean' behavior has to do with intention; while rudeness is often unintentional, mean behavior very much aims to hurt or depreciate someone. . . . Commonly, meanness in kids sounds an awful lot like: 'Are you seriously wearing that sweater again? Didn't you just wear it, like, last week? Get a life.' 'You are so fact/ugly/stupid/gay.' 'I hate you.' Make no mistake; mean behaviors can wound deeply . . . . Yet, meanness is different from bullying in important ways that should be understood and differentiated . . . ." S. Whitson, *Is it Rude, Is it Mean, or is it Bullying? Why We All Must Learn To Distinguish Between Rude, Mean, and Bullying Behaviors*, Psychology Today (Nov. 25, 2012) http://www.psychologytoday.com/blog/passive-aggressive-diaries/201211/is-it-rude-is-it-mean-or-is-it-bullying. Regarding bullying, the same author continues: "Experts agree that bullying entails three key elements: an intent to harm, a power imbalance and repeated acts or threats of aggressive behavior. Kids who bully say or do something intentionally hurtful to others and they keep doing it, with no sense of regret or remorse—even when targets of bullying show or express their hurt or tell the aggressors to stop." *Id.*

For present purposes, the Court need not decide whether Hailee was bullied—this motion to dismiss assumes *arguendo* she was bullied and therefore does not require resolution of that issue at this stage. What Defendants do wish the Court to keep in mind is simply that not every incident of conflict between school children constitutes bullying.

## III. THE ALLEGED FACTS AND CLAIMS

"As is so often the case, the issues in this [lawsuit] arise from unsettling facts presented by sympathetic plaintiffs." *Morrow v. Balaski*, 719 F.3d 160, 163 (3rd Cir. 2013). The Complaint alleges the following:

Hailee Lamberth was a seventh grader at Thurman White Middle School ("TWMS") where she was an honor roll student with straight A's. *See* Compl. at ¶¶ 19-20. "Recently diagnosed

2

with epilepsy, Hailee would endure petit mal and grand mal seizures at times, with grace and determination." *Id.* at ¶ 22.

C.H., a male student at TWMS began calling Hailee names around Thanksgiving time 2013, such as "fat" and "ugly." *Id.* at ¶ 27. All would agree, Hailee was neither. Officials at TWMS suspended C.H. on two separate occasions. *Id.* at ¶ 28. Hailee also experienced bullying from female students in her P.E. class, including from J.J. who would call Hailee a "fat ass," "stupid bitch," and a "slut." *Id.* at ¶ 31. Again, all false. The Complaint alleges that Hailee's P.E. teacher (defendant Kim Jefferson) witnessed the name-calling but failed to report such to the principal or principal's designee. *Id.* at ¶¶ 32-33.

On November 20, 2013, a friend reported Hailee's mistreatment on CCSD's bullying website. *Id.* at ¶ 34. Even though the reported events, as alleged in the Complaint, occurred during P.E. and in the locker room, no students in the class were interviewed. *Id.* at ¶ 36. The Complaint recites NRS 388.1351 and concludes that "whoever" received the online report of bullying was required to report such to the principal and that the principal was required to notify the parent of each involved student, but Hailee's parents were not notified. *Id.* at ¶¶ 37-39. Three weeks later, on December 12, 2013, Hailee took her life. *Id.* at ¶ 40. Hailee's father and brother found Hailee's lifeless body at home in their den. *Id.*

The Complaint alleges that CCSD's failure to notify Hailee's parents of the bullying "deprived [them] of the opportunity to intervene or access guidance and counseling services for [Hailee]." *Id.* at ¶ 1.

While the Complaint does not allege that either the principal or the CCSD Board of Trustees were aware of the November 20, 2013 on-line bullying report, it does allege that neither disclosed the bullying report when Mr. and Mrs. Lamberth met with the principal on February 6, 2014 (*id.* at ¶ 42) or when Mr. Lamberth spoke at a Board meeting on February 27, 2014 (*id.* at ¶ 43). The day following the Board meeting and in response to a newspaper article detailing Mr. Lamberth's comments to the Board, TWMS counselor (defendant Sabreena Adams) posted on Facebook as follows: "Frustrating we have been working tirelessly to help ALL these students and still get painted as the bad guys. Ps… Kid is NOT still at our school nor was he bullying her. . . .

3

1   [Principal Andrea Katona] has gone above and beyond… And she is still the monster.  We even

2   bought her younger brother Christmas and bday presents at the parents [sic] request yet were [sic]

3   still the enemy."  *Id.* at ¶ 44.  Ms. Adams' Facebook post appeared (the Complaint alleges on

4   information and belief) to an audience of more than 500 people.  *Id.*

5          On March 10, 2014, Mr. Lamberth obtained a copy of Hailee's disciplinary file which

6   contained a printout regarding the November 20, 2013 report made by Hailee's friend on the

7   CCSD bullying website and which stated: "It was reported using the bullying website that Hailee

8   was being *bothered* in PE [redaction.]  *Deans investigated and handled the incident*."  *Id.* at ¶¶ 45-

9   46 (emphasis added).**1**  This was the first time Mr. and Mrs. Lamberth "had been notified of the

10   bullying incident and the online complaint."  *Id.* at ¶ 47.  Thereafter (i.e., three months after Hailee

11   ended her own life), the Complaint alleges that CCSD conducted an investigation which included

12   interviews with at least two students and these interviews "substantiated ongoing and severe acts

13   of bullying, including physical violence, against Hailee."  *Id.* at ¶ 49.

14          The Complaint also references an internal document (referred to as a "chronology")

15   prepared by the TWMS principal (defendant Andrea Katona) which includes an entry indicating

16   that "Hailee's Dad beat her."  *Id.* at ¶¶ 51-52, 103.  The Complaint characterizes this allegation as

17   false, malicious and outrageous.  *Id.* at ¶ 52.  The "chronology" was subsequently sent by an

18   unidentified CCSD person to "a third party parent at the school."  *Id.* at ¶ 53.

19          Based on the alleged facts, Plaintiffs assert eleven claims for relief as follows: (1) wrongful

20   death/negligence, (2) wrongful death/negligence per se, (3) negligent infliction of emotional

21   distress, (4) violations of substantive due process pursuant to Section 1983 (against all defendants

22   except CCSD), (5) same as against CCSD pursuant to *Monell*, (6) violations of right of expressive

23   association, liberty interest in familial companionship pursuant to Section 1983 (against all

---

1          Defendants wish to point out that, although the report was made through the CCSD bullying website, literally anything can be reported on the website, including matters that have nothing to do with or do not rise to the level of bullying.  For example, "a conflict between friends" or "an accident" do not constitute bullying.  *See e.g., Vidovic v. Mentor City School District*, 921 F. Supp.2d 775, 795, 795 n.9 (N.D. Ohio 2013) (school district not liable even though high school girl committed suicide following alleged bullying).  Defendants further wish to point out that the Complaint indicates that CCSD "investigated" and "handled" the incident and that, after such, CCSD described the events not as Hailee being bullied but as Hailee being "bothered."  Compl. at ¶¶ 45-46.  One student merely bothering another student does not necessarily constitute actionable conduct.  *See Davis v. Monroe County Bd. of Education*, 526 U.S. 629, 651-52 (1999).

LEWIS ROCA
ROTHGERBER

1   defendants except CCSD), (7) same as against CCSD pursuant to *Monell*, (8) defamation, (9)

2   negligent infliction of emotional distress (against Sabreena Adams only), (10) public disclosure of

3   private facts (against Sabreena Adams only), and (11) false light (against Sabreena Adams only)[2].

4   **IV.   THE LEGAL STANDARD--PLEADING UNDER *IQBAL* AND *TWOMBLY***

5       "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

6   accepted as true, to state a claim for relief that is plausible on its face." *Ashcraft v. Iqbal*, 556 U.S.

7   662, 678 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

8   requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

9   action will not do. Factual allegations must be enough to raise a right to relief above the

10   speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court is also

11   "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting

12   *Papsan v. Allain*, 478 U.S. 265, 286 (1986)).

13       To state a "plausible" claim for relief, the plaintiff must "plead[] factual content that allows

14   the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."

15   *Iqbal*, 556 U.S. at 678-79. "Where the complaint does not permit the court to infer more than the

16   mere possibility of misconduct, the complaint has 'alleged—but not shown—that the pleader is

17   entitled to relief.'" *Rosenstein v. Clark County School District*, 2014 WL 3002075 *2 (D. Nev.,

18   July 2, 2014) (quoting *Iqbal*, 556 U.S. at 679). "Nor does a complaint suffice if it tenders 'naked

19   assertion[s]' devoid of 'further factual enhancements.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

20   550 U.S. at 557). "When the allegations in a complaint have not shifted from conceivable to

21   plausible, plaintiff's claim must be dismissed." *Id.* (citing *Twombly*, 550 U.S. at 570).

22   **V.   LEGAL ARGUMENT**

23       **A.   The First Seven Claims Must Be Dismissed Because, As a Matter of Law, the
             Defendants Did Not Proximately Cause the Alleged Harm**

24       Before addressing each claim individually and why such must be dismissed, Defendants

25   wish to address a general issue which applies to the first seven claims. Specifically, Plaintiffs

26   cannot allege legal causation as a matter of well-settled law. Accordingly, the causes of action

27

28   _____

[2]       Although the title to the Eleventh Claim for Relief indicates the claim is asserted against Sabreena Adams, she is not thereafter mentioned in any of the allegations. Defendants believe the title to be in error and, based on the allegations, believe the claim is intended to be asserted against Principal Katona instead.

LEWIS ROCA
ROTHGERBER

sounding in negligence (First, Second and Third Claims for Relief) and those arising under 42 U.S.C. § 1983 (Fourth, Fifth, Sixth, and Seventh Claims for Relief) must be dismissed with prejudice.

While not expressly articulated in the Complaint, the causal chain between the Defendants' alleged nonfeasance and Plaintiffs' injuries proceeds as follows: (1) Hailee was bullied at school; (2) the Defendants were notified of particular instances of bullying but failed to intervene or to notify the Plaintiff parents; (3) the bullies continued to bother Hailee; (4) Hailee obtained a loaded gun from an undisclosed source; and (5) Hailee used the handgun to take her own life in her own home. Despite the allegations of inaction by the Defendants and the multiple steps between that inaction and Hailee's affirmative act of suicide, Plaintiffs contend the Defendants were the proximate cause of Hailee's death. This argument fails. Not only have Plaintiffs failed to adequately plead causation-in-fact, they cannot allege foreseeable causation. As a matter of law, Hailee's voluntary suicide is the superseding cause of her death, and it therefore cuts off all liability for the nonfeasance alleged against the Defendants.

### 1.   Suicide Is An Intervening, Superseding Event Which Breaks The Line Of Causation

In order to maintain their various negligence claims, Plaintiffs must adequately allege that the Defendants proximately caused their harm. *Doud v. Las Vegas Hilton Corp.*, 109 Nev. 1096, 1105, 864 P.2d 796, 801 (1993).  "Proximate cause can be decided as a matter of law in Nevada." *Kusmirek v. MGM Grand Hotel, Inc.*, 7 F. App'x 734, 736 (9th Cir. 2001) (citing *Van Cleave v. Kietz-Mill Minit Mart*, 97 Nev. 414, 633 P.2d 1220, 1222 (Nev. 1981)).

"The general rule in actions brought under a wrongful death statute is that suicide is an intervening force that breaks the line of causation from the wrongful act to death." 22A Am. Jur. 2d Death § 41. "In civil actions for wrongful death, where a defendant injures another either willfully or negligently and as a result of the injury the injured person commits suicide, the act of suicide is as a matter of law an intervening independent cause of death if the decedent knew and understood the nature of his or her act or the act resulted from a moderately intelligent power of choice." *Id.*

6

### 2.  Plaintiffs Failed to Adequately Allege that CCSD's Nonfeasance was the "Cause In Fact" of Hailee Lamberth's Death

As an initial matter, Plaintiffs' allegations of proximate cause are conclusory at best. *See* Compl., ¶¶ 62–64, 75–76. Therefore, they are not entitled to any presumption of truth, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (On a Rule 12(b)(6) motion to dismiss, the court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."), and the negligence claims must be dismissed for failure to state a claim.

Furthermore, any chain of actual causation (causation-in-fact) alleged in the Complaint is entirely speculative. Indeed, Plaintiffs' theory of actual causation goes something like this: But for the Defendants' alleged nonfeasance: (1) Plaintiffs would have intervened; and (2) this intervention would have prevented Hailee from voluntarily taking her own life. Such a causal chain is purely speculative and "rests on unwarranted deductions of fact." *Id.*; *accord, Twombly*, 550 U.S. at 555 (to pass Rule 12(b)(6) muster, the factual allegations "must be enough to raise a right to relief above the speculative level . . . ."). Would the parents have intervened at the moment of Hailee's despair? Would this intervention have permanently averted Hailee's suicide? These are questions which can never be answered without pure speculation.

Several courts have concluded, as a matter of law, that a mere possibility of causation will not support a finding that a school district is liable for a student's suicide. For example, in *Scott v. Montgomery County Board of Education*, the Court rejected a nearly identical causal chain as mere "conjecture." 120 F.3d 262, *6 (4th Cir. 1997). In *Scott*, a factually similar case, the mother of a fourteen-year-old suicide victim sued the Montgomery County Board of Education and various individuals (collectively "the Board"), asserting many of the same state and federal causes of action asserted here. Specifically, the mother alleged her son communicated suicide threats to members of the Board who failed to: (1) notify her of the threats; and (2) provide required psychological counseling. The court concluded that such nonfeasance could not, as a matter of law, support a jury finding that the Board proximately caused the boy's suicide. *Id.*; *see also, e.g., Vidovic v. Mentor City Sch. Dist.*, 921 F. Supp. 2d 775, 799 (N.D. Ohio 2013) ("Further there is no identification of any action the Board could have taken that could have ensured that [the sixteen-

7

year-old student] would not be bullied, or that could have prevented her from ultimately deciding to commit suicide. As such, there is no indication that the school's alleged inaction was the "moving force" behind or constituted a direct causal link to the constitutional deprivations alleged in this case."); *Jasperson v. Anoka-Hennepin Indep. Sch. Dist. No. 11*, No. A06-1904, 2007 WL 3153456, at *5 (Minn. Ct. App. Oct. 30, 2007) (Affirming summary judgment for the school district in a wrongful death action concerning a thirteen-year-old student's suicide, because "a mere possibility of causation is not enough"); *Bogust v. Iverson*, 102 N.W.2d 228, 232 (Wisc. 1960) ("There are no facts alleged which, if proved, would establish a cause-effect relationship between the alleged nonfeasance of the defendant and the suicide of the deceased.").

Here, Plaintiffs' negligence claims (First, Second and Third Claims for Relief) lack facial plausibility and must therefore be dismissed. *Rosenstein v. Clark County School District*, 2014 WL 3002075 *2 (D. Nev., July 2, 2014) ("Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has 'alleged—but not shown—that the pleader is entitled to relief.'"); *Iqbal*, 556 U.S. at 678 ("When the allegations in a complaint have not shifted from conceivable to plausible, plaintiff's claim must be dismissed.") (citing *Twombly*, 550 U.S. at 570).

### 3. As a Matter of Law, Hailee Lamberth's Intervening Suicide was the Superseding Cause of Her Death

As a matter of well-settled law, Hailee's intervening suicide was not the foreseeable consequence of the alleged nonfeasance. *See, e.g.*, *Corales v. Bennett*, 567 F.3d 554, 572–73 (9th Cir. 2009) (holding, under California law, that where a middle school student wrote a suicide note, and otherwise acted in a way that reflected an opportunity to appreciate the nature of his action, his suicide, which was allegedly caused by a vice principal's stern, on-campus reprimand, was an unforeseeable intervening cause that, as a matter of law, precluded a finding of proximate causation); 65 C.J.S. Negligence § 231("The willful act of suicide is a new or intervening agency that breaks the chain of causation."). Therefore, the critical question is whether the suicide is a superseding cause that cuts off negligence liability.

There are three independent legal bases for concluding that Hailee's suicide is the superseding cause of her death: (1) Nevada's generalized, six-factor test for determining whether

8

an intervening act is foreseeable mandates the conclusion that her suicide is a superseding cause; (2) where, as here, the intervening act is an intentional tort or crime, it is a *per se* superseding cause under Nevada law; and (3) in the wrongful death context, the unanimous rule is that voluntary suicide is the superseding cause of death.  A conclusion that Hailee's intervening suicide constitutes a superseding cause, *under any <u>one</u> of these tests*, renders Plaintiffs' negligence claims incurably defective for lack of proximate causation.

### a. *Nevada's test for foreseeability demonstrates that Hailee's action was the superseding cause of her own death*

To determine whether an intervening cause is foreseeable, Nevada courts consider six factors:

> These include whether (1) the intervention causes the kind of harm expected to result from the actor's negligence, (2) the intervening event is normal or extraordinary in the circumstances, (3) the intervening source is independent or a normal result of the actor's negligence, (4) the intervening act or omission is that of a third party, (5) the intervening act is a wrongful act of a third party that would subject him to liability, and (6) the culpability of the third person's intervening act.

*Bower v. Harrah's Laughlin, Inc.*, 125 Nev. 470, 492, 215 P.3d 709, 725 (2009) (citing Restatement (Second) of Torts § 442 (1965)). On balance, all six of these factors demonstrate that Hailee's voluntary, intervening act of suicide was the superseding cause of her death. Therefore, the chain of legal causation is broken as a matter of law.

### 1) <u>Whether the intervention causes the kind of harm expected to result from the actor's negligence</u>

First, an intervening suicide simply does not cause the kind of harm *expected* to result from the negligence alleged. Specifically, Plaintiffs allege that the Defendants breached their duty to Hailee by: (1) failing to notify her parents of the reported mistreatment; (2) failing to provide her with a safe and respectful learning environment; and (3) failing to investigate and address the bullying she endured at school. (Compl. ¶ 61).

While the alleged nonfeasance might foreseeably result in continued bullying, nothing in the Complaint suggests school officials should have foreseen that their inaction would result in

1  young Hailee (who was not even old enough to purchase a gun or ammunition)[3] would obtain a

2  loaded gun and use it to take her own life within the protection of her own home.  Any ruling to

3  the contrary would require the Court to conclude, as a matter of law, that death by suicide is the

4  natural, expected consequence of _any_ act of bullying. Such a rule would plainly contradict any

5  reasonable notion of proximate causation. *See, e.g.*, *Corales*, 567 F.3d at 572–73.

6       In stark contrast, death is always the "expected" result of suicide.  Death is not, however,

7  the expected or foreseeable result of name-calling.  There is no allegation in the Complaint that

8  Hailee ever previously expressed a suicidal thought to any defendant or even to her own parents.

9  Thus, Hailee's intervening acts resulting in her own death is a harm different from the type

10 expected to flow from the alleged bullying. Accordingly, the first *Bower* factor supports the

11 conclusion that Hailee's intervening act of suicide broke the causal chain.

12          2)  <u>Whether the intervening event is normal or extraordinary under the circumstances alleged</u>

13

14      Nothing in the Complaint or in ordinary experience even remotely suggests that a student's

15 willful decision to take her own life is *normal*—even under the circumstances alleged here. In fact,

16 the quoted suicide note demonstrates the exact opposite. Specifically, it demonstrates that Hailee

17 took her own life, at least in part, to teach a lesson. (Compl. at ¶ 40). In other words, she sought to

18 raise awareness by committing an unusual, shocking act. This is terribly sad.  But, taking one's

19 own life to send a message is not a *normal* course of conduct; it is an *extraordinary* act—even

20 under the circumstances alleged—that cuts off negligence liability. W. Prosser & W. Keeton, Torts

21 (5th Ed. 1984) § 44, p. 311 ("[I]f one is sane, or if the suicide is during a lucid interval, when one

22 is in full command of all faculties, but life has become unendurable by reason of the injury, it is

23 agreed in negligence cases that the voluntary choice of *suicide is an abnormal thing*, which

24 supersedes the defendant's liability.") (emphasis added).

25 / / / /

26 / / / /

27 / / / /

28
_____
[3]      18 U.S.C. § 922(b)(1) (It is unlawful for a gun dealer to sell handgun ammunition to any person that the dealer has reasonable cause to believe is less than twenty-one years old).

LEWIS ROCA
ROTHGERBER

3)   Whether the intervening source is independent or a normal result of the actor's negligence

For the reasons stated above, the Complaint offers no basis from which the Court can reasonably infer that Hailee's suicide was the *normal*, or *dependent* result of the Defendants' alleged nonfeasance.

4)   Whether the intervening act or omission is that of a third party

Under the extraordinary circumstances of this case, Hailee is both an alleged victim and the intervening actor. Thus, to the extent Plaintiffs allege that Hailee is a victim (i.e., that she suffered actionable harm), her suicide was not, strictly speaking, the intervening act of a "third party." However, to the extent Plaintiffs allege they are the victims (i.e., that they have suffered actionable harm as a result of her suicide), Hailee acted as an intervening third party when she ended her life. These distinctions, though, do not change the analysis: At bottom, this factor seeks to determine whether the alleged tortfeasors (the Defendants) participated in the intervening act. *See Scoggins v. Wal-Mart Stores, Inc.*, 560 N.W.2d 564, 570 (Iowa 1997). Here, they did not. Therefore, whether Hailee is a first- or third-party actor is a distinction without a difference, and this factor supports the conclusion that her suicide was the superseding cause of her death.

5)   Whether the intervening act is a wrongful act that would subject the actor to liability

Whether styled as a crime or a self-inflicted, intentional tort, voluntary suicide is widely recognized in jurisprudence as a grave public wrong. 83 C.J.S. *Suicide* § 6 (An attempt to commit suicide is "a grave public wrong, as to which the state's compelling interest in protecting the life and promoting the health of its citizens applies"); *c.f. Washington v. Glucksberg*, 521 U.S. 702, 713–14 (1997) ("[A]lthough States moved away from Blackstone's treatment of suicide, courts continued to condemn it as a grave public wrong.") Notably, Nevada's statutory definition of murder begins with the phrase "Murder is the unlawful killing of *a* human being . . . ." NRS 200.010 (emphasis added). Thus, the crime of murder does not require the killing of *another* human being, meaning that suicide is statutorily sufficient. Of course, as a practical matter, a decedent cannot be criminally punished, but this does not render the act of killing any less

wrongful. That the vast majority of states expressly criminalize assisted suicide[4] only underscores this point.

### 6)  The culpability of the intervening act

As explained above, while suicide is inherently unsusceptible to punishment, it is analogous to, if not included within, the crime of murder. Thus, it unquestionably amounts to culpable conduct. Accordingly, the associated harm (an intentional killing) cannot be construed as the foreseeable result of a violation of NRS 388.1351.

### 7)  Balancing the *Bower* factors

Here, the balance is clear: Each of the *Bower* factors supports the conclusion that Hailee's suicide was the superseding cause of her death. She made the deliberate decisions to (1) prepare a suicide note; (2) obtain the firearm; (3) prepare the gun to fire; and (4) pull the trigger.  Nothing in the Complaint even remotely suggests that performing such an extraordinary, deliberate chain of disastrous acts is the "normal," "expected" consequence of an NRS 388.1351 violation. Therefore, as a matter of controlling Nevada law, Hailee's intervening suicide was a superseding cause that broke any chain of causation implicitly alleged in the Complaint.

### b.  *In Nevada, an intervening intentional tort or crime is the superseding cause of the resulting harm as a matter of law*

In addition to establishing the general test for determining whether an intervening cause is foreseeable or superseding, *Bower* also establishes a dispositive, bright-line rule for intervening intentional torts or crimes: "When a third party commits an intentional tort or a crime, *the act is a superseding cause*." *Bower*, 215 P.3d at 725 (emphasis added); *Fed. Deposit Ins. Corp. v. Jones*, No. 2:13-CV-168-JAD, 2014 WL 4699511, at *12 (D. Nev. Sept. 19, 2014) ("In Nevada, 'when a third party commits an intentional tort or crime, the act is a superseding cause, even when the negligent party created a situation affording the third party an opportunity to commit the tort or crime.'") (quoting *Bower*, 215 P.3d at 725).

This straightforward rule confirms what the factor test reveals: Hailee's action with a loaded gun constitutes the superseding cause of her death, and thus, it cuts off any negligence

---

[4]     *See* Glen R. McMurry, *An Unconstitutional Death: The Oregon Death with Dignity Act's Prohibition Against Self-Administered Lethal Injection*, 32 U. Dayton L. Rev. 441, 444–45 (2007).

LEWIS ROCA
ROTHGERBER

liability. Accordingly, and as a matter of law, Plaintiffs cannot allege proximate causation. Therefore, the negligence claims must be dismissed with prejudice.

### c. In the wrongful death context, a decedent's voluntary suicide is the superseding cause of death as a matter of law

Again, Plaintiffs seek to assert a tort of wrongful death. Specific to intervening acts of suicide, where an "intervening force takes the form of suicide the <u>practically unanimous rule</u> is that such act is a new and independent agency which . . . therefore does not render defendant liable for the suicide." *Civil Liability for Death by Suicide*, 11 A.L.R. 2d 751 (1950) (emphases added).

Indeed, it is firmly established that "suicide is considered a deliberate, intentional and intervening act which precludes a finding that a given defendant, in fact, is responsible for the harm." *Maloney v. Badman*, 938 A.2d 883, 886 (N.H. 2007) (citing *McLaughlin v. Sullivan*, 461 A.2d 123 (N.H. 1983)).[5] While the Nevada Supreme Court has not had occasion to address this suicide-specific rule, there is no reason to conclude that it would reject this "practically universal rule." Indeed, the foregoing *Bower* analysis demonstrates that this bright-line rule is entirely consistent with Nevada's present understanding of superseding causation. Accordingly, this Court should predict that the Nevada Supreme Court would adopt this well-established, suicide-specific rule; apply it against Plaintiffs; and dismiss the negligence claims with prejudice.

/ / / /

---

[5]     *See also, e.g.*, *McMahon v. St. Croix Falls Sch. Dist.*, 596 N.W.2d 875, 879 (Wis. Ct. App. 1999) ("Wisconsin follows the general rule that suicide constitutes an intervening force which breaks the line of causation from the wrongful act to the death and therefore the wrongful act does not render the defendant civilly liable.") (internal quotation marks omitted); *Edwards v. Tardif*, 692 A.2d 1266, 1269 (Conn. 1997)("[S]uicide generally is an unforeseeable result that serves to preclude civil liability."); *White v. Lawrence*, 975 S.W.2d 525, 530 (Tenn. 1998) ("suicide may constitute an intervening cause if it is a willful, calculated, and deliberate act of one who has the power of choice."); *Hooks SuperX, Inc. v. McLaughlin*, 642 N.E.2d 514, 520 (Ind. 1994) ("[S]uicide constitutes an intervening cause, as a matter of law, if committed by one who is sane enough to realize the effect of his actions. Suicide by a sane person is sufficient to break the causal connection between the original negligence and the suicide.") (internal citations omitted); *Scheffer v. Washington City, V.M. & G.S.R. Co.*, 105 U.S. 249, 252 (1881) ("The proximate cause of the death of Scheffer was his own act of self-destruction."); *Johnson v. Wal-Mart Stores, Inc.*, 588 F.3d 439, 442 (7th Cir. 2009) ("Traditionally, Illinois courts have found suicide to be an unforeseeable act that breaks the chain of causation required by proximate cause. It is well established under Illinois law that a plaintiff may not recover for a decedent's suicide following a tortious act because suicide is an independent intervening event that the tortfeasor cannot be expected to foresee.") (internal citations and quotation marks omitted); 25A C.J.S. Death § 234 ("The willful act of suicide is a new or intervening agency that breaks the chain of causation. A plaintiff may not recover under negligence theory for a decedent's suicide following a tortious act because suicide is an independent intervening event that the tortfeasor cannot be expected to foresee.").

13

### 4. Because Hailee's Suicide is the Superseding Cause of Her Death, Plaintiffs' Civil Rights Claims Fail as a Matter of Law

"In a § 1983 action, the plaintiff must . . . demonstrate that the defendant's conduct was the actionable cause of the claimed injury." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008) (citing *Arnold v. IBM Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981)). As with common law negligence, "[t]o meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation." *Id.* (citing *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996)); *Arnold*, 637 F.2d at 1355 ("The causation requirement of sections 1983 and 1985 is not satisfied by a showing of mere causation in fact. [Citation omitted.] Rather, the plaintiff must establish proximate or legal causation.").

Fatal to Plaintiffs' § 1983 claims, "[f]ederal courts turn to the causation factors developed in the common law of torts to supply the necessary causation factor in the civil rights field." *Stevenson v. Koskey*, 877 F.2d 1435, 1438 (9th Cir. 1989). Specifically, "[i]n applying basic tort principles to the facts raised by a particular section 1983 claim, the causation requirement may be fleshed out with reference to state law tort principles." *Rodriguez-Cirilo v. Garcia*, 115 F.3d 50, 52 (1st Cir. 1997).

Here, the Defendants have thoroughly demonstrated: (1) that Plaintiffs have failed to adequately allege causation-in-fact (Part V.A.2 *supra*); and (2) that the alleged nonfeasance was not, as a matter, of law the proximate cause of Hailee's death, (Part V.A.3, *supra*). Specifically, Defendants relied on three separate legal tests to demonstrate that Hailee's intervening suicide was a superseding cause of death, meaning that it broke any causal chain connecting Defendants' alleged nonfeasance to Plaintiffs' alleged damages. Each of these tests is firmly rooted in the common law of torts. Specifically, the two *Bower* tests are part of Nevada's common law, and they were drawn from the Restatement (Second) of Torts. *See Bower*, 215 P.3d 709, 725 (citing Restatement (Second) of Torts § 442 (1965)). Furthermore, as is demonstrated above, the "practically unanimous rule" that suicide is a superseding cause that cuts off tort liability is well established in the common law authorities. *Supra* Part V.A.3.c. Accordingly, these same rules control the § 1983 causation analysis. Thus, because any attempt to allege proximate causation would, in this case, fail as a matter of law, the § 1983 claims are incurably defective for the same

1   reason as the negligence claims. *See Scott v. Montgomery Cnty. Bd. of Educ.,* 120 F.3d 262 (4th

2   Cir. 1997). Indeed, no amendment could alter the legal conclusion that Hailee's suicide broke the

3   causal chain. Therefore, the §1983 claims (Fourth, Fifth, Sixth and Seventh Claims for Relief), like

4   the negligence claims, must be dismissed without leave to amend.

5           **B.       Plaintiffs' Wrongful Death Claims Must Be Dismissed.**

6           Plaintiffs First, Second, Sixth, and Seventh claims are styled as wrongful death actions in

7   conjunction with a claim for negligence (First and Second) or a claim for violation of Plaintiffs'

8   constitutional rights (Sixth and Seventh).    Under Nevada law, wrongful death actions must

9   proceed under Nevada's wrongful death statute, NRS 41.085. *Alsenz v. Clark Cnty. School Dist.*,

10  109 Nev. 1062, 1064, 864 P.2d 285, 286 (1993) ("Wrongful death is a cause of action created by

11  statute, having no roots in the common law."). "The statute provides that heirs and personal

12  representatives may maintain actions for wrongful death when the death is caused by the wrongful

13  act or neglect of another."   *Schmutz v. Bradford*, 2013 WL 7156301, at *3 (Nev. Dec. 19, 2013)

14  (requiring evidence of causation to establish cause of death) (unpublished) (internal quotations and

15  citations omitted); *see Fernandez v. Kozar*, 107 Nev. 446, 449, 814 P.2d 68, 70 (1991) ("[A]

16  wrongful death action ... creates an independent right in designated survivors for damages they

17  sustain by reason of the decedent's death.").

18          Plaintiffs' four wrongful death claims suffer from a number of fatal defects requiring their

19  dismissal: (1) Plaintiffs have failed to plead sufficient factual allegations to state a claim under

20  NRS 41.085, (2) Plaintiffs have improperly attempted to plead multiple wrongful death claims in

21  violation of NRS 41.085, (3) Plaintiff Jacob Lamberth does not have standing to pursue a wrongful

22  death action under NRS 41.085, and (4) NRS 41.085 does not allow for a cause of action against

23  governmental entities like CCSD.

24                    **1.  Plaintiffs' Claims Fail Under NRS 41.085.**

25          Plaintiffs' Complaint fails to allege sufficient factual allegations to set forth a cognizable

26  claim for wrongful death against Defendants.  Nowhere in their First, Second, Sixth, or Seventh

27  Claims for Relief do Plaintiffs set forth facts to support a claim under NRS 41.085 against all 16

28  Defendants.  And, as discussed above, Plaintiffs have not alleged any facts that can legally support

LEWIS ROCA
ROTHGERBER

1  an allegation that Hailee's suicide was caused by the wrongful acts or neglect of any Defendant.

2  Indeed, as a matter of law, no acts or omissions of Defendants could be the proximate cause of

3  Hailee's suicide. *See supra*, Section V.A.1-3. Accordingly, Plaintiffs' four wrongful death claims

4  must be dismissed in their entirety.

### 2. Heirs or Personal Representatives Cannot Pursue Multiple Claims For Wrongful Death.

7  According to the Complaint, it appears that Plaintiffs Jason and Jennifer Lamberth are

8  attempting to plead multiple claims for wrongful death under various negligence and expressive

9  association theories—which is not permitted under NRS 41.085. *See* Compl. at pp. 11, 13, 20, and

10  21. The Nevada Supreme Court has stated that since the common law does not provide for

11  wrongful death actions, "Nevada's statutory remedy is exclusive." *Pitman v. Thorndike*, 762 F.

12  Supp. 870, 871 (D. Nev. 1991) (*citing Wells, Inc. v. Shoemake,* 64 Nev. 57, 177 P.2d 451 (1947)).

13  In other words, NRS 41.085 is Plaintiffs' exclusive remedy with respect to wrongful death claims.

14  *See id.* "The NRS 41.085 statutory scheme creates two separate wrongful death claims, one

15  belonging to the heirs of the decedent and the other belonging to the personal representative of the

16  decedent, with neither being able to pursue the other's separate claim." *Alcantara v. Wal-Mart*

17  *Stores, Inc.*, 130 Nev. __, __, 321 P.3d 912, 914 (2014).

18  Under the statute, each <u>heir</u> pursuing a wrongful death claim is limited to pecuniary

19  damages for "grief or sorrow, loss of probable support, companionship, society, comfort and

20  consortium, and damages for pain, suffering or disfigurement of the decedent." NRS 41.085(4).

21  On the other hand, a personal representative of a decedent can only bring a wrongful death claim

22  for special damages that the decedent incurred before death, funeral expenses and "any penalties,

23  including, but not limited to, exemplary or punitive damages, that the decedent would have

24  recovered if the decedent had lived, but do not include damages for pain, suffering or

25  disfigurement of the decedent."[6] NRS 41.085(5).

26  As NRS 41.085 is Mr. and Mrs. Lamberth's exclusive remedy for the alleged wrongful

27  death of their daughter, they cannot properly allege four separate claims for the same relief against

28

---

[6]  Jason and Jennifer Lamberth appear to seek damages for Hailee's alleged pain and suffering in violation of NRS 41.085(5). This request must be dismissed. *See* Compl. at ¶¶ 62 and 87.

LEWIS ROCA
ROTHGERBER

1   Defendants.  Instead, one claim for wrongful death may be pursued each by Mr. and Mrs.

2   Lamberth as Hailee's heirs.  They are also permitted to pursue a wrongful death claim on behalf of

3   Hailee's estate.  The statute, however, does not provide heirs or the estate with additional recovery

4   by the assertion of separate claims of negligence, negligence per se, or expressive association as

5   Plaintiffs are attempting to do in their Complaint.  As NRS 41.085 is Mr. and Mrs. Lamberth's

6   exclusive remedy, these multiple claims for wrongful death must therefore be dismissed.

7            **3.  Hailee's Brother Lacks Standing To Pursue A Wrongful Death Action.**

8           To the extent Jacob Lamberth seeks to bring a wrongful death action, his claim must be

9   dismissed for lack of standing.  Under NRS 41.085(2), claims for wrongful death may only be

10  brought by the heirs of the decedent and the personal representatives of the decedent.  In the

11  Complaint, Plaintiffs do not allege that Hailee's brother, Jacob, is an heir or personal

12  representative of Hailee's estate—likely because they can't.  *See* Compl. at ¶ 5.  NRS 41.085(1)

13  defines an "heir" as "a person who, under the laws of this State, would be entitled to succeed to the

14  separate property of the decedent if the decedent had died intestate."  Nevada law on intestate

15  succession provides that siblings are not heirs to an estate when the decedent's parents are living.

16  *See* NRS 134.050(3). As Jason and Jennifer Lamberth are Hailee's surviving parents, Jacob is not

17  entitled to succeed to Hailee's separate property and therefore is not Hailee's legal heir.  Absent an

18  allegation that Jacob is a representative of Hailee's estate, Jacob's claims for wrongful death must

19  be dismissed without leave to amend.

20           **4.  NRS 41.085 Does Not Allow Wrongful Death Actions Against CCSD.**

21          Lastly, any wrongful death claims against CCSD are prohibited.  NRS 41.085(2) allows

22  heirs and the estate to each maintain an action for damages "against the *person* who caused the

23  death."  (Emphasis added).  However, CCSD is not a "person" subject to liability under NRS

24  41.085(2).  More specifically, NRS Chapter 41 does not define "person" but NRS Chapter 0 does

25  define the term and expressly excludes political subdivisions like CCSD.  That is, the definitions

26  contained in Chapter 0 "apply to Nevada Revised Statutes as a whole" (NRS 0.010) and NRS

27  0.039 defines a "person" to include "a natural person, any form of business or social organization

28

17

and any other nongovernmental legal entity . . . [but] <u>does not include</u> a government, governmental agency or <u>political subdivision of a government</u>."  (Emphasis added.)

Since only a "person" can be liable under NRS 41.085(2) and since CCSD is not a "person," Plaintiffs' First and Second claim for Relief fails to state a claim against CCSD and must therefore be dismissed without leave to amend.  Accordingly, to the extent Plaintiffs seek to assert a wrongful death action in their First, Second, Sixth, or Seventh Claims for Relief, those claims must be dismissed for failure to state a claim against Defendants.

### C.   Plaintiff's First Claim for Relief for "Wrongful Death/Negligence" Should Be Dismissed

Plaintiffs' First Claim for Relief is styled as a "Wrongful Death/Negligence" claim and is brought by all "all plaintiffs against CCSD Defendants."  Compl. at p. 11.  Defendants are unable to locate a claim for Wrongful Death/Negligence recognized under Nevada law.  To the extent Plaintiffs seek to bring a claim for wrongful death, such claim fails for the reasons stated above.  However, to the extent Plaintiffs seek to bring a negligence claim either on their own behalf or on behalf of Hailee, Plaintiffs have failed to state a claim for negligence as a matter of law.

In order to state a negligence claim, Plaintiffs must allege: (1) Defendant(s) owed them a duty of care; (2) Defendant(s) breached this duty of care; (3) the breach was the legal and proximate cause of their injury; and (4) Plaintiffs suffered damages. *Scialabba v. Brandise Constr. Co.*, 112 Nev. 965, 968, 921 P.2d 928, 930 (1996) (internal citation omitted). Plaintiffs' negligence claim fails on several grounds.

As an initial matter, Plaintiffs lump all defendants together and generally allege "Defendants breached their duty to Hailee."  Compl. at ¶ 61.  Critically, Plaintiffs fail to allege any facts that suggest each of the 16 named Defendants owed a duty to them or otherwise engaged in acts constituting negligence.   Accordingly, Plaintiffs' allegations fall far short of the *Iqbal* standard, which requires them to  plead "factual content that allows the court to draw a reasonable inference that *the defendant* [i.e., each defendant] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678-79 (emphasis added).

_____

To the extent Plaintiffs seek to bring a negligence claim against Defendants in their individual capacities, the Complaint fails to provide any factual allegations to suggest that any specific defendant owed a duty of care to them, much less, breached that duty.   It is well-established that no duty is owed to control the dangerous conduct of another or to warn others endangered by such conduct.   *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.,* 125 Nev. 818, 824, 221 P.3d 1276, 1280 (2009).   An exception to this rule arises when a (1) special relationship exists between the defendant and the dangerous person or between the defendant and the identifiable victim, and (2) the harm created by the defendant's conduct is foreseeable.   *Id.* at 824, 221 P.3d at 1281.   Plaintiffs do not allege that any Defendant owed Jason, Jennifer, or Jacob a duty of care by virtue of a special relationship or otherwise.   Rather, Plaintiffs merely allege that "Defendants" had a special relationship with Hailee and "breached their duty to Hailee."   Compl. at ¶¶ 58 and 61.

To the extent Plaintiffs seek to allege a negligence claim on Hailee's behalf based upon a special relationship between Hailee and Defendants, there are no facts to suggest that any harm to Hailee, including her death, was foreseeable or was created by the conduct of any Defendant.   *See supra*, Section V.A.   The Complaint alleges Defendants were aware of only one incident where Hailee was allegedly bullied prior to her suicide.   Plaintiffs allege that in November 2013, a fellow student reported that Hailee was being "bothered" in P.E. class.   Compl. at ¶ 31.   Plaintiffs also allege that Hailee's school disciplinary file notes that the school's deans "investigated and handled the incident," resulting in a student conference.   *See id.* at ¶ 46.   There are no allegations of further reported incidents.   Absent from the Complaint are any allegations that suggest any Defendant was aware that Hailee would commit suicide because of the incident or because of Defendants' alleged response to the incident.[7]   Indeed, Plaintiffs do not allege that Hailee indicated to any Defendant that she intended to harm herself in any way, much less, intended to commit suicide as a result of the alleged bullying—allegations which are needed to show foreseeability and causation.   While these pleading defects could potentially be cured through amendment, amendment should be denied because Hailee's act of suicide constitutes an intervening, superseding cause which

---

[7]    In fact, Hailee's suicide note does not refer to the same student that was bothering her in P.E. class as relayed in the November 2013 report, but appears to refer to another student and/or unrelated incident(s). *Compare* Compl. at ¶ 31 with Compl. at ¶ 40.

LEWIS ROCA
ROTHGERBER

1  precludes, as a matter of law, Plaintiffs' ability to plead proximate causation (Section V.A.,

2  *supra*)—i.e., no amount of amending can cure that legal defect.

3       Accordingly, Plaintiffs' negligence claim must be dismissed for failure to state a claim.

4  **D.**     **<u>Plaintiffs' Second Claim for Relief for Negligence Per Se Must Be Dismissed</u>**

5       **1.**     **Plaintiffs Do Not Plead a Valid Wrongful Death Claim**

6       Similar to the First Claim for Relief, Plaintiffs' Second Claim for Relief attempts to

7  combine wrongful death and negligence per se in one claim, brought by "all Plaintiffs against

8  CCSD Defendants." Compl. at p. 13. In the interest of judicial economy, the Defendants fully

9  adopt and incorporate their prior arguments as to why Plaintiffs have failed to state any claim for

10  wrongful death in this second cause of action, *supra*.

11       **2.**     **Plaintiffs' Negligence Per Se Claim is Not a Valid Cause of Action**

12       Turning to Plaintiffs' negligence per se claim, "[n]egligence and negligence per se . . . are

13  in reality only one cause of action." *Cervantes v. Health Plan of Nevada, Inc.*, 127 Nev. Adv. Op.

14  70, 263 P.3d 261, 264 n.4 (2011). Plaintiffs concede that "negligence per se is a method of

15  establishing the duty and breach elements of a negligence claim." *See* Compl. at ¶ 66; *accord,*

16  *Munda v. Summerlin Life & Health Insur. Co.*, 127 Nev. Adv. Op. 83, 267 P.3d 771, 773 n.3

17  (2011) ("In their complaint, the Mundas pleaded negligence per se as a separate cause of action

18  from negligence; however, it is not a separate cause of action...."). This Court recently explained

19  "[a]lthough sometimes pled as such, negligence per se is *<u>not a separate cause of action</u>*...."

20  *Richardson v. State Farm Fire & Cas. Co.*, 2014 WL 2960360, at *2 (D. Nev. June 27, 2014)

21  (emphasis added). In that case, Judge Mahan dismissed plaintiff's negligence per se claim with

22  prejudice, "as the absence of a cause of action cannot be cured through amendment." *Id.*

23  Defendants request that the Court dismiss this entire cause of action with prejudice; it is

24  cumulative of Plaintiffs' preceding negligence claim.

25       Negligence per se exists, if at all, to establish the duty and breach elements of a negligence

26  claim when 1) the injured party is in the class of persons whom the statute is intended to protect,

27  and 2) the injury is the kind the statute is intended to protect. *Sanchez ex rel. Sanchez v. Wal-Mart*

28  *Stores, Inc.*, 125 Nev. 818, 828, 221 P.3d 1276, 1283 (2009). Whether a particular statute

LEWIS ROCA
ROTHGERBER

20

establishes a duty of care in a negligence action is a question of law.  *Vega v. E. Courtyard Assocs.,* 117 Nev. 436, 24 P.3d 219, 221 (2001). In this case, Plaintiffs improperly base their negligence per se claim on alleged violations of various Nevada statutes.[8] NRS 388.1351(2), 388.135, and 388.132; *see also* Compl. at ¶¶ 67, 68, 71.

### a. Plaintiffs' negligence per se claim fails because each cited statute lacks a private right of action

None of the statutes cited by Plaintiffs contain a private right of action; a necessary prerequisite to Plaintiffs' suit. *See* Compl. at ¶¶ 67, 68, 71. The negligence per se doctrine "is not a magic transforming formula that automatically creates a private right of action for the civil enforcement, in tort law, of every statute." *Talley v. Danek Med., Inc.,* 179 F.3d 154, 158 (4th Cir. 1999).  Indeed, the law is explicit – without identifying a private right of action, a private party <u>cannot</u> sue for a violation of any statute.  *Hamm v. Carson City Nugget Inc.,* 85 Nev. 99, 102, 450 P.2d 358, 360 (1969) (negligence per se cannot be based on violation of statute which does not provide a private right of action).

The lack of an express private right of action in any of the cited statutes is fatal to Plaintiffs' negligence per se claim. *See e.g.,* NRS 388.1351(2), 388.135, and 388.132. Further, nothing in these statutes or their legislative history indicates the Nevada Legislature *intended* a private right of action. Taken together, the absence of an express or implied private right of action disposes of Plaintiffs' entire second claim for relief.[9] *Palmer v. State Gaming Control Bd.,* 106 Nev. 151, 154, 787 P.2d 803, 804 (1990) (absence of private right of action is fatal).

### b. Plaintiffs fail to allege violations of NRS 388.1351(2) or NRS 388.135 that are sufficient to plead negligence per se

Setting aside the dispositive private right of action issue, Plaintiffs must still allege that each of the Defendants violated specific statutes, enacted to protect Plaintiffs, and that they were

---

[8]      Plaintiffs also make a conclusory reference to Chapter 392 (Compl. at ¶ 74), but without specific factual allegations, Defendants simply cannot address it and it must be ignored. *See Iqbal* and *Twombly* and standards set forth in Section IV, *supra*.

[9]      "[T]he absence of an express provision providing for a private cause of action to enforce a statutory right strongly suggests that the Legislature did not intend to create a privately enforceable judicial remedy." *Baldonado v. Wynn Las Vegas, LLC,* 124 Nev. 951, 959, 194 P.3d 96, 101 (2008). Indeed, unless a statute provides for a private right of action, there is none. *Larson v. Homecomings Fin., LLC,* 680 F. Supp. 2d 1230, 1236 (D. Nev. 2009) (absent a private right of action, there is no predicate for a negligence per se claim).

harmed by that specific statutory violation. *See Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 828.  For example, NRS 388.1351(2) requires: 1) a principal or her designee to initiate an investigation 1 day after receiving notice of a NRS 388.135 (bullying) violation; 2) to provide written notice of a reported violation "to the parent or legal guardian of each pupil involved in the reported violation" which includes 3) a statement that the principal or her designee is available to discuss counseling or intervention services; 4) the investigation must be completed within 10 days; and 5) recommendations of possible discipline if a violation is found. *See id.*

Specifically, NRS 388.1351(2) imposes a legal duty on "the principal or his or her designee" to provide a written report on the NRS 388.135 violation, and no one else. *Id.* Accepting Plaintiffs' allegations as true, if this statute is violated, there is no liability for anyone *other* than the principal or her designee. *See* Compl. at ¶¶ 65-77. Plaintiffs ignore the textual strictures of the statute, broadly proclaiming that "CCSD Defendants [failed] to abide by the notification mandates." *See* Compl. at ¶ 69. This imprecise allegation invents statutory duties for several Defendants where there are none. Turning to the plain language of the statute, this cause of action must be dismissed as to every Defendant other than Principal Katona. *See id.*

However, as explained above, because this statute does not contain a private right of action, there is no viable negligence per se claim against Principal Katona, either. *See e.g., Harlow v. LSI Title Agency, Inc.,* 2012 WL 5425722, *4 (D. Nev. 2012) (dismissing negligence per se claim with prejudice where statutes did not provide for a private right of action).

### c.  *Plaintiffs fail to allege violations of NRS 388.132*

Plaintiffs state that the legislature "codified its goals" for an optimal student learning environment in NRS 388.132. *See* Compl. at ¶ 71. Yet, despite this hopeful phrasing, courts have found that legislative "goals" and "declarations" are <u>not</u> "codified" legal obligations. *See e.g., Judd v. Am. Tel. &Tel. Co.,* 95 P.3d 337, 341 (Wash. 2004) (when the legislature uses the phrase "the legislature finds" it "sets forth policy statements that do not give rise to enforceable rights and duties"). This specific statute (NRS 388.132) is simply a prefatory legislative declaration identifying an "intended goal" of student safety and respect. *See* NRS 388.132. It is well-recognized that these types of aspirational statements do not give rise to enforceable rights and

LEWIS ROCA
ROTHGERBER

duties. *See Judd*, 95 P.3d at 341. Accordingly, because the statute does not impose any legal duty on Defendants, they cannot be liable for failure to comply with the statute's aspirational statements.

Tellingly, the Nevada legislature used "the legislature declares" to begin NRS 388.132, a nearly identical phrase to "the legislature finds" used in *Judd*, both of which signal non-binding policy statements. *See id.; see also MacDonald v. State of California*, 281 Cal. Rptr. 317, 324 (Ct. App. 1991) (Plaintiff "cannot create a mandatory duty" from a legislative declaration of "policy goals.") In *MacDonald*, the court construed a similar legislative declaration, which set forth a "responsibility to ensure the health and safety of children in family homes that provide day care." *Id.* at 320. In dismissing plaintiff's claim, that court found "the Legislature's declaration…is a general declaration of policy goals, rather than safeguards against injuries of any particular kind. [The plaintiff] cannot create a mandatory duty from such a general statement of legislative policy." *Id.* at 324; *see also Ibarra v. California Coastal Com.*, 227 Cal.Rptr. 371, 376 (1986) (affirming dismissal because "the sections plaintiffs rely on do not impose mandatory duties…they are recitations of legislative goals and policies").[10]

Likewise, based on the plain language of NRS § 388.132, the aspirational legislative goals articulated in the statute do not impose mandatory duties on Defendants. "A negligence per se claim arises when a duty is created by statute." *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 828. Because there is no duty, Defendants cannot be liable for negligence per se. *Cf.* Compl. at ¶¶ 71-73.

Finally, even without these defects, an amendment would be futile because Hailee's superseding act of suicide prevents Plaintiffs from pleading proximate cause, as a matter of law.

For all of the foregoing reasons, Plaintiffs' negligence per se claim must be dismissed as to all Defendants.

////

////

---

[10]   *See also Common Cause of California v. Board of Supervisors*, 49 Cal.3d 432, 444,777 P.2d 610 (1989) ("The precatory declaration of intent expressed in the statute must be read in context as a principle to guide the Secretary of State in promulgating appropriate regulations. It cannot be viewed as independently creating substantive duties ....").

23

LEWIS ROCA
ROTHGERBER

### E.   **Plaintiffs' First and Second Claims are Barred by Discretionary Immunity**

An alternative basis exists for dismissal of the First and Second Claims for Relief.  The State of Nevada has generally waived sovereign immunity for itself and various identified individuals, agencies, and political subdivisions, through the enactment of NRS 41.031. However, NRS 41.032 provides an exception called the "discretionary function exception." Therefore, in situations contemplated by NRS 41.032, political subdivisions (like CCSD)[11] and its employees are not just free from liability, they are actually immune from suit and have a right to avoid the cost and delay of discovery and trial. *See Andolino v. State,* 97 Nev. 53, 55, 624 P.2d 7, 9 (1981), *appeal after remand,* 662 P.2d 346 (1983) and NRS 41.032 ("no action may be brought").

Government actions are entitled to discretionary-act immunity when they (1) involve an element of individual judgment or choice, and (2) are based on considerations of social, economic, or political policy. *Martinez v. Maruszczak*, 123 Nev. 433, 445, 168 P.3d 720 (2007) (adopting this *Berkovitz-Gaubert* two-prong test). To the extent Plaintiffs' negligence and negligence per se claims are based on Defendants' "[failure] to provide [Hailee] with a safe and respectful learning environment; by failing to investigate the bullying she endured, and by failing to address the harassment and pervasive bullying Hailee faced at Thurman White Middle School" they are barred by discretionary immunity. *See e.g.,* Compl. at ¶¶ 61, 67, 70, 72.[12]

First, Defendants have discretion to address bullying allegations on a case by case basis, including the method and depth of investigation. None of the statutes cited in the Amended Complaint dictate a mandatory, inflexible method of *investigating* or *disciplining* in bullying cases.[13] Thus, the Defendants' investigatory and disciplinary actions are discretionary and satisfy the first prong of the test. *Martinez v. Maruszczak*, 123 Nev. 433, 445. Second, when a governmental entity permits a public employee to use discretion, "it must be presumed that the

---

[11]    CCSD is a political subdivision of the State of Nevada.  NRS 386.010(2).

[12]    *See* ¶¶ 61 ("[failure] to provide [Hailee] with a safe and respectful learning environment; by failing to investigate the bullying she endured, and by failing to address the harassment and pervasive bullying Hailee faced"),  67 ("failure to ensure safety of Hailee"), 70 ("failure to implement appropriate disciplinary and safety strategies to protect Hailee"), 72 ("failure to provide a safe and respectful learning environment").

[13]    *See e.g.,* NRS 388.132 (aspirational legislative declaration, no legal duty is imposed on educators); NRS 388.135 (prohibits bullying by students and teachers, no mandated action for school officials); NRS 388.1351(1) (school officials shall make a verbal report of a bullying violation on the day witnessed, and complete any *justified* investigation within 10 days – does not mandate the scope or depth of the report, nor does it mandate a disciplinary outcome).

24

1   agent's acts are grounded in policy when exercising that discretion." *See United States v. Gaubert*,

2   499 U.S. 315, 324 (1991). Here, the Defendants' investigatory and disciplinary actions concern a

3   tremendously important point of public policy; addressing bullying allegations while also protecting

4   the rights of the accused student bully.[14]  Accordingly, the Defendants' actions meet the second

5   prong of the discretionary immunity test.

6       Where Plaintiffs' First and Second Claims are premised on allegations that Defendants

7   improperly investigated, addressed or disciplined student activity, Defendants are entitled to the

8   discretionary immunity afforded to them in NRS 41.032.

9   **F.   Plaintiffs' Third Claim for Relief for Negligent Infliction of Emotional Distress**

10      **Must Be Dismissed.**

11      Jason's and Jacob's claim for negligent infliction of emotional distress ("NIED"), which is

12  premised upon the assertion they were "immediate family bystander[s]" fails as a matter of law.

13  Compl. at p. 15.  The Complaint's allegations clearly demonstrate that Jason and Jacob were not

14  bystanders to and did not witness Hailee's suicide.  To prevail on a NIED claim, Jason and Jacob

15  must prove that (1) Defendant(s) negligently committed an injury upon another, (2) Jason and

16  Jacob are closely related to the victim of the accident, (3) they were located near the scene of the

17  accident, and (4) they suffered a shock resulting from the sensory and contemporaneous

18  observance of the accident.  *See Crippens v. Sav On Drug Stores*, 114 Nev. 760, 961 P.2d 761

19  (1998); *see also State ex rel Dep't of Transp. v. Hill*, 114 Nev. 810, 818, 963 P.2d 480, 485  (1998)

20  (holding NIED plaintiffs must witness serious injury to a loved one) abrogated on other grounds by

21  *Grotts v. Zahner*, 115 Nev. 339, 989 P.2d 415 (1999).

22      First, Plaintiffs do not identify which Defendant(s) they are seeking to bring their NIED

23  claim against in order for Defendants to appropriately respond to the allegations—again, failing to

24  plead sufficient factual allegations to suggest they are entitled to relief here.

25      Second, the Complaint admits that neither Jason nor Jacob Lamberth witnessed Hailee's

26  suicide, i.e., as required by the fourth element articulated in *Crippens*, they did not suffer damage

---

27

28  [14]      School administrators who are called upon to investigate and implement discipline upon student
bullies must resolve "a tension that exists between public school anti-bullying policies and the First
Amendment's guarantee of free speech."  *Glowacki ex rel. D.K.G. v. Howell Public School Dist.*, 2013 WL
3148201 *1 (E.D. Mich. 2013).

LEWIS ROCA
ROTHGERBER

resulting from the "sensory and contemporaneous observance of the accident."  Compl. at ¶ 80 ("Jason and Jacob Lamberth . . . discovered Hailee's body after her death").  There is no doubt Jason and Jacob experienced much grief as a result of their discovery of Hailee's body after she committed suicide; however, such grief did not result from the sensory or contemporaneous observance of the incident.  Accordingly, Plaintiffs Jason and Jacob Lamberth cannot recover on a NIED claim because they were not bystanders to Hailee's suicide.  That is, Jason and Jacob Lamberth presumably would have suffered to the same extent and degree as they did regardless of whether they discovered Hailee's body 2 hours or 2 days after her demise.  However, this kind of tort does not compensate for the injuries associated with losing Hailee; rather, in context of this case, it compensates for the injuries of watching in horror as she took her own life.  The Complaint makes clear that neither Jason nor Jacob witnessed Hailee's suicide.  Presumably, even if allowed an opportunity to amend, such would now result in a completely new story wherein Plaintiffs allege Jason and Jacob actually witnessed Hailee's suicide, so amendment here would be futile.

Accordingly, the Third Claim for Relief must be dismissed without leave to amend.

### G.  Plaintiffs' Fourth Claim for Violation of Substantive Due Process (Against All Defendants Except CCSD) Must Be Dismissed

Plaintiff's Fourth Claim for Relief attempts to assert a Section 1983 claim for violations of the substantive due process clause of the Fourteenth Amendment against all Defendants except CCSD.  This cause of action also fails to state a claim upon which relief can be granted.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  The Due Process Clause has both a procedural and a substantive component.  "[S]ubstantive due process violations comprise those acts by the state that are prohibited 'regardless of the fairness of the procedures used to implement them.'"  *Wood v. Ostrander*, 879 F.2d 583, 589 (9th Cir. 1989) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

#### 1.  The United States Supreme Court Ruled In *DeShaney* That The Due Process Clause Does Not Require State Actors To Protect Private Citizens From Harmful Conduct Inflicted Upon Them By Other Private Citizens

In 1989, the United States Supreme Court decided the tragically sad case of *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189 (1989).  There, four-year-old Joshua

LEWIS ROCA
ROTHGERBER

DeShaney was beaten and permanently injured by his father, with whom he lived (no mother was in the home).  Indeed, the little boy was beaten so severely that he fell into a life-threatening coma—Joshua did not die from these injuries but suffered brain damage so severe that he was expected to spend the rest of his life confined to an institution for the profoundly retarded.

Prior to the last beating which put Joshua into a coma, several reports were made to county agencies regarding the father's abusive behavior, but those agencies disregarded the "red flags" and failed to protect Joshua.  More specifically, the following facts demonstrated the county's knowledge of the father's abuse and its failure to protect Joshua:

- The father's second wife reported to the county department of social services (DSS) that the father hit Joshua causing marks and that the father was a "prime case for child abuse."  <u>DSS took no action other than to accept the father's denials.</u>

- A few months later, the local hospital reported to DSS that Joshua was admitted with multiple bruises and abrasions which the examining physician suspected were caused by child abuse.  As a result of the foregoing, DSS obtained a court order placing Joshua in temporary custody but shortly thereafter <u>consented to return Joshua to his father's custody</u> when the father entered into a cooperation agreement with DSS.

- A month later, Joshua's caseworker (DSS) was advised by the hospital that Joshua had again been treated for suspicious injuries.  <u>DSS took no action.</u>

- During the next six months, the caseworker visited Joshua's home on a monthly basis and discovered (1) many suspicious injuries on Joshua, and (2) Joshua's father was not complying with the cooperation agreement.  The caseworker recorded her observations and suspicions in her file notes but otherwise <u>DSS took no action.</u>

- A few months later, the hospital again advised DSS that Joshua had been treated for new injuries believed to have been caused by child abuse.  On the caseworker's next two visits to Joshua's home, she was told Joshua was too ill to see the caseworker but <u>she took no action.</u>

- Four months later, Joshua was again beaten by his father and rendered profoundly retarded.  The father was tried and convicted of child abuse.

Thereafter, Joshua, through his mother, filed an action against the county, the DSS and various DSS employees.  Specifically, as here, the mother filed a claim under 42 U.S.C. § 1983 for substantive due process violations.  The district court granted summary judgment in favor of the defendants, which was affirmed by the Seventh Circuit Court of Appeals.  The United States Supreme Court granted certiorari to resolve inconsistent approaches taken by the lower courts.

In *DeShaney* the United States Supreme Court affirmed summary judgment in favor of the defendants.  While the Court recognized the Due Process Clause protected citizens from the

1   conduct of *state actors*, the Court held that "nothing in the language of the Due Process Clause

2   itself requires the State to protect the life, liberty, and property of its citizens against invasion by

3   *private actors*." 489 U.S. at 195 (emphasis added). In other words, the purpose of substantive due

4   process is "to protect the people from the State, not to ensure that the State protected them from

5   each other." 489 U.S. at 196. "<u>As a general matter, then, we conclude that a State's failure to

6   protect an individual against private violence simply does not constitute a violation of the Due

7   Process Clause</u>." 489 U.S. at 197 (emphasis added); *accord, L.W. v. Grubbs*, 974 F.2d 119, 121

8   (9th Cir. 1992) ("As a general rule, members of the public have no constitutional right to sue state

9   employees who fail to protect them against harm inflicted by third parties.").

10      As a corollary, except in the case of involuntarily committed mental patients (not involved

11   here), state actors have no constitutional duty to protect citizens from harming *themselves*.  *See*

12   *DeShaney*, 489 U.S. at 195 (although the Constitution "forbids the State itself to deprive

13   individuals of life, liberty, or property without due process of law, . . . its language cannot fairly be

14   extended to impose an affirmative obligation on the State to ensure that those interests do not come

15   to harm through other means"); *Moore v. Chilton County Bd. of Educ.*, 936 F. Supp.2d 1300, 1309

16   (M.D. Ala. 2013) (substantive due process claim dismissed because school Board not liable for

17   death of student who committed suicide following bullying because "the Board did not owe a

18   constitutional duty to protect [student] from harm by other students or ultimately *from herself*")

19   (argument of defendants which court adopted, emphasis added); *Wyke v. Polk County School Bd.*,

20   898 F. Supp. 852, 858 (M.D. Fla. 1995) ("the School Board had no constitutional duty to protect

21   [student who committed suicide] from himself and the failure to do so does not constitute a

22   violation of the Due Process Clause for which the…School Board may be held liable."). It must be

23   remembered, albeit with sadness, that Hailee committed suicide in her own home and not at

24   school. Therefore, any attempt to hold school officials liable for Hailee's death not only requires

25   the creation of a duty where none exists (*DeShaney*) but it also then elevates that duty over the

26   paramount and pre-existing duty of parents to protect their own children within their own home.

27   In short, it would be both illogical and without authority to contend a school teacher has a higher

28   duty to protect students within their own home than the student's parents—for, with duties come

28

correlative rights and *school officials have no rights to control a child inside a parent's own home*. Certainly, students "continue to be primarily dependent upon their parents for their care and protection [most especially within their own home], not on their schools." *See e.g., Morrow v. Balaski*, 719 F.3d 160, 173 (3d Cir. 2013); *Vidovic v. Mentor City School District*, 921 F. Supp.2d 775, 791 (N.D. Ohio 2013) ("While it may seem that a school, of all places, should provide a safe and supportive environment for the children in its care, it is well settled that a school does not meet the requisite level of control over its students to give rise to a constitutional duty to protect.").

Based on *DeShaney* itself, the Fourth Claim for Relief would have to be dismissed. However, following *DeShaney*, two exceptions to this general rule have developed. Only one of those exceptions (the state-created danger exception) is alleged by Plaintiffs here. However, as alleged, the Fourth Claim for Relief fails to state a claim upon which relief can be granted.

### 2. The "State-Created Danger" Exception

Two distinct exceptions have arisen to the *DeShaney* general rule that state actors have no duty to protect persons from violence inflicted upon them by private actors: (1) the "special relationship" exception, stemming from a custodial relationship between the state and the victim, and (2) the "state-created danger" exception, stemming from affirmative conduct on the part of the state in placing the plaintiff in danger. *See e.g., L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992); *accord, Patel v. Kent School District*, 648 F.3d 965, 971-72 (9th Cir. 2011). Here, the Fourth Claim for Relief attempts to invoke the "state-created danger" exception (the "special relationship" exception is not alleged in the Fourth Claim for Relief). *See* Compl. at ¶ 84. Thus, only the state-created danger exception is evaluated here and, having failed to properly plead essential elements, the cause of action must be dismissed.

The premise of the state-created danger exception to non-liability is that state actors should not escape liability when their *affirmative conduct* creates the danger which allows the victim to be harmed by the private actor. So, for example, courts have found the state-created danger exception might apply in the following situations:

- A state trooper arrested an intoxicated driver and impounded his car, leaving the female passenger in a known high crime area at 2:30 a.m., wearing only a blouse and jeans in cold weather, with no way home. She subsequently accepted a ride

LEWIS ROCA
ROTHGERBER

from a man who took her to a secluded area and raped her. *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989).

• State prison officials promised plaintiff, a nurse employed by the state's medium-security custodial institution, that she would not have to work alone with inmates who were known violent sex offenders. Subsequently, however, those officials assigned an inmate, known to have dangerous propensities, to work alone with plaintiff. The inmate then beat, robbed and raped the plaintiff nurse. *L.W. v. Grubbs*, 974 F.2d 119 (9th Cir. 1992).

• University officials were repeatedly advised that a football player, living in the dorms, was engaged in a variety of inappropriate conduct, including physically intimidating and making threatening remarks to female staff members, making inappropriate sexual remarks to females, grabbing and inappropriately touching females and exposing his genitalia to female staff members. When interviewed by university officials, the football player stated that he wanted women to fear him and he wanted to "show them their place." The football player was not expelled but advised that he would be expelled upon the next incident and indeed was subsequently expelled. During the time of his expulsion, school officials evaluated whether to allow him back into school—a report identified the football player as "the highest risk individual" in the group of freshman football players. Even so, the football player was allowed to return to school and live in the dorms. A few months thereafter, the football player raped a female student living in his same dorm building. *J.K. v. Arizona Board of Regents*, 2008 WL 4446712 (D. Ariz. 2008).

In each of these instances, the court found that the state actor engaged in affirmative conduct which created a danger for the victim which would not have otherwise existed without the state actor's affirmative conduct.

From these and other cases, two requirements exist which must be alleged and satisfied in order for application of the "state-created danger" exception to the general rule of non-liability. "First, the exception applies only where there is 'affirmative conduct on the part of the state in placing the plaintiff in danger.'" *Patel v. Kent School District*, 648 F.3d 965, 974 (9th Cir. 2011) (quoting *Munger v. City of Glasgow Police Dept.*, 227 F.3d 1082, 1086 (9th Cir. 2000)). This is the so-called "affirmative conduct" prong of the "state-created danger" exception. "Second, the exception applies only where the state acts with 'deliberate indifference' to a 'known or obvious danger.'" *Patel*, 648 F.3d at 974 (citing *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996)). This is the "deliberate indifference" prong.

Regarding the "affirmative conduct" prong, as the name suggests, a mere failure to act will not satisfy the requirement. The reason is that the state actor did not make the situation worse, he simply did not make it better. In other words, to state a claim for a violation of substantive due process rights under Section 1983, facts must be alleged which demonstrate the state actor's

LEWIS ROCA
ROTHGERBER

affirmative conduct "left the person in a situation that was more dangerous than the one in which they found him." *Kennedy v. City of Ridgefield*, 439 F.3d 1035, 1062-63 (9th Cir. 2006); *Munger v. City of Glasgow Police Dept.*, 227 F.3d 1082, 1086 (9th Cir. 2000).  After all, "the Due Process Clause . . . was intended to prevent government 'from abusing [its] power, or employing it as an instrument of oppression'" (*DeShaney*, 489 U.S. at 196 (quoting *Davidson v. Cannon*, 474 U.S. 344, 348 (1986))) and a state actor does not abuse or employ his power as an instrument of oppression through non-action.

"In other words, a state actor cannot affirmatively place an individual in danger merely by failing to act, regardless of how reprehensible that failure may be; substantive due process is violated only when a state actor engages in affirmative conduct that enhances the danger to which an individual . . . is exposed." *J.K. v. Arizona Board of Regents*, 2008 WL 4446712 *5 (D. Ariz. 2008) (citing many cases).[15]  Thus, to state a claim, the plaintiff must allege facts demonstrating that defendants' <u>affirmative actions</u> placed the plaintiff "in danger that [he] otherwise would not have faced." *Kennedy*, 439 F.3d at 1063.

Here, there is no allegation that any Defendant affirmatively acted and thereby placed Hailee in greater danger than already existed.  Nor is there any allegation that Defendants acted with deliberate indifference to a known or obvious danger.  The most the Complaint says is that the individual defendants stood idly by and did not make the situation better as Plaintiffs had hoped.  Such is insufficient to state a claim for substantive due process violations—affirmative conduct and deliberate indifference must be alleged, but are missing here as will now be demonstrated.

### 3. The Fourth Claim Must Be Dismissed Because It Fails To Allege Any Affirmative Conduct and Any Deliberate Indifference By Defendants

A state actor violates a plaintiff's substantive due process right under the state-created danger exception when a state actor engages in "affirmative conduct" that places a plaintiff in danger <u>*and*</u> acts with "deliberate indifference" to a "known and obvious danger." *Patel v. Kent*

---

[15] As the Ninth Circuit graphically stated in *Ketchum v. Alameda County*, 811 F.2d 1243, 1247 (9th Cir. 1987): "[T]here is no constitutional right to be protected by the state against being murdered by criminals or madmen.  It is monstrous if the state fails to protect its residents against such predators but it does not violate the due process clause of the Fourteenth Amendment or . . . any other provision of the Constitution."

LEWIS ROCA
ROTHGERBER

1  *School Dist.*, 648 F.3d 965, 974 (9ᵗʰ Cir. 2011).  Here, paragraph 84 of the Complaint fails to

2  properly allege the "affirmative conduct" and the "deliberate indifference" prongs.

3      No doubt, paragraph 84 states that "these defendant state actors engaged in affirmative

4  conduct" but then identifies the "affirmative conduct" in terms of *inaction*, i.e., in terms of what

5  the individual defendants *failed to do*.  More specifically, paragraph 84 identifies the "affirmative

6  conduct" as (1) "ignoring [CCSD] policies and Nevada law related to bullying at public schools",

7  (2) "failing to report bullying of decedent Hailee Joy Lamberth", and (3) failing "to protect her

8  from such bullying while she was a student at [TWMS]."  These allegations do not identify

9  "affirmative conduct;" rather, the Complaint "simply attempts to redefine clearly passive inaction

10  as affirmative acts."  *Morrow v. Balaski*, 719 F.3d 160, 178 (3d Cir. 2013).  As the court stated in

11  *Morrow*, "the Complaint attempts to morph passive inaction into affirmative acts.  However,

12  merely restating the Defendants' inaction as an affirmative failure to act does not alter the passive

13  nature of the alleged conduct."  719 F.3d at 179.  In short, the Fourth Cause of Action fails to

14  assert any affirmative conduct and must be dismissed.

15      Additionally, the Fourth Claim for Relief fails to allege defendants' deliberate indifference.

16  "Deliberate indifference is 'a stringent standard of fault, requiring proof that a municipal actor

17  disregarded a known or obvious consequence of his action.'"  *Patel*, 648 F.3d at 974 (quoting

18  *Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)).  Indeed, "deliberate indifference requires a

19  culpable mental state.  (citation omitted.)  The state actor must 'recognize[] [an] unreasonable risk

20  and actually intend[] to expose the plaintiff to such risks without regard to the consequences to the

21  plaintiff."  *Id.*  Here, paragraph 84 states in conclusory terms that defendants placed Hailee "in a

22  known and obvious danger," but completely fails to identify any deliberate indifference and further

23  fails to attribute any culpable mental state to any defendant.  Accordingly, the Fourth Claim for

24  Relief must be dismissed on this ground as well.

25      In short, the words of the United States Supreme Court in *DeShaney* are applicable here:

26  / / / /

27  / / / /

28  / / / /

32

1
2
3
4
5

> Because . . . [CCSD] had no constitutional duty to protect [Hailee] against [the bully's or her own] violence, its failure to do so—though calamitous in hindsight—simply does not constitute a violation of the Due Process Clause. Judges and lawyers, like other humans, are moved by natural sympathy in a case like this to find a way for [Hailee's parents] to receive adequate compensation for the grievous harm inflicted upon them. But before yielding to that impulse, it is well to remember once again that the harm was inflicted not by [CCSD or its employees], but by [the bullies and Hailee herself]. The most that can be said of the state functionaries in this case is that they stood by and did nothing when suspicious circumstanced dictated a more active role for them."

6

489 U.S. at 202-03.

7

8        Tragic and sad as this case is, the allegations simply do not state a claim upon which relief

9   can be granted. As one court declared in holding a school district not liable for alleged

10  constitutional deprivations when a student took her own life: "There can be no question that

11  however desperate and hopeless [the student] may have perceived her alternatives to be at the time,

12  she made the decision to take her own life. The Constitution does not require the state to

13  implement procedures to protect citizens from themselves." *Vidovic v. Mentor City School

14  District*, 921 F. Supp.2d 775, 793 (N.D. Ohio 2013). And, since the allegations fail to state a claim

15  as a matter of law, dismissal must be without leave to amend. *E.g., Arrington v. Clark County

16  Dep't of Family Services*, 2014 WL 4699698 *5 (D. Nev., Sept. 22, 2014).[16]

17  **H.    Plaintiffs' Fifth Claim (*Monell* Liability) for Violations of Substantive Due Process
        (Against CCSD Only) Fails to State a Claim for Which Relief Can be Granted**

18       Plaintiffs' Fifth Claim for Relief is essentially a repeat of the Fourth Claim but is asserted

19  against CCSD pursuant to *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978).

20  More specifically, Section 1983 suits against governmental bodies alleging violations of

21  constitutional rights by governmental officials cannot rely on respondeat superior liability. *AE ex

22  rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). However, "[a] school

23

24  _____
    [16]     "The doctrine of qualified immunity protects government officials from liability for civil damages
25  insofar as their conduct does not violate clearly established statutory or constitutional rights of which a
    reasonable person would have known." *Sandoval v. Las Vegas Metro. Police Dep't*, 854 F. Supp. 2d 860,
26  871-72 (D. Nev. 2012) (internal quotations and citations omitted). It is not just an affirmative defense
    against claims brought under § 1983, it is also an immunity to suit. *Ashcroft*, 556 U.S. at 672. Qualified
27  immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v.
    Briggs*, 475 U.S. 335, 341 (1986). It shields officials from money damages unless a plaintiff pleads facts
28  showing (1) the official violated a statutory or constitutional right, and (2) that right was "clearly
    established" at the time of the challenged conduct. *See Ashcroft v. al.-Kidd*, 131 S. Ct. 2074, 2080
    (2011). As set forth above, Plaintiffs have failed to plead sufficient facts showing that the individual
    defendants violated their substantive due process rights (or any other statutory or constitutional
    right). Therefore, the individual defendants are immune from suit on Plaintiffs' Fourth Claim for relief.

LEWIS ROCA
ROTHGERBER

district's liability under *Monell* may be premised on any of three theories: (1) that a district employee was acting pursuant to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or (3) that a district employee was acting as a 'final policymaker.'" *Lytle v. Carl,* 382 F.3d 978, 982 (9th Cir. 2004); *accord, Nichols v. Hager*, 2012 WL 3135861 *4 (D. Nev., Aug. 1, 2012) (citing *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2004)).

First, the Fifth Claim must be dismissed for the same reasons the Fourth Claim must be dismissed; most notably, (a) that no constitutional duty is imposed on any CCSD defendant to protect Hailee from the alleged bullies or from herself in her own home, i.e., no constitutional right was violated by these defendants,[17] and (b) the Fifth Claim for Relief fails to allege any "affirmative conduct" and instead relies on inactions. The inquiry need go no further. *See Williams v. Underhill*, 2008 WL 822241 *6 (D. Nev. 2008) ("No liability exists under § 1983 where no injury or constitutional violation occurred.").

Second, the Fifth Claim must be dismissed as to each Board member (defendants Cranor, Young, Tew, Corbett, Edwards, Garvey and Wright) because, as set forth above, all three *Monell* requirements apply only to the conduct of "a district *employee*" and Board members are elected officials, not district employees. NRS 386.110 et seq. Clearly, Board members serve at the will of the electorate and cannot be terminated by the CCSD, as district employees can. Therefore, to the extent the Fifth Claim relies upon the acts (or omissions) of the school Board members (Compl. at ¶¶ 90-91), the claim must be dismissed for failure to state a claim upon which relief can be granted.

Third, there is no allegation in this case that a CCSD employee was acting pursuant to an "expressly adopted official policy." *Lytle*, 382 F.3d at 982.

Fourth, if this were a law school exam, plaintiffs would get credit for their shotgun recitation of buzz words. However, pleading a cause of action is not a pedagogical exercise in

---

[17]    *See Vidovic v. Mentor City School District*, 921 F. Supp.2d 775, 799 (N.D. Ohio 2013) where a 16-year-old high school student committed suicide allegedly due to bullying and plaintiff parents sought to impose liability against the school district and others based, *inter alia*, on a *Monell* claim under Section 1983. In dismissing the *Monell* claim, the court stated: "the school's failure to stop third parties from harming [the student] (in this case the bullies, and/or [the student], herself), although tragic and arguably preventable, does not rise to the level of a constitutional violation."

LEWIS ROCA
ROTHGERBER

formulaically reciting relevant catch-phrases.  Here, the Fifth Claim uses terms such as "deliberate indifference" and "ratifi[cation]."  However, such is clearly insufficient to survive a motion to dismiss.  *Iqbal*, 556 U.S. 662; *Twombly*, 550 U.S. 544.  Indeed, although "[a] municipality may be held liable for a constitutional violation if a final policymaker ratifies a subordinate's actions, . . . [a] mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim."  *Lytle*, 382 F.3d at 987.  Here, paragraph 91 alleges that "the unconstitutional actions of these individual defendants were ratified by Pat Skorkowsky, acting in his official capacity as superintendent and final decision maker of Defendant [CCSD]."  Since the alleged "unconstitutional actions" of the individual defendants were inactions, it is difficult to imagine how a failure-to-act is ever ratified, and the Complaint fails to allege such other than the conclusory (and, therefore, legally insufficient) statement that "unconstitutional actions . . . were ratified by" Superintendent Skorkowsky.  *Id.*  If the Superintendent affirmatively acted to ratify "the unconstitutional actions of these individual defendants," it should have been easy to assert facts demonstrating those affirmative acts.  On the other hand, if the Superintendent's ratification of Defendants' inactions was itself an inaction (i.e., "a mere failure to overrule a subordinate's actions"), such "is insufficient to support a § 1983 claim."  *Lytle*, 382 F.3d at 987 ("ratification requires . . .the policymaker *specifically approved* of the subordinate's act") (emphasis added).

Fifth, it is difficult to discern whether Plaintiffs intend to assert a § 1983 claim for *Monell* liability on the basis that CCSD allegedly failed to properly train the individual defendants.  *See* Compl. at ¶ 91.  However, even if such was Plaintiffs' intent, the allegations are not sufficient.  "A *pattern of similar constitutional violations* by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train . . . ."  *Flores v. County of Los Angeles*, 758 F,.3d 1154, 1159 (9th Cir. 2014) (emphasis added); *accord, Drussel v. Elko County School District*, 2013 WL 3353531 *3 (D. Nev., July 2, 2013) ("Critically, for purposes of both aspects of his *Monell* claim, plaintiff does not allege any other instances of—or a pattern of— constitutional violations to show the existence of a de facto policy or to show that the school district was on notice of a need for training.").  Here, there is no allegation of any pattern of constitutional violations.

LEWIS ROCA
ROTHGERBER

35

Similarly, sixth, paragraph 91 makes reference to "the customs and de facto policies of Defendant [CCSD] of ignoring its own policies and Nevada law"[18] and it is difficult to tell whether Plaintiffs intend to advance a claim under the second *Monell* prong as set forth in *Lytle*—i.e., "that a district employee was acting pursuant to a longstanding practice or custom." *Lytle*, 382 F.3d at 982.   No doubt, "although the touchstone of the § 1983 action against a government body is an allegation that *official policy* is responsible for a deprivation of [constitutional] rights . . ., local governments . . . may be sued for constitutional deprivations visited pursuant to governmental *'custom'* even though such custom has not received formal approval through the body's official decisionmaking channels."  *Monell*, 436 U.S. at 690-91 (emphasis added).  However, to allege *Monell* liability due to a deprivation of constitutional rights through a custom, the custom must be "so permanent and well settled as to constitute a 'custom or usage' with the force of law."  *Monell*, 436 U.S. at 691.  Here, even though paragraph 91 uses the catch phrase "custom and de facto policies" in support of the Fifth Claim, there is no allegation that CCSD's custom of "ignoring its own policies and Nevada law related to harassment at public schools and failing to report bullying" was so permanent and well settled as to constitute a custom with the force of law.  Indeed, the Fifth Claim fails to mention anything other than as it relates to Hailee (i.e., no facts alleged demonstrating the "custom" had become permanent and well settled) and therefore it fails to state a claim for *Monell* liability based on custom.  *See e.g., Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.").   Facts have not been alleged to demonstrate a permanent and well settled custom.

Seventh, *Monell* requires "courts to 'distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'"  *McNeal v. Nye County School District*, 2014 WL 293939 *3 (D. Nev., Jan. 23, 2014) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469,

---

[18]   Curiously, Plaintiffs seem to allege that CCSD's policy was to ignore its policies.  Such is circular and not plausible on its face.  *See Iqbal*, 556 U.S. at 678.

LEWIS ROCA
ROTHGERBER

479-80 (1986) (emphasis in original)).  Here, the Fifth Claim, while hard to decipher, appears to rely upon the acts of the school district's employees and not acts of the school district.

For all the foregoing reasons, the Fifth Claim seeking to establish *Monell* liability against CCSD must be dismissed.  And, because of Plaintiffs' inability to allege proximate cause due to Hailee's superseding suicidal act, both the Fourth and Fifth Claims for Relief must be dismissed without leave to amend because amendment would be futile, as a matter of law.

**I.**     **Plaintiffs' Sixth Claim For Expressive Association Against The Individual Defendants Must Be Dismissed.**

Plaintiffs, in their individual capacities, allege the individual defendants violated their constitutional rights of expressive association under the First and Fourteenth Amendment to the U.S. Constitution.   *See* Compl. at ¶ 96.   Plaintiffs label the claim as a "wrongful death" claim; however, as explained above, this claim must be dismissed because Plaintiffs cannot bring multiple claims for wrongful death when NRS 41.085 provides Plaintiffs with their exclusive remedy.  Nevertheless, when the allegations of Plaintiffs' claim for  expressive association under the First and Fourteenth Amendment are scrutinized, they fail to state a claim against Defendants.

**1.**     **Plaintiffs' Expressive Association Claim Under the First Amendment Must Be Dismissed.**

There are two different types of "freedom of association" that are protected by the First Amendment.  *City of Dallas v. Stanglin*, 490 U.S. 19, 24 (1989).  The first is called "intimate association," which protects an individual's choice to enter into and maintain certain human relationships free from unwarranted government interference.  *Id.* at 24 (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984)).  Plaintiffs do not assert that Defendants' actions impinged on this type of right to associate, as the allegations in the Complaint repeatedly refer to "expressive association," which is the second type of association protected by the Constitution.   *Id.  See* Compl. at ¶¶ 96.

Expressive association protects association for the purpose of engaging in protected speech or religious activities.  *See City of Dallas*, 490 U.S. at 24; *IDK, Inc. v. Clark Cnty.*, 836 F.2d 1185 (9th Cir.1988) ("The First Amendment's freedom of association protects groups whose activities are explicitly stated in the amendment: speaking, worshiping, and petitioning the government.")  It

requires "both an organization (the association itself) and a purpose (a First Amendment activity)." Randall P. Bezanson, Sheila A. Bentzen, and C. Michael Judd, *Forms of Expressive Association*, 40 Pepp. L. Rev. 23, 25 (2012).  As explained by the U.S. Supreme Court, "[i]mplicit in the right to engage in activities protected by the First Amendment" is "a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts*, 468 U.S. at 622.

Here, Plaintiffs do not identify the conduct that each Defendant is alleged to have engaged in that supposedly violated their rights to expressive association, other than generally claiming that Defendants violated their substantive due process rights.  *See* Compl. at ¶¶ 95- 96.  However, as set forth above (Section V.G), Plaintiffs have failed to state a claim for violation of the substantive due process clause.

Additionally, Plaintiffs conclusorily allege Defendants violated their "right of expressive association" with Hailee, but do not identify the expressive activity that Plaintiffs are allegedly engaged in, much less, some sort of political, religious, or other viewpoints that are advocated by Plaintiffs in pursuit of their association.  *See id.* at ¶ 96.  Such omissions are fatal to their claim as Plaintiffs are required not only to provide notice of the claim asserted, but also "the grounds upon which it rests" to survive dismissal.  *Twombly*, 550 U.S. at 555.   Plaintiffs, therefore, have not stated a claim for violation of their First Amendment expressive association rights.[19]

### 2. Plaintiffs' Expressive Association Claim Under the Fourteenth Amendment Must Be Dismissed.

"The Ninth Circuit has recognized that family members have a Fourteenth Amendment liberty interest in familial companionship and society."  *Vasquez–Brenes v. Las Vegas Metro. Police Dep't*, No. 2:12-cv-1635 JCM VCF, 2014 WL 4471542, at *8 (D. Nev. Sept. 10, 2014) (citing *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010)).   Accordingly, "[o]fficial conduct that 'shocks the conscience' in depriving parents of that interest [with their children] may be cognizable as a violation of due process."  *Id.* (*citing Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008)).   Plaintiffs "must identify conduct so egregious, so outrageous, that it may fairly be

---

[19]    It should be noted that Defendants were not the legal cause of the alleged intrusion upon  Plaintiffs' freedom of association with Hailee, *see* Section V.A.3.  Hailee made the decision to take her own life and thereby caused the cessation of whatever right of association Plaintiffs' had with her.

LEWIS ROCA
ROTHGERBER

said to shock the contemporary conscience." *Fakoya v. Cnty. of Clark*, No. 2:12-CV-02149-JAD, 2014 WL 5020592, at *4 (D. Nev. Oct. 8, 2014).  *See e.g., Porter*, 546 F.3d at 1137 ("The parties mistakenly suggest that the choice is between "shocks the conscience" and "deliberate indifference" as the governing standard, when in fact the latter is one subset of the former.)

As discussed in Sections V.G and V.H above, Plaintiffs have failed to state a claim for violation of their substantive due process rights.  Absent from the Complaint are any conscience-shocking allegations (the Complaint does not even conclusorily state, as it so often does in other regards, that Defendants' conduct "shocks the conscience").  In paragraph 95 of the Complaint, Plaintiffs conclusorily allege that Defendants engaged in "affirmative conduct" that placed Hailee in danger but then go on to describe the "affirmative conduct" in terms of Defendants' alleged inaction (*i.e.* "ignoring [CCSD] polices and Nevada law related to harassment at public schools and failing to report [Hailee's] bullying…or protect her from such bullying…").  However, as a matter of law, none of these allegations when viewed in the context of the Complaint can be considered to shock the conscience.  *See e.g., Folkerts v. City of Waverly, Iowa*, 707 F.3d 975, 980 (8th Cir. 2013) ("Whether conduct shocks the conscience is a question of law."); *Kerns v. Independent School Dist. No. 31 of Ottawa County*, 2014 WL 4411178 *9 (N.D. Okla., Sept. 8, 2014) (In a Fourteenth Amendment case, "[w]hether specific conduct shocks the conscience is a question of law for the Court.").

Indeed, the allegations in paragraph 46 of the Complaint undermine any contention that Defendants' conduct shocks the conscience.  In that paragraph, Plaintiffs allege that Hailee's disciplinary file shows that when Thurman White Middle School received a report in November 2013 that Hailee was being "bothered in PE," the school's deans "investigated and handled the incident," resulting in a student conference.  *See* Compl. at ¶ 46.  Defendants' response, as alleged by Plaintiffs, cannot be viewed as shocking, egregious, or outrageous.  Accordingly, Defendants' alleged actions or inaction are not the sort of conscience-shocking behavior that will support a claim under the Fourteenth Amendment.[20]

---

[20]     *See e.g., Obenchain v. Reg'l Transp. Comm'n of S. Nev.*, No. 2:14-CV-00807-RCJ, 2014 WL 3696306, at *2 (D. Nev. July 23, 2014) (finding that Clark County's and RTC's use and placement of bus shelters on the side of the road does not "shock the conscience" because "[e]ven assuming Defendants had

LEWIS ROCA
ROTHGERBER

And, although Plaintiffs allege that Defendants' "unconstitutional actions…were done knowing the harm it would cause to Plaintiffs," there are no factual allegations on the face of the Complaint to support this conclusory statement.  *See* Compl. at ¶ 96.  Indeed, there are no allegations that any Defendant took any actions or deliberately failed to act knowing Hailee would take her own life weeks later.  *See Iqbal*, 556 U.S. at 678 (The modern pleading standard demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action.")

Accordingly, Plaintiffs Sixth Claim for expressive association must be dismissed in its entirety.[21]

## J.     Plaintiffs Seventh Claim for Expressive Association Against CCSD (*Monell* Liability) Must Be Dismissed

In their Seventh Claim for Relief, Plaintiffs, in their individual capacities, allege CCSD violated their constitutional rights of expressive association under the First and Fourteenth Amendment to the U.S. Constitution.  *See* Compl. at ¶ 99.   Many of the same reasons Plaintiffs' Fifth Claim for *Monell* liability must be dismissed demonstrate that Plaintiffs' Seventh Claim for *Monell* liability must also be dismissed.

First, Plaintiffs' Seventh Claim, styled as a wrongful death claim, must be dismissed as Plaintiffs cannot allege multiple claims for wrongful death as discussed in detail above.

Second, as set forth above in Section V.I, Plaintiffs have not set forth an expressive association claim under the First or Fourteenth Amendment.  Plaintiffs do not identify what expressive activity they are engaged in.  Nor do they allege they are part of a group organized for political, social, economic, educational or religious purposes to support a claim under the First Amendment's freedom of expressive association.  Further, Plaintiffs fail to allege any facts to suggest that Defendants engaged in any conduct that shocks the conscience to deprive them of their liberty interest under the Fourteenth Amendment.

---

been aware of past crashes into bus stops, mere recklessness…does not satisfy the very high standard required to sustain a substantive due process claim, which must allege something very close to intent, and in some cases actual intent.").
[21]     *See supra*, n.16.  The individual defendants are entitled to qualified immunity on Plaintiff's Sixth Claim for relief as they have failed to plead sufficient facts showing that the individual defendants  violated their rights to expressive association or any other statutory or constitutional right.

LEWIS ROCA ROTHGERBER

Third, there is no allegation that a CCSD employee was acting pursuant to an "expressly adopted official policy" when Plaintiffs' expressive association rights were allegedly violated to support *Monell* liability.  *Lytle*, 382 F.3d at 982.

Fourth, to the extent the Seventh Claim relies upon the acts (or omissions) of the school Board members (Compl. at ¶¶ 99-100), the claim must be dismissed because the *Monell* requirements apply only to the conduct of "a district *employee*" and Board members are elected officials, not district employees.  NRS 386.110 et seq.

Fifth, Plaintiffs conclusorily allege, as they did in paragraph 91 in their Fifth Claim, that "the unconstitutional actions of these individual defendants were ratified by Pat Skorkowsky, acting in his official capacity as superintendent and final decision maker of Defendant [CCSD]." Compl. at ¶ 100.  Plaintiffs, however, do not identify what actions Mr. Skorkowsky allegedly took to ratify the "actions" of  the district employees to allow the Court to determine whether such conduct can be considered ratification for purposes of a § 1983 claim.  *See Lytle*, 382 F.3d at 987 ("A mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim.")

Sixth, to the extent Plaintiffs seek to allege a § 1983 claim for *Monell* liability based upon a theory that CCSD allegedly failed to properly train the individual defendants, Plaintiffs have alleged nothing more than conclusory allegations, a recitation of certain elements of the claim or buzz words to those elements that are legally insufficient to state a claim for failure to train under *Monell*.  *See* Compl. at ¶ 100 (constitutional rights were allegedly violated and caused by the "inadequate and arbitrary training, supervision, and discipline of these individual defendants" and CCSD's "deliberate indifference").   As explained above in Section V.H, for purposes of  a failure to train claim, a pattern of similar constitutional violations by untrained employees must ordinarily be shown.  *Flores*, 758 F.3d at 1159.  Plaintiffs have not alleged a  pattern of violations here.

Seventh, paragraph 100 makes reference to "the customs and de facto policies of Defendant [CCSD] of ignoring its own policies and Nevada law."  To the extent Plaintiffs seek to allege that CCSD had an official policy or custom to ignore its owns policies or Nevada law that caused the alleged constitutional harm, Plaintiffs have failed to plead sufficient factual allegations to show

41

1    that such alleged custom was so permanent or well settled to constitute an established custom with

2    the force of law.  *See Monell*, 436 U.S. at 691 (explaining the custom must be "so permanent and

3    well settled as to constitute a 'custom or usage' with the force of law").

4        Eighth, Plaintiffs' *Monell* claim for expressive association appears to impermissibly rely

5    upon the acts of the school district's employees and not acts of the school district as is required to

6    "make clear that municipal liability is limited to action for which the municipality is actually

7    responsible.'"  *McNeal v. Nye County School Dist*., 2014 WL 293939 *3 (D. Nev., Jan. 23, 1014).

8        Accordingly, Plaintiffs' Seventh Claim for *Monell* liability against CCSD must be

9    dismissed for failure to state a claim.

10   **K.      Plaintiffs' Eighth Claim For Defamation Must Be Dismissed**

11       "Defamation is a publication of a false statement of fact." *Pegasus v. Reno Newspapers,*

12   *Inc.,* 118 Nev. 706, 57 P.3d 82, 87 (2002). Plaintiffs Jason and Jennifer Lamberth allege that *each*

13   of the Defendants defamed them due to Ms. Katona's alleged written statement that "Hailee's Dad

14   beat her." *See* Compl. at ¶ 103. To survive a motion to dismiss a plaintiff must claim "(1) a false

15   and defamatory statement by defendant concerning the plaintiff; (2) an unprivileged publication to

16   a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages."

17   *Chowdhry v. NLVH, Inc.,* 109 Nev. 478, 483, 851 P.2d 459, 462 (1993).[22]

18       The determination of whether a statement is capable of a defamatory construction is a

19   question of law. *Branda v. Sanford,* 97 Nev. 643, 637 P.2d 1223, 1225–26 (1981). Here, Plaintiffs

20   provide only a sliver of the entire relevant statement, insinuating defamatory content where there is

21   none. Further, Plaintiffs improperly titled this claim against all Defendants where only Principal

22   Katona and CCSD are mentioned in the body of the Complaint. *See* Compl. at ¶¶ 102-106.

23       **1.      Mrs. Lamberth Does Not Have a Viable Defamation Claim Against Any
                Defendants**

24

25       Other than the single "Hailee's Dad beat her" statement, Plaintiffs do not allege any other

     defamatory statements. Specifically, there is no allegation that Mrs. Lamberth "beat" her

26   daughter—indeed, there is no allegation of any false statement concerning *Mrs. Lamberth*. *See id.*;

27

28   ───────────────
     [22]    *Accord, Pope v. Motel 6,* 121 Nev. 307, 315, 114 P.3d 277, 282 (2005); *Lubin v. Kunin,* 117 Nev.
     107, 111, 17 P.3d 422, 425 (2001); *PETA v. Bobby Berosini Ltd.,* 111 Nev. 615, 626, 895 P.2d 1269, 1276
     (1995).

                                        42

LEWIS ROCA
ROTHGERBER

LEWIS ROCA
ROTHGERBER

1   Compl. at ¶ 103. Accordingly, Mrs. Lamberth has not pled the necessary elements of a defamation

2   claim.  Mrs. Lamberth's claim must be dismissed as against all Defendants with prejudice.

3               **2.      The  Defamation Claim Must Be Dismissed Against Katona**

4        Turning to Mr. Lamberth's defamation claim, the Court should reject his effort to paint

5   every Defendant with the same broad brush. Mr. Lamberth can only plead defamation, if at all,

6   against the alleged publisher of the statement (CCSD). *Id.*; *see Chowdhry v. NLVH* 109 Nev. 478,

7   483 (plaintiff must properly allege each of the elements against each defendant); *Roasio v. Clark*

8   *Cnty. Sch. Dist.*, 2013 WL 3679375, at \*10 (D. Nev. July 3, 2013). Setting aside for a moment

9   whether Principal Katona's alleged statement was defamatory even if uttered by her in the first

10  instance, simply writing a false statement in an internal "chronology" document is not a

11  publication.  53 C.J.S. *Libel and Slander* § 87 ("Inasmuch as the publication requirement for a

12  defamation claim is based on the assumption that a statement, neither seen nor heard by a third

13  party, cannot cause harm to a party's reputation, to merely prepare, compose, or write a libel is not

14  a publication."); *cf.* Compl. at ¶ 103. "To prevail on a defamation claim, a party must show

15  *publication* of a false statement of fact." *Posadas v. City of Reno,* 109 Nev. 448, 851 P.2d 438, 443

16  (1993) (emphasis added).  Because there is no allegation that Ms. Katona published the alleged

17  defamatory statement to anyone, Plaintiffs fail to allege an essential element of defamation and

18  cannot maintain a viable defamation claim against her. *Id.*  Thus, Ms. Katona should be dismissed

19  from this defamation claim with prejudice.

20               **3.      The Defamation Claim Must Be Dismissed Against CCSD**

21        Arguably, only CCSD could be liable for defamation because the Complaint alleges that

22  CCSD (and only CCSD) published the statement to a third party. *See* Compl. at ¶ 103.  However,

23  even CCSD cannot be liable because the allegedly actionable statement was not defamatory. The

24  Complaint identifies the defamatory statement, quoting from the "chronology" as "that fact that

25  Hailee's Dad beat her." *Id.* However, the Complaint selectively picks portions of the "chronology"

26  in order to create the false impression that this statement was defamatory.

27        "In reviewing an allegedly defamatory statement, the words must be viewed in their

28  entirety and in context to determine whether they are susceptible of a defamatory meaning." *Lubin*

*v. Kunin,* 117 Nev. 107, 17 P.3d 422, 425–26 (2001). When the full context of the statement is considered, it becomes apparent that the statement is not defamatory.

### a.     Parental disciplinary methods are not defamatory

Specifically, the Complaint divorces the statement "Hailee's Dad beat her" from any context. *See* Compl. at ¶ 103. Upon reviewing the *entire* paragraph referenced in the Complaint, it becomes clear that Principal Katona's statement is not her own; rather, she merely memorialized what someone else reported to her regarding Mr. Lamberth's discipline of Hailee. *See* Chronology, attached as **Exhibit A**.[23]   In fact, Principal Katona's memorialization is even more remote—when the entire paragraph is considered, the chronology is that Hailee told a friend that she (Hailee) did not like the way her dad disciplined her with a belt; at some subsequent time that friend relayed Hailee's comment to the school dean (Mr. Kamman), who then relayed the information to Principal Katona, who merely memorialized in her "chronology" what was reported to her.   The entire paragraph reads:

> Mr. Kamman spoke with [redacted] informed Mr. Kamman that Hailee had been upset for some time. [Redacted] stated that Hailee stated she was upset with the way that her dad disciplined her. Hailee told [redacted] that her dad beat her with a belt while her mom watched. [Redacted] stated that Hailee had become anorexic and also had started making herself throw up when she ate. [Redacted] stated that Hailee had also been cutting herself for some time. [Redacted] stated that Hailee had told [redacted] that [redacted] student, and [redacted] student, had bullied Hailee.

*Id.*

Ironically, taken at face value, the statement that Mr. Lamberth beat Hailee *is attributed to Hailee herself,* not the friend, not Mr. Kamman and not Principal Katona—i.e., "*Hailee told [redacted]* that her dad beat her with a belt."   Regardless, the comment was not made in the context of illegal child-abuse, but rather, in the context of family discipline. *See id.* Parents are given significant leeway in deciding the best method for disciplining their children, including physical discipline. *See Newman v. State,* 129 Nev. Adv. Op. 24, 298 P.3d 1171, 1178 (2013)

---

[23]     The Ninth Circuit holds that a document is not "outside" the four corners of the complaint if the pleading specifically refers to the document, and if its authenticity is not questioned. *Townsend v. Columbia Operations,* 667 F.2d 884, 848-49 (9th Cir. 1982). The leading commentators state that "when [the] plaintiff fails to introduce a pertinent document as part of his pleading, [the] defendant may introduce the exhibit as part of his motion attacking the pleading." 5 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1327, at 762-63 (2d. ed. 1990). Here, the Complaint refers to, and quotes from, the "chronology" document attached hereto as Ex. A.  *See* Compl. at ¶¶ 51-53, 103.

44

LEWIS ROCA
ROTHGERBER

1  (discussing Nevada's common law parental privilege defense, which includes physical parental

2  discipline); *see also* RESTATEMENT (SECOND) OF TORTS § 147(1) (1965)).[24] Comment d to the

3  RESTATEMENT explains that a parent's privilege to physically discipline their child is "extensive"

4  because "the parent may be assumed to have the welfare of the child primarily at heart." *Id.* In

5  Nevada, a parent is statutorily entitled to a "reasonable exercise of discipline" that includes "the

6  use of corporal punishment." NRS 432B.260(3)(d). In short, memorializing a statement regarding

7  family discipline is not defamatory. *See Chesapeake Publishing Corp. v. Williams*, 661 A.2d 1169

8  (Md. Ct. App. 1995) (newspaper article falsely quoting father as saying "I hurt [my daughter] a

9  little" when he actually said "I hurt [my daughter's] feelings when I disciplined her" was not

10  defamatory). Relevantly, the "chronology" did not accuse Mr. Lamberth of child abuse. Nor did

11  the "chronology" provide facts demonstrating child abuse.

### b. *The statement was one of several student comments about Hailee, it was not presented as fact*

12

13  The Court will note that Ms. Katona was not presenting the statement in her "chronology"

14  as fact, but made clear it was simply one of several statements gathered from Hailee's peers. *See*

15  Exhibit A. In order to determine if a statement is one of fact or opinion, "the court must ask

16  whether a reasonable person would be likely to understand the remark as an expression of the

17  source's opinion or as a statement of existing fact." *Pegasus v. Reno Newspapers, Inc.,* 118 Nev.

18  706, 714, 57 P.3d 82, 87 (2002). Far from a declaration of "existing fact," an objective reading of

19  the entire paragraph shows that Ms. Katona was simply doing her job by collecting and arranging

20  statements from Hailee's peers concerning the decedent's state of mind. *See id.* Given the context,

21  this type of investigative activity cannot give rise to a defamatory statement because it was not

22  presented as fact; it was just presented as a memorialization of several accounts provided by peer

23  students. *See* Exhibit A.

24  / / / /

25  / / / /

26  / / / /

27

28  ---
[24]      "(1) A parent is privileged to apply such reasonable force or to impose such reasonable confinement upon his child as he reasonably believes to be necessary for its proper control, training, or education."

45

LEWIS ROCA
ROTHGERBER

1

### 4.     Mr. Lamberth fails to plead actual damages

2        Furthermore, Mr. Lamberth does not allege that divulging his method of corporal

3    punishment damaged him. Specifically, Mr. Lamberth does not allege the statement *actually*

4    damaged him in any way by lowering his reputation in the community. *See* Compl. at ¶ 104.

5    Instead, he simply pleads a *speculative* harm, i.e. the language "would tend" to lower his

6    reputation in the community. *Id.* Because the Complaint does not allege Mr. Lamberth was

7    *actually* harmed by this statement, the defamation claim must fail. *Chowdhry v. NLVH* 109 Nev.

8    478, 483.

9        For all of the foregoing reasons, Plaintiffs' defamation claim must be dismissed against the

10    Defendants.

11    **L.    Plaintiffs' Ninth Claim for Relief for Negligent Infliction of Emotional Distress
         (Against Sabreena Adams) Must Be Dismissed.**

12

13        Plaintiffs, in their individual capacities, assert a claim against TWMS counselor Sabreena

14    Adams for a Facebook posting which stated "she is still the monster" on the basis that such "could

15    be read" to refer to Hailee.  Compl. at ¶¶ 108-112.  However, this speculative possibility (which is

16    insufficient under *Iqbal* and *Twombly*) vanishes when the statement is considered in fuller context

17    of the Facebook posting.

18        Paragraph 44 of the Complaint alleges Ms. Adams posted the following:   "[School

19    principal] Andi has gone above and beyond…And she is still the monster.  We even bought her

20    younger brother Christmas and bday presents at the parents [sic] request yet were [sic] still the

21    enemy."  Compl. at ¶ 44.  When the truncated statement is viewed in fuller context, "she is still the

22    monster" is not an attacking statement but rather a statement in defense of someone and that

23    someone is clearly the school principal, Defendant Andrea (Andi) Katona.  And, if there was any

24    doubt from what is quoted in the Complaint, that doubt is eliminated when the full Facebook post

25    is reviewed so that the information Plaintiffs eliminated through ellipses can be considered.

26        The Facebook post is attached hereto as **Exhibit B**[25] and provides (with the information

27    Plaintiffs eliminated italicized):

28

[25]    *See* footnote 23, *supra*.

46

LEWIS ROCA
ROTHGERBER

*...Frustrating we have been working tirelessly to help ALL these students and still get painted as the bad guys....Andi [Katona] has gone above and beyond what any principal would ever do.  And she's still the monster.  We even bought her younger brother Christmas and bday presents at the parents [sic] request yet were [sic] still the enemy.  I understand grief and wanting to point the finger somewhere.  But do it with integrity.*

Any suggestion the "she's still the monster" statement "could be read to refer to Hailee" is absurd.   *See Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555) (To avoid a Rule 12(b)(6) dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face.");  *Iqbal*, 556 U.S. at 678 (stating that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").[26]

Additionally, in Nevada, NIED claims may be brought only by bystander plaintiffs.  *Grotts*, 989 P.2d at 416.   Under Nevada law, direct victims cannot bring NIED claims. *See Edberg v. Desert Palace, Inc.*, No. 2:10-cv-00873-RLH-LRL, 2011 WL 1157301, at *2 (D. Nev. 2011).   If such a claim is brought by a direct victim, the claim fails as a matter of law.  *Id.*; *see Villagomes v. Labatory Corp. of Am.*, 783 F. Supp. 2d 1121, 1126 (D. Nev. 2011) (explaining that although some have misinterpreted *Shoen v. Amerco, Inc.,* 896 P.2d 469, 477 (Nev. 1995) to reach the conclusion that there is a direct victim NIED claim in Nevada, "this is simply not true.").

Therefore, the Ninth Claim must be dismissed with prejudice.

### M.   Plaintiffs' Tenth Claim For Relief for Public Disclosure of Private Facts (Against Sabreena Adams) Must Be Dismissed

Plaintiffs, in their individual capacities,[27] have not pled facts that support a claim for unreasonable publicity given to private facts, a/k/a public disclosure of a private fact. This tort occurs where 1) a defendant publicly discloses true, private facts about plaintiff; and 2) the disclosure would be offensive and objectionable to a reasonable person of ordinary sensibilities.

---

[26]     Plaintiffs further allege that Ms. Adams disclosed private and/or confidential information "related to Hailee."  *See* Compl. at ¶ 112.  However, Plaintiffs, do not identify any information posted on Facebook that was purportedly confidential.  The reference to "she is still the monster" – referring to Ms. Katona – fails to support such assertion.

[27]     As the basis for their claim, Plaintiffs allege that "as the school guidance counselor charged with a specific responsibility *to Hailee*, Adams had access to information related to private life matters of Hailee." *See* Compl. at ¶ 116 (emphasis added).  There is no parallel allegation in the Complaint that Ms. Adams had any such duty to Hailee's parents or brother. Accordingly, this cause of action must be dismissed because there is no allegation that Ms. Adams owed a duty to any of the individual Plaintiffs. *See* Compl at p. 25.

47

LEWIS ROCA
ROTHGERBER

1    *See State v. Eighth Judicial Dist. Court*, 118 Nev. 140, 42 P.3d 233 (2002); *Montesano v. Donrey*

2    *Media Group*, 99 Nev. 644, 668 P.2d 1081 (1983); *see also* Restatement (Second) of Torts § 652D.

3    "[A]n essential element of this tort is that the facts at issue must be true." *Leidholdt v. L.F.P. Inc.,*

4    860 F.2d 890, 895 (9th Cir. 1988).

5           **1.   None of the Alleged Statements are Offensive Private Facts About Plaintiffs**

6           Here, Plaintiffs choose to selectively quote Ms. Adams' Facebook post in order to generate

7    an illusion of impropriety. Upon reading the entire post, attached hereto as Exhibit B, it is clear

8    that Ms. Adams did not publish allegedly private facts and they were not offensive to an

9    objectively reasonable person of ordinary sensibility. The Complaint alleges three actionable

10   statements: 1) "she is still the monster"; 2) "Ps…Kid is NOT still at our school nor was he bullying

11   her;" and 3) "We even bought her younger brother Christmas and bday presents at the parents

12   request yet [we're' still the enemy." *See* Compl. at ¶ 114.

13          *a.      The first statement concerns Principal Katona, not Plaintiffs*

14          Mr. and Mrs. Lamberth again reference the five word phrase "she is still the monster" to

15   manufacture a cause of action against Defendants. *See id.* The statement, read in context with the

16   preceding sentence, reveals it is not about Hailiee.  Rather, the object of the "monster" comment is

17   clearly Principal "Andi" Katona. *See* Exhibit B.  Further, when read in context, it is clear the

18   statement is made in defense of the "monster," i.e., in defense of Principal Katona who went above

19   and beyond the call of duty; however, in the category of "no good deed goes unpunished," she is

20   getting painted as a bad person, a "monster."   Thus, in context, the "monster" statement is a

21   statement of support, not a statement of derision.  Accordingly, this statement cannot serve as a

22   basis for a public disclosure of a private fact claim, because the alleged "fact" (1) does not relate to

23   any Plaintiff, and (2) as a statement of support, cannot be deemed offensive and objectionable to a

24   reasonable person of ordinary sensibilities. *See State v. Eighth Judicial Dist. Court*, 118 Nev. 140,

25   143.  Further, even if the statement did relate to Hailee (it does not), *Plaintiffs do not allege the*

26   *statement is true* (and in fact will vigorously deny that Hailee was a "monster") and therefore "an

27   essential element of the tort" is missing.  *See Leidholdt*, 860 F.2d at 895.

28   **/ / / /**

LEWIS ROCA
ROTHGERBER

LEWIS ROCA
ROTHGERBER

### b.    The second statement concerns the bully, not Plaintiffs

Turning to the second statement, "Ps…Kid is NOT still at our school, nor was he bullying her" must be accepted as a *true fact* in order to serve as a basis for a public disclosure of private fact claim. *See* Compl. at ¶ 114. In other words, Plaintiffs must either concede that Hailee was *not* bullied, or concede that this statement is *not* a fact, and therefore cannot satisfy the elements of the tort. Assuming that Plaintiffs will continue to allege Hailee was bullied, this statement presents an unresolvable conflict with that position. It simply cannot serve as a proper factual predicate for Plaintiffs' public disclosure of a private fact claim. Likewise, the status of the bully does not relate to a "private fact" concerning Plaintiffs, which is fatal to Plaintiffs public disclosure claim. *See id.* (private fact must be about plaintiff).

### c.    The third statement is not offensive or objectionable to ordinary sensibilities

Regarding the third statement—"[w]e even bought her younger brother Christmas and bday presents at the parents['] request yet [we're] still the enemy"—assuming it is true for the purposes of this Motion, it does not satisfy the requisite element that the private fact be offensive and objectionable to a reasonable person of ordinary sensibilities. *See* Compl. at ¶ 114; *State v. Eighth Judicial Dist. Court,* 118 Nev. 140, 143. Rather, it shows that Ms. Adams participated in sending Hailee's younger brother Christmas and birthday gifts, yet, she felt unappreciated. Plaintiffs should not be permitted to twist this innocuous statement into something offensive. *See id.* (private fact must be offensive).

In short, the first and second statements do not concern Plaintiffs and none are offensive to ordinary sensibilities. Plaintiffs' claim for public disclosure of private facts must be dismissed.

### 2.    None of the Alleged Statements Were Given The "Publicity" Necessary For Public Disclosure

To make a public disclosure, one must do more than communicate private information to a single person or a small group of individuals—there must be "publicity." *Kuhn v. Account Control Tech., Inc.,* 865 F.Supp. 1443, 1448 (D. Nev. 1994) (quoting Restatement 2d (Second) of Torts § 652D (1977). Comment "a" to section 652D of the Restatement clarifies that while "publication" includes "any communication by the defendant to a third person," "publicity", on the other hand,

"means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as *substantially certain to become one of public knowledge*." *Id* (emphasis added).

A post on Ms. Adams' Facebook page, even if accessible to her alleged 500 Facebook "friends" is not "substantially certain to become…public knowledge." *Id.; cf.* Comp. at ¶ 114. Indeed, the type of general publicity envisioned by this tort is achieved by "publication in a newspaper or magazine" or "any broadcast over the radio." *See* Comment a to § 652D. Where Ms. Adams only disclosed this information to a limited group of individuals whom she accepted as Facebook "friends," and not to the public at large, the publicity requirement is not met. *See Williams v. City of Minneola,* 575 So.2d 683, 689 (Fla. 5th DCA 1991) ("[T]he publicity given to private facts must be to the public at large or to so many persons that the matter must be regarded as *substantially certain to become public knowledge*.") (emphasis added).

To accept Plaintiffs' proposition that any statement made to a few hundred Facebook friends is inherently disclosed to the public at large, is to ignore the reality of modern social media. The entire premise of an individual's Facebook account (as opposed to a public web page) is to limit one's communications to a discrete number of "friends" – people individually vetted by the account holder.[28] This process is the antithesis of broadcasting to the general public. Ms. Adams did not publish the information in a manner "substantially certain to become public knowledge." *See e.g., Bilbrey v. Myers*, 91 So. 3d 887, 892 (Fla. Dist. Ct. App. 2012) (dismissing claim for public disclosure of private facts for lack of publicity, even where a pastor made allegations concerning plaintiff's sexuality to "members of Bilbrey's [Pentacostal] church" in two different states).

Accordingly, Ms. Adams' Facebook posts are not sufficiently wide-spread to satisfy the public disclosure element of this tort, and Plaintiffs' claim must be dismissed.

////

LEWIS ROCA
ROTHGERBER

---

[28]     A discussion of communicating with Facebook friends can be found in *Fraley v. Facebook, Inc.*, 830 F. Supp.2d 785, 791 (N.D. Cal. 2011) ("Facebook is a free, web-based social networking site with over 153 million members in the United States. To join Facebook, a user must provide his or her name, age, gender, and a valid e-mail address, and agree to Facebook's terms of service….Once registered, a member...may establish connections with other members by approving them as Facebook 'Friends.'").

**3.      The Alleged Statements Are Protected by the Newsworthiness Exception**

"[P]eople who do not desire the limelight and do not deliberately choose a way of life or course of conduct calculated to thrust them into it, *nevertheless have no legal right to extinguish it if the experiences that have befallen them are newsworthy*, even if they would prefer that those experiences be kept private." *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1232 (7th Cir. 1993) (emphasis added). There is no liability for public disclosure of private facts when the defendant merely gives further publicity to information about the plaintiff that is already public. *See Montesano v. Donrey Media Group*, 99 Nev. 644, 668 P.2d 1081 (1983).

Here, the Complaint admits that Hailee's story was in the public domain before Ms. Adams' Facebook posts.  More particularly, the Complaint references an article published in the Las Vegas Review Journal ("LVRJ") on February 28, 2014. *See* Compl. at ¶ 44. The article discussed Hailee's death, the bullying allegations, and Mr. Lamberth's dissatisfaction with school officials' response to those allegations. *See* LVRJ article attached as **Exhibit C**.[29]  Ms. Adams' subsequent posts were simply a continuation of this discussion. Specifically, the posts relate to an issue of legitimate public concern, bullying allegations at TWMS, which were sparked by the newspaper article. *See id.* ("in *response* [to the LVRJ article], TWMS guidance counselor Sabreena Adams posted the following to Facebook…") (emphasis added).

Because Hailee's suicide was already a newsworthy topic, including the school's response to Mr. Lamberth's allegations, Ms. Adams' additional commentary on those same topics is not actionable.

**4.      The Alleged Statements Are Protected by the Reply Privilege**

Similarly, Ms. Adams' Facebook posts are protected by the conditional privilege of reply. To illustrate the conditional privilege of reply, the Nevada Supreme Court has previously explained that "[i]f I am attacked in a newspaper, I may write to that paper to rebut the charges, and I may at the same time retort upon my assailant, when such retort is a necessary part of my defense, or fairly arises out of the charges he has made against me." *Jacobs v. Adelson*, 130 Nev.

---

[29]      *See* footnote 23, *supra*.

51

1  Adv. Op. 44, 325 P.3d 1282, 1288 (2014), *reh'g denied* (Aug. 7, 2014). "The conditional

2  privilege's application is generally a question of law for the court." *Id.*

3      As explained above, Ms. Adams posted her comments in response to the LVRJ article. *See*

4  Compl. at ¶ 44. The article includes the following statement: "However, the student named in

5  Hailee's [suicide] letter is still at school, Lamberth said." *See* Exhibit C.  Ms. Adams' reply was to

6  clarify that the alleged bully was "NOT still at our school…," in addition to defending the school

7  personnel and their handling of the incident. In sum, Ms. Adams' posts are clearly responding to

8  the article, and therefore protected by the reply privilege, because they rebut untrue allegations or

9  unfair charges.

10  **N.   Plaintiffs' Eleventh Claim For Relief For False Light Must Be Dismissed**

11      Plaintiffs fail to allege an actionable false light claim against Defendant Sabreena Adams

12  for stating "the fact that Hailee's Dad beat her."[30] *See* Compl. at ¶ 119. The tort of false light exists

13  where one attributes to plaintiff views she does not hold or actions she did not take. *See Franchise*

14  *Tax Board of Cal. v. Hyatt,* ___ P.3d ___, 2014 WL 4656423 at *12-13; *Restatement (Second) of*

15  *Torts* § 652E(b) (1977); *e.g., Solano v. Playgirl, Inc.,* 292 F.3d 1078, 1082, 1084 (9th Cir. 2002)

16  (finding that a picture of an actor on the cover of Playgirl magazine, surrounded by lurid captions,

17  created the "false impression" that he appeared nude inside the magazine). The tort of false light is

18  "an odd hybrid of defamation and intentional infliction of emotional distress." *See Flowers v.*

19  *Carville,* 310 F.3d 1118, 1132 (9th Cir. 2002).

20      However, in Nevada, "[t]he false light privacy action differs from a defamation action in

21  that the injury in privacy actions is mental distress from having been exposed to public views,

22  while the injury in defamation actions is damage to reputation." *Flowers v. Carville*, 266 F. Supp.

23  2d 1245, 1252 (D. Nev. 2003) *citing PETA v. Bobby Berosini, Ltd.,* 111 Nev. 615, 619.

24  Specifically, a defendant is liable if "(a) the false light in which the other was placed would be

25  highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless

26

27

28  [30]   Preliminarily, although the title to the Eleventh Claim for Relief states it is asserted "against Sabreena Adams," all allegations are directed at Principal Andrea Katona. Therefore, it is presumed here that the claim was intended to be  asserted against Principal Katona.

LEWIS ROCA
ROTHGERBER

disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *See* Restatement (Second) of Torts § 652E.

### 1.     Plaintiffs Do Not Plead a Viable False Light Claim

Incorporating the argument from the defamation claim, Plaintiffs do not have a cause of action because the alleged "false light" solely concerns Mr. Lamberth's alleged disciplinary method. *See* Compl. at ¶ 119. Critically, this statement does not place Plaintiffs in a "false light," and so they have not pled a viable cause of action against Principal Katona. *See id.* Further, while Plaintiffs have claimed the *partial* statement carefully selected for inclusion in the Complaint ("Hailee's dad beat her") is false, there is no allegation that the full statement in context is false.

### 2.     The False Light Claim Fails Due to Lack of Publicity

Memorializing a comment in an internal "chronology" is not "publicity." *Dobson v. Sprint Nextel Corp.*, 2014 WL 553314, at *5 (D. Nev. Feb. 10, 2014) (false light claim requires "publicity," not merely a publication of the statement). As explained above, 'publicity' ... means that the matter is made public… or substantially certain to become one of public knowledge."

Here, the allegation is that the false statement was provided to "another parent in the school district," i.e. <u>one person</u>. *See* Compl. at ¶ 120.  Communication to a single person might be a "publication" sufficient for a defamation claim but mere "publication" does not suffice for a false light claim.  RESTATEMENT (SECOND) OF TORTS § 652D, comment a ("[I]t is not an invasion of the right of privacy, within the rule stated in this Section [false light], to communicate a fact concerning the plaintiff's private life to a single person. . . .).    Instead, it requires widespread "publicity." *See Dobson*, 2014 WL 553314 at * 5.  The false light claim fails because there was no publicity.

### 3.     The False Light Claim Fails Because the Statement Was Not Highly Offensive to a Reasonable Person

The statement that Mr. Lamberth chose to physically discipline his child and chose to do so with a belt (instead of a paddle board or some other spanking implement) is not highly offensive to a reasonable person. *See Berosini,* 895 P.2d at 1278 (citing Restatement (Second) of Torts § 652A), NRS 432B.260(3)(d)(1) (authorizing a "reasonable exercise…of corporal punishment"). In

1   the interest of judicial economy, Principal Katona adopts and fully incorporates this argument from

2   the defamation claim, *supra*. Because the statement was not highly offensive to a reasonable

3   person, this false light claim must be dismissed.

### 4.   The Complaint Fails to Adequately Plead "Mental Distress"

5       Finally, Plaintiffs fail to properly allege false light damages. The bare assertion that "the

6   disclosures resulted in mental distress for the Lamberths" is conclusory on its face. *See* Compl. at ¶

7   124; *see Flowers v. Carville*, 266 F. Supp. 2d 1245, 1252 (false light must result in mental

8   distress).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

9   elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. "Nor does a

10  complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Id.*

11  (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966). Here, Plaintiffs failed to sufficiently allege

12  emotional distress by omitting any specific physical injury or illness caused by the emotional

13  distress, which is required when there is no physical impact to a plaintiff. *Betsinger v. D.R.*

14  *Horton, Inc.,* 232 P.3d 433, 436 (Nev. 2010); *see also Barmettler v. Reno Air, Inc.,* 956 P.2d 1382,

15  1387 (Nev. 1998).

16      As the court in *Dobson* explains, "where there is no allegation in their Complaint that

17  Plaintiffs have sought psychiatric assistance, suffer physical symptoms, or are taking medication

18  for their distress" the bare recitation of "mental distress" is <u>insufficient</u> to support emotional

19  distress damages. *See Dobson v. Sprint Nextel Corp.*, 2014 WL 553314, at *6 (claims that are not

20  objectively verifiable, "will not support emotional distress damages in Nevada for a tort arising out

21  of a purely emotionally upsetting situation.") Accordingly, Plaintiffs have not properly alleged

22  damages and their false light claim must be dismissed.

### O.   Defendant TWMS Is A School Building Not Capable Of Being Sued

24      Thurman White Middle School is not a proper Defendant in this case. In Nevada, only a

25  *school district* has the power to sue or be sued. The structure of the Nevada education system

26  confers no independent legal existence on individual schools. *See Ximines George Wingate High*

27  *Sch.*, 2008 U.S. App. LEXIS 3494 *8 (2d Cir. 2008) (a high school is not a suable entity); *Campbell*

28  *v. Richardson*, 2006 U.S. Dist. LEXIS 16414 *7-9 (W.D. Tenn. 2006) (court dismissed a middle

LEWIS ROCA
ROTHGERBER

1   school as a party in the action because it was "not a suable entity"); *Bauchman v. West High Sch.*,

2   900 F. Supp. 254, 263-64 (D. Utah 1995) (court found that a public secondary school had no

3   independent legal existence and could not be sued under § 1983); *Bonnie v. Star Spencer High Sch.*,

4   2005 U.S. Dist. LEXIS 21765 *7 (W.D. Okla. 2005) ("public school *districts*, as opposed to the

5   individual public schools that fall within those districts, are the proper defendants in an action

6   involving potential liability of a school").

7        In this case, since TWMS is merely a bricks and mortar facility and has no status

8   independent of CCSD, it cannot be sued. Accordingly, this Court should dismiss TWMS as a

9   Defendant in this matter and order a change in the caption.

10   **P.**    **Plaintiffs' Request For Punitive Damages Must Be Dismissed**

11        Punitive damages are a remedy, not a claim, but a plaintiff must still plead the facts to

12   support an award of punitive damages in order to keep them as part of his case. *Bonavito v.*

13   *Nevada Prop. 1 LLC*, 2014 WL 1347051, at *1 (D. Nev. Apr. 2, 2014) (granting motion to dismiss

14   where plaintiff did not plead sufficient facts). To support a claim for punitive damages, a plaintiff

15   must allege facts demonstrating the defendant's conduct was oppressive, fraudulent, or malicious.

16   NRS 42.005(1). Here, Plaintiffs request punitive damages, yet the Complaint does not support this

17   request with appropriate factual allegations. The only place in the Complaint where conduct even

18   remotely warranting punitive damages is alleged is in paragraph 52—"Principal Katona made

19   egregiously false and malicious statements defaming Jason and Jennifer Lamberth, outrageously

20   and falsely claiming that Jason Lamberth abused Hailee."

21        First, simply inserting conclusory words into a complaint such as "malicious" and

22   "outrageous" does not satisfy plaintiff's pleading requirements. *E.g., Coppola v. Smith*, 982 F.

23   Supp.2d 1133, 1144 (E.D. Cal. 2013) ("Although malice, intent, and knowledge may generally be

24   alleged, the allegations that request punitive damages must still meet the standards elaborated

25   under *Iqbal* and *Twombly*.").

26        Second, Plaintiffs have not identified a single claim for relief for which they are seeking

27   punitive damages. That is, although the prayer for relief asks for punitive damages, nowhere does

28   the Complaint identify which specific claim(s) they are asking punitive damages to be awarded. In

short, the only place punitive damages are mentioned is in the prayer for relief and the only place "malicious" and "outrageous" are mentioned is in the general background section of the Complaint and not within any of the enumerated claims for relief.  Defendants are left to guess which claims Plaintiffs will request an award of punitive damages.

Third, what is clear is that if mere conclusory terms such as "malicious" and "outrageous" are sufficient to plead a request for punitive damages (they are not), then all Defendants except Katona are entitled to dismissal of the punitive damages request because those terms are plead only in connection with Principal Katona's conduct.  Compl. at ¶ 52.  And, if the "malicious" and "outrageous" catch phrases are relevant only to Plaintiffs' defamation claim, even Principal Katona cannot be liable for defamation because she never "published" the contents of the "chronology" to any third person.  Instead, she prepared the "chronology" as an internal document and there is no allegation she published it to any third party.  Thus, on the face of the Complaint, the only party who could be liable for publishing the "chronology" is CCSD.  Compl. at ¶ 103 ("CCSD deliberately circulated this statement to a third party, another parent in the school district.").

Fourth, however, "[t]he general rule is that no punitive damages are allowed against a [government entity] unless *expressly* authorized by statute." *Long v. City of Charlotte,* 306 N.C. 187, 293 S.E.2d 101, 114 (1982) (emphasis added). In Nevada, NRS 41.035(1) provides that "[a]n award for damages [against a government entity and its employees] in an action sounding in tort ... may not include any amount as exemplary or punitive damages." Thus, "Nevada has not waived its sovereign immunity from suit for such [punitive] damages." *Franchise Tax Bd. of Cal. v. Hyatt*, 130 Nev. Adv. Op. 71, 335 P.3d 125, 154 (2014).  Indeed, this Court has already held that plaintiffs may not obtain punitive damages against CCSD.  *Peterson v. Miranda*, 991 F. Supp.2d 1109, 1119-20 (D. Nev. 2014) ("As to defendant CCSD, the [plaintiffs] may not obtain punitive damages as a matter of law.  Pursuant to NRS § 41.035, an award for damages against a political subdivision . . . , like CCSD, may not include an award of punitive damages."); *Crump-Richmond v. Arambula*, 2007 WL 429931 *5 (D. Nev. 2007) ("Because 'a municipality is immune from punitive damages under 42 U.S.C. § 1983,' Plaintiff's petition for punitive damages against Defendant Clark County School District fails.").

1    In sum, the request for punitive damages should be stricken from the Complaint.

2    **VI.    CONCLUSION**

3    For all the foregoing reasons, each and every claim asserted in the Complaint should be

4    dismissed.

5    DATED this 11th day of December, 2014.

6    LEWIS ROCA ROTHGERBER LLP

By: _____
9    DANIEL F. POLSENBERG (SBN: 2376)
10   DAN R. WAITE (SBN: 4078)
     MATTHEW W. PARK (SBN: 12062)
     LEWIS ROCA ROTHGERBER, LLP
11   3993 Howard Hughes Parkway, Suite 600
     Las Vegas, NV 89169
12   Telephone: (702) 949-8200
     Facsimile: (702) 949-8398
13

14   *Attorneys for Defendants Clark County*
     *School District (CCSD); Pat Skorkowsky,*
15   *CCSD Board of School Trustees; Erin A.*
     *Cranor; Linda E. Young; Patrice Tew;*
16   *Stavan Corbett; Carolyn Edwards; Chris*
     *Garvey; Deanna Wright; Thurman White*
17   *Middle School (TWMS); Principal Andrea*
     *Katona; Dean Ron Kamman; Dean April*
18   *Barr; Sabreena Adams; Mrs. Kim*
     *Jefferson; and Andre Long*

19

20

21

22

23

24

25

26

27

28

LEWIS ROCA
ROTHGERBER

57

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that service of **Defendants' Motion To Dismiss** by electronic with the Clerk of the Court and caused a true and accurate copy of the same to be served via First-Class, United States mail, postage prepaid, upon the following counsel of record.

James A. Quandra
Moscone, Emblidge & Quandra LLP
220 Montgomery Street, Suite 2100
San Francisco, CA 94104

Rebecca Coll
Quandra & Coll, LLP
649 Mission Street, 5th Floor
San Francisco, CA94105

DATED this 11th day of December, 2014.

_____
An Employee of Lewis Roca Rothgerber LLP

LEWIS ROCA
ROTHGERBER