Allen Lichtenstein, Esq.
Nevada Bar No. 3992
Staci Pratt, Esq.
Nevada Bar No. 12630
Allen Lichtenstein, Ltd.
3315 Russell Road, No. 222
Las Vegas, NV 89120
Tel: 702-433-2666
Fax: 702-433-9591
allaw@lvcoxmail.com
stacijpratt@gmail.com

James A. Quadra, Esq. (*admitted pro hac vice*)
Rebecca Coll, Esq. (*admitted pro hac vice*)
Quadra & Coll, LLP
649 Mission Street, 5th Floor
San Francisco, CA 94105
Tel:  415-426-3502
Fax: 415-795-4530
jquadra@quadracoll.com
rcoll@quadracoll.com

*Attorneys for the Plaintiffs*

EIGHTH JUDICIAL DISTRICT COURT

CLARK COUNTY, NEVADA

| | |
|---|---|
| JASON LAMBERTH, as father in his individual capacity and estate representative of HAILEE JOY LAMBERTH;  JENNIFER LAMBERTH, as mother in her individual capacity and estate representative of HAILEE JOY LAMBERTH;  and JACOB LAMBERTH, brother of HAILEE JOY LAMBERTH. <br><br>    Plaintiffs, <br><br>    vs. <br><br>CLARK COUNTY SCHOOL DISTRICT (CCSD); Pat Skorkowsky, in his official capacity as CCSD superintendent; CCSD BOARD OF SCHOOL TRUSTEES; Erin A. Cranor, Linda E. Young, Patrice Tew, Stavan Corbett, Carolyn Edwards, Chris Garvey, | CASE NO: 2:14:CV-2011-APG-GWF <br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS** |

1
2
3
4
5
6
7
8
9
10
11

Deanna Wright, in their official capacities as
CCSD BOARD OF SCHOOL TRUSTEES;
THURMAN WHITE MIDDLE SCHOOL
(TWMS); Principal Andrea Katona, in her
individual and official capacity as principal of
TWMS; Dean Ron Kamman, in his individual
and official capacity as Dean at TWMS; Dean
April Barr, in her individual and official
capacity as Dean at TWMS; Sabreena Adams,
in her individual and official capacity as
counselor at TWMS; Mrs. Kim Jefferson, in
her individual and official capacity as
instructor at TWMS; Andre Long, in his
individual and official capacity as Academic
Manager of CCSD.

                    Defendants.

12
13
14
15
16
17

        Come now Plaintiffs, by and through the undersigned attorneys, and file this Plaintiffs'

Response to Defendants' Motion to Dismiss based upon the attached Memorandum of Points and

Authorities, the papers and pleadings on file herein, and any oral argument at the hearing of this

matter.

18      Dated this 20th day of January 2015

19                                          Respectfully submitted by:

20                                           /s/ Allen Lichtenstein
                                            Allen Lichtenstein, Esq.
21                                          Nevada Bar No. 3992
                                            Staci Pratt, Esq.
22                                          Nevada Bar No. 12630
                                            Allen Lichtenstein, Ltd.
23                                          3315 Russell Road, No. 222
                                            Las Vegas, NV 89120
24                                          Tel: 702-433-2666
                                            Fax: 702-433-9591
25                                          allaw@lvcoxmail.com
                                            stacijpratt@gmail.com
26
27
28

James A. Quadra, Esq. (Admitted *pro hac vice*)
Rebecca Coll, Esq. (Admitted *pro hac vice*)
Quadra & Coll, LLP
649 Mission Street, 5th Floor
San Francisco, CA 94105
Tel:  415-426-3502
jquadra@quadracoll.com
rcoll@quadracoll.com

*Attorneys for the Plaintiffs*

**Table of Contents**

I. INTRODUCTION ...................................................................................... 1

II. FACTS ........................................................................................................ 1

III. ARGUMENT .............................................................................................. 8

    A. LEGAL STANDARD ........................................................................... 8

    B. CLAIMS I THROUGH III FOR NEVADA TORT CLAIMS ADEQUATELY ALLEGE PROXIMATE CAUSE UNDER NEVADA LAW. ....................................................................................................... 10

        1. State Law Applies to Substantive Issues Such as Causation, Relating to State Tort Claims, Which the Federal Court Hears Under Supplemental Jurisdiction. ................................................................................... 10

        2. Plaintiff's Complaint Has Met the Test for Pleading Proximate Cause Under State Law. ................................................................................ 10

        3. Suicide Is Not An Intervening Superseding Cause Under State Law. .......... 15

    C. PLAINTIFFS' CLAIM I FOR NEGLIGENCE IS PROPERLY PLED. ............... 24

        1. Plaintiffs Have Pled Each Element Of Their Claim For Wrongful Death Negligence. ................................................................................... 24

        2. Nevada Law Recognizes A Special Teacher-Student Relationship. ............ 25

    D. PLAINTIFFS' CLAIM II FOR NEGLIGENCE PER SE IS PROPERLY PLED. ........................................................................................... 29

    E. PLAINTIFFS' CLAIM III FOR NEGLIGENT INFLICTION OF EMOTOINAL DISTRESS (BYSTANDER LIABILITY) IS PROPERLY PLED. ........................................................................................... 32

    F. CLAIMS IV THROUGH VII FOR FEDERAL SECTION 1983 CLAIMS ADEQUATELY ALLEGE PROXIMATE CAUSE UNDER FEDERAL LAW. ....................................................................................................... 33

        1. Plaintiffs Have Met the Test for Pleading Proximate Causation Under Federal Law. ................................................................................ 33

        2. Suicide Is Not An Intervening Superseding Cause Under Federal Law. ....... 34

    G. PLAINTIFFS' CLAIM IV FOR VIOLATION OF SUBSTANTIVE DUE PROCESS (SURVIVAL ACTION) AGAINST INDIVIDUAL DEFENDANTS IS PROPERLY PLED. ................................................................ 37

1.  Hailee Had a Cognizable Right to Substantive Due Process From Individual State Actors. ...............................................................37

2.  Plaintiffs Have Standing To Bring A Survival Cause Of Action For Substantive Due Process. ...............................................................43

3.  The Pleading Requirements Have Been Met. ...............................................43

H.  PLAINTIFFS' CLAIM V FOR SUBSTANTIVE DUE PROCESS- *MONELL* LIABILITY IS PROPERLY PLED. ...............................................................43

1.  Hailee Had A Cognizable Right To Substantive Due Process From CCSD Under *Monell*. ...............................................................43

2.  Plaintiffs Have Standing To Bring A Survival Cause Of Action For Substantive Due Process. ...............................................................49

3.  The Pleading Requirements Have Been Met. ...............................................49

I.  PLAINTIFFS' CLAIM VI FOR ASSOCIATION/LIBERTY INTERST IN FAMILIAL COMPANIONSHIP IS PROPERLY PLED. ...............................................................50

1.  Plaintiffs Have A Cognizable Right To Bring A Wrongful Death Claim For Violation Of Substantive Due Process From The Individual Defendants. ...............................................................50

2.  Plaintiffs Have Standing To Bring A Wrongful Death Cause Of Action For Substantive Due Process Violations Against Individual Defendants. .....51

3.  The Pleading Requirements Have Been Met. ...............................................52

J.  PLAINTIFFS' CLAIM VII FOR EXPRESSIVE ASSOCIATION - *MONELL* LIABILITY IS PROPERLY PLED. ...............................................................52

1.  Plaintiffs Have A Cognizable Right To Substantive Due Process From CCSD Under *Monell*. ...............................................................52

2.  Plaintiffs Have Standing To Bring A Wrongful Death Cause Of Action For Substantive Due Process Violations Against CCSD. ...............................................................53

3.  The Pleading Requirements Have Been Met for a wrongful death cause of action for Substantive Due Process violations against CCSD. ...............................................................53

K.  NRS 41.085 Does Not Preclude Plaintiffs' Claim For Wrongful Death Negligence Because That Claim Is Made Pursuant To The Statute. ...............................................................54

L.  PLAINTIFFS' CLAIMS VIII AND XI AGAINST PRINCIPAL KATONA ARE PROPERLY PLED ...............................................................54

1.  Jason Lamberth And Jennifer Lamberth, In Their Individual Capacities, Possess A Cognizable Claim For Defamation Against CCSD Defendants ...............................................................54

2.     Jason Lamberth and Jennifer Lamberth, in their individual capacities, Possess a Cognizable Claim for False Light Invasion of Privacy Against Defendant Katona ........................................................................58

M.     PLAINTIFFS' CLAIMS IX AND X AGAINST SABREENA ADAMS ARE PROPERLY PLED. ...........................................................................................60

N.     DEFENDANTS ARE NOT SUBJECT TO QUALIFIED IMMUNITY UNDER FEDERAL OR STATE LAW........................................................................62

1.     Defendants Are Not Entitled To Qualified Immunity On Plaintiffs' Federal Claims. ...........................................................................................62

O.     PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES IS PROPERLY PLED. ...66

1.     Plaintiffs Have Pled Sufficient Facts To Warrant An Award Of Punitive Damages Under Section 1983....................................................................66

2.     Plaintiffs Have Pled Sufficient Facts To Warrant An Award Of Punitive Damages For Claims VIII Through XI........................................................67

3.     Defendants' Argument That Plaintiffs Must Specify Which Claims Give Rise To Punitive Damages Is Not Supported By Any Legal Authority. ...................................................................................................68

IV.     CONCLUSION............................................................................................ 69

1

**Table of Authorities**

2

**Cases**

3

*Adler v. Pataki*, 185 F.3d 35 (2nd Cir. 1999).......................................................................50

4

*Alex Novack & Sons v. Hoppin*, 77 Nev. 33, 359 P.2d 390 (1961) ...............................11

*Arrington v. Clark County Dep't of Family Services*, 2014 WL 4699698*5 (D. Nev., Sept.

5

22, 2014) ..........................................................................................................................41

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................................passim

6

*Atkinson v. MGM Grand Hotel, Inc.*,120 Nev. 639, 98 P.3d 678 (2004) .....................30

7

*Bangura v. Hansen*, 434 F.3d 487 (6th Cir. 2006) ..........................................................9

*Beaumont v Brown*, 401 Mich 80; 257 N.W.2d 522 (1977) .........................................61

8

*Beckman v. Match.com*, 2013 U.S. Dist. LEXIS 78339, 21 (D. Nev. May 29, 2013)..........26

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); Fed. R. Civ. P. 8(a)(2) ...................passim

9

*Benigni v. City of Hemet*, 879 F.2d 473 (9th Cir 1988) ...............................................64

*Bogust v. Iverson*, 10 Wis. 2d 129, 102 N.W.2d 228 (1960) .......................................14

10

*Bostic v. State*, 104 Nev. 367, 760 P.2d 1241 (1988) ...................................................11

*Bower v. Harrah's Laughlin, Inc.*, 125 Nev. 470, 215 P.3d 709 (2009).......................passim

11

*Branda v. Sanford*, 637 P.2d 1223 (1981) ...................................................................58

*Brandon v. Holt*, 469 U.S. 464 (1985)..........................................................................48

12

*Brannan v. Nevada Rock & Sand Co.*, 108 Nev. 23, 823 P.2d 291 (1992) ..................30

13

*Brascia v. Johnson*, 105 Nev. 592, 781 P.2d 765 (1989) .............................................11

*Brooks v. Logan*, 127 Idaho 484, 903 P.2d 73, 80 (1995) ..............................16, 19, 35

14

*Brown v. Elec. Arts, Inc.*, 724 F.3d 1235 (9th Cir. 2013) ..............................................9

*Bryan Cnty. v. Brown*, 520 U.S. 397 (1997) ................................................................38

15

*Butler v. Bayer*, 123 Nev. 450 (2007)...........................................................................63

16

*C.A. v. William S. Hart Union High School Dist.*, 270 P.3d 699 (Cal. 2012) ..............27

*Capra v. Thoroughbred Racing Asso.*, 787 F.2d 463 (9th Cir. 1986) ...........................62

17

*Castro v. Melchor*, 760 F.Supp.2d 970 .......................................................................50

18

*Chaudhry v. City of Los Angeles*, 751 F.3d 1096 (9th Cir.) *cert. denied sub nom* .........passim

*Christie v. Iopa*, 176 F.3d 1231 (9th Cir. 1999) ...........................................................44

19

*City of Boulder City v. Boulder Excavating, Inc.*, 124 Nev. 749, 191 P.3d 1175 (2008)......64

*City of Canton v. Harris*, 489 US 378 (1989)......................................................34, 47

20

*City of Los Angeles, Cal. v. Chaudhry*, 135 S. Ct. 295 (2014);...................................43

*City of Reno, Nev. v. Conn*, 131 S. Ct. 1812, 179 L. Ed. 2d 769 (2011) *and opinion*

21

*reinstated*, 658 F.3d 897 (9th Cir. 2011) .....................................................................35

22

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988)....................................................44

*Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 125 Nev. 374, 213 P.3d 496 (2009) 62

23

*Clausen v. M/V New Carissa*, 339 F.3d 1049 (9th Cir. 2003).......................................10

*Conn v. City of Reno*, 591 F.3d 1081 (9th Cir. 2010) *cert. granted, judgment vacated sub*

24

*nom*............................................................................................................................34, 35

*Copper Sands Homeowners Ass'n, Inc. v. Copper Sands Realty, LLC*, No. 2:10–cv–00510–

25

GMN–NJK, 2013 WL 3270430 (D.Nev., June 26, 2013) ............................................31

26

*Coppola v. Smith*, 982 F. Supp. 2d 1133 (E.D. Cal. 2013)......................................66, 67

*Corales v. Bennett*, 567 F.3d 554 (9th Cir. 2009) ...................................................15, 36

27

*Coulthurst v. United States*, 214 F.3d 106 (2nd Cir., 2000).........................................65

*Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975) ...............................................62

28

*Crowe v. Wiltel Commc'ns Sys.*, 103 F. 3d 897 (9th Cir. 1996) ...................................10

*Dang v. Cross*, 422 F3d 800 (9th Cir.2005) .................................................. 66

*Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999) ............................ 26

*DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189 (1989) ............ 40, 41

*Dillon v. Legg*, 68 Cal. 2d 728, 441 P.2d 912, 69 Cal. Rptr. 72 (Cal. 1968) ................. 32

*Dobson v. Sprint Nextel Corp.*, 2014 U.S. Dist. LEXIS 16353 *16 (D. Nev. February 10, 2014) ............................................................................................... 60

*Doe v. Durtschi*, 110 Idaho 466, 716 P.2d 1238 (1986) ...................................... 19

*Doe v. Mills*, 212 Mich. App. 73, 536 N.W.2d 824 (1995) ................................... 61

*Doud v. Las Vegas Hilton Corp.*, 109 Nev. 1096, 864 P.2d 796 (1993) .................. 10, 28

*Drummond v. Mid-West Growers*, 91 Nev. 698, 542 P.2d 198 (1975) ..................... 10, 11

*Drussel v. Elko County School District*, 2013 WL 3353531 *3 (D. Nev., July 2, 2013) ...... 47

*Eisel v. Bd. of Educ.*, 324 Md. 376, 597 A.2d 447 (1991) ................................. passim

*Erickson v. Pardus*, 551 U.S. 89 (2007) ....................................................... 25

*Erie R.R. v. Tompkins*, 304 U.S. 64 (1938) .................................................... 10

*Eskin v. Bartee*, 262 S.W.3d 727 (Tenn. 2008) ........................................... 32, 33

*Espinosa v. City and County of San Francisco*, 598 F.3d 528 (9th Cir. 2010) ................ 62

*Estate of Girard v. Town of Putnam*, No. CV085002754-S, 2011 WL 783599 (Conn. Super. Ct. Jan. 28, 2011) ......................................................................... 21, 42

*Etcheverry v. State*, 107 Nev. 782, 821 P.2d 350 (1991) .................................. 11, 22

*Falline v. GNLV Corp.*, 107 Nev. 1004, 823 P.2d 888 (1991) ................................ 65

*Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009) ........................... 38

*Frances v. Plaza Pacific Equities*, 109 Nev. 91, 847 P.2d 722 (1993) ....................... 11

*Franchise Tax Bd. of Cal. v. Hyatt*, ___Nev.___, 335 P.3d 125 (2014) ............... 59, 64, 65

*Franklin Sav. Corp. v. United States*, 180 F.3d 1124 (10th Cir. 1999) ...................... 65

*Gallardo v. Dicarlo*, 203 F. Supp. 2d 1160 (C.D. Cal. 2002) .............................. 9, 13

*Gillette v. Delmore*, 979 F.2d 1342 (9th Cir. 1992) ....................................... 44, 45

*Godoy v. Central Islip Union Free School Dist.*, 117 A.D.3d 901 (N.Y. App. Div. 2014) ... 27

*Granados v. Northern Nevada High Speed, LLC*, No. 3:14–cv–00081–LRH–VPC, 2014 WL 5503118 (D.Nev., October 30, 2014) .......................................................... 31

*Grotts v. Zahner*, 115 Nev. 339, 989 P.2d 415 (1999) ...................................... 32

*Hamm v. Carson City Nugget Inc.*, 85 Nev. 99, 450 P.2d 358 (1969) ................... 29, 30

*Hedges v. United States*, 404 F.3d 744 (3d Cir. 2005) ........................................ 9

*Henry A. v. Willden*, 678 F.3d 991 (Nev. 2012) ............................................ 37

*Hinegardner v. Marcor Resorts, L.P.V.*, 109 Nev 1091, 844 P.2d 800 (1992) ............... 30

*Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 873 (S.D. W. Va. 2014) 61

*Imbler v. Pachtman*, 424 U.S. 409 (1976) .................................................... 64

*Jacobs v. Adelson*, 325 P.3d 1282 (Nev. 2014) ............................................. 62

*Jasperson v. Anoka-Hennepin Indep. Sch. Dist. No. 11*, 2007 LEXIS 1071 (Minn. Ct. App. 2007) .................................................................................... 13, 14

*Jett v. Dallas Independent School Dist.*, 491 U.S. 701 (1989) ............................... 44

*Jones v. Williams*, 297 F.3d 930 (9th Cir.2002) ............................................ 34

*Joynt v. Cal. Hotel & Casino*, 108 Nev. 539, 835 P.2d 799 (1992) .......................... 11

*Karcher v. May*, 484 U.S. 72 (1987) ........................................................ 48

*Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir. 1991) ......................... 9

*Kennedy v. City of Ridgefield*, 439 F.3d 1055 ............................................... 37

*Klasch v. Walgreen Co.*, 264 P.3d 1155 (Nev. 2011) ........................................ 10

*Konig v. Nevada-California-Oregon Ry.*, 36 Nev. 181, 135 P. 141 (1913) ................... 11

*Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991) ................................. 45

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ..................................................50

*Lee v. GNLV Corp.*, 117 Nev. 291, 22 P.3d 209 (Nev. 2001) ............................................26

*Lubin v. Kunin et al*, 117 Nev. 107, 17 P.3d 422 (2001) ............................................56, 57

*Lytle v. Carl*, 382 F.3d 978 (9th Cir. 2004) ...............................................................44, 48

*Mahan v. Hafen*, 76 Nev. 220, 351 P.2d 617 (1960) ........................................................11

*Martinez v. Carson*, 697 F.3d 1252 (10th Cir. 2012) .....................................................34

*Martinez v. Maruszczak*, 123 Nev. 433 (2007) .........................................................63, 64

*McMillian v. Monroe County*, 520 U.S. 781 (1997) .........................................................44

*Menotti v. City of Seattle*, 409 F.3d 1113 (9th Cir. 2005) ...............................44, 49, 52

*Merluzzi v. Larson*, 96 Nev. 409, 610 P.2d 739 (1980) ...................................................10

*Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978) ...............passim

*Montesano v. Donrey Media Grp.*, 99 Nev. 644, 668 P.2d 1081 (1983) ...........................61

*Moore v. Chilton County Bd. of Educ.*, 936 F. Supp.2. 1300 (M.D. Ala. 2013) ..................42

*Moore v. Hamilton Southeastern Sch. Dist.*, 2013 U.S. Dist. LEXIS 123507, (S.D. Ind. Aug. 29, 2013) ...........................................................................................................20

*Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365 (9th Cir. 1998) ..................passim

*Morrow v. Asamera Minerals*, 112 Nev. 1347, 929 P.2d 959 (1996) ..................................10

*Morrow v. Balaski*, 719 F.3d 160 (3d Cir. 2013) ............................................................42

*Nehls v. Leonard*, 97 Nev. 325, 630 P.2d 258 (1981) .....................................................10

*Ortega v. Univ. of the Pac.*, 2013 U.S. Dist. LEXIS 163186, 9 (E.D. Cal. Nov. 14, 2013)....9

*OSU Student Alliance v. Ray*, 699 F.3d 1053 (9th Cir. 2012) ...........................................25

*Patel v. Kent School Dist.* 648 F.3d 965 (9th Cir. 2011) ...........................................passim

*Pearson v. Callahan*, 555 U.S. 223 (2009) ...................................................................62

*Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 57 P.3d 82 (2002) ...............................55

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ................................................44, 45

*Perez v. Las Vegas Medical Center*, 107 Nev. 1, 805 P.2d 589 (1991) ...............................28

*PETA v. Bobby Berosini Ltd.*, 111 Nev. 615, 895 P.2d 1269 (1995) ..................................58

*Porter v. Jones*, 319 F.3d 483 (9th Cir. 2003) .............................................................60

*Porter v. Osborn*, 546 F.3d 1131 (9th Cir. 2008) ...............................................50, 51, 53

*Preschooler II v. Clark County School Bd. of Trustees,* 479 F.3d 1175 (D.Nev. 2007) .......66

*Queen's Med. Ctr. v. Kaiser Found. Health Plan, Inc.*, 948 F. Supp. 2d 1131 (D. Haw. 2013) ...............................................................................................................25

*Riggs v. CCSD*, 19 F. Supp. 1177 (1998) .....................................................................58

*Rio Grande Reg'l Hosp., Inc. v. Villarreal*, 329 S.W.3d 594 (Tex. App. 2010)...................21

*Robertson v. Burlington N. R.R. Co.*, 32 F.3d 408 (9th Cir.1994).....................................31

*Rodriguez-Cirilo v. Garcia*, 115 F.3d 50 (1st Cir. 1997) .................................................35

*Rogers v. Christina Sch. Dist.*, 73 A.3d 1 (Del. 2013)............................................21, 42

*Rosenstein v. Clark County School Dist.*, 2014 U.S. Dist. LEXIS 90146 (D. Nev. July 2, 2014) ...................................................................................................................14

*Sacramento v. Lewis*, 523 U.S. 833 (1998).................................................................51

*Sager v. Woodland Park*, 543 F. Supp. 282 (D. Colo. 1982) ...........................................54

*Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 221 P.3d 1276 (2009)24, 26

*Scialabba v. Brandise Const. Co., Inc.*, 112 Nev. 965, 921 P.2d 928 (1996).......................24

*Scoggins v. Wal-Mart Stores*, Inc., 560 N.W.2d 564 (Iowa 1997) ....................................22

*Scott ex rel. Scott v. Montgomery County Bd. of Educ.*, 120 F.3d 262, 1997 U.S. App. LEXIS 21258 (4th Cir. Md. Aug. 12, 1997).........................................................13

*Shepard v. Harrison*, 100 Nev. 178, 678 P.2d 670 (1984) ..............................................11

*Shoen v. Amerco, Inc.*, 111 Nev. 735, 896 P.2d 469 (1995)............................................60

*Sims v. General Telephone & Electronics*, 107 Nev. 516, 815 P.2d 151 (1991).............24, 26

*Southern Pac. Co. v. Watkins*, 83 Nev. 471, 435 P.2d 498 (1967) ........................................28

*Sparks v. Alpha Tau Omega Fraternity, Inc.*, 255 P.3d 238 (Nev.,2011) ...............................26

*Spinedex Physical Therapy USA, Inc. v. United Healthcare of Ariz., Inc*., 661 F. Supp. 2d 1076 (D. Ariz. 2009) U.S. Dist. LEXIS 12754, 15 (E.D. Cal. Jan. 30, 2013)............9

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) .........................................14

*Starr v. Baca*, 652 F.3d 1202, (9th Cir. 2011) ..................................................................25, 38

*State v. Eaton*, 101 Nev. P.2d 1370, 1377-78 (1985) .............................................................32

*State v. Eighth Judicial Dist. Court (Anzalone)*, 118 Nev. 140, 42 P.3d 233 (2002) ...........62

*State v. Second Judicial Dist. Court ex rel. County of Washoe*, 118 Nev. 609, 55 P.3d 420 (2002)..........................................................................................................................64, 66

*State v. Silva*, 86 Nev. 911 (1970) ..........................................................................................63

*State, University and Community College System v. Sutton*, 120 Nev. 972, 103 P.3d 8, 14 (2004)..................................................................................................................................63

*Stevenson v. Koskey*, 877 F.2d 1435 (9th Cir. 1989) ..............................................................35

*Stocke v. Shuffle Master, Inc*., 615 F. Supp. 2d 1180 (D. Nev. 2009) .....................................9

*Sullivan v. Little Hunting Park*, 396 U.S. 229 (1969)............................................................54

*Swierkiewicz v. Sorema* N. A., 534 U.S. 506 (2002) ..............................................................25

*Tally v. Danek Medical, Inc*.,179 F.3d 154, 1158 (4th Cir., 1999)....................................31, 32

*Taylor v. Silva*, 96 Nev. 738, 615 P.2d 970 (1980).................................................................11

*Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1996) ..................................................................44, 49

*Turner v. Mandalay Sports Entertainment*, LLC, 124 Nev. 213, 180 P.3d, 1172 (2008) .....24

*Ulrich v. City and County of San Francisco*, 308 F.3d 968 (9th Cir. 2002)..........................44

*Van Cleave v. Kietz-Mill Minit Mart*, 97 Nev. 414, 633 P.2d 1220 (1981)............................10

*Vasquez-Brenes v. Las Vegas Metro Police Dep't*, ___ F.3d ___, 2014 WL 4471542 *8...50, 52, 53

*Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646 (1995)..........................................................26

*Vidovic v. Mentor City Sch. Dist*., 921 F. Supp. 2d 775 (N.D. Ohio 2013)....................13, 42

*Villagomes v. Lab. Corp. of Am*., 783 F. Supp. 2d 1121 (D. Nev. 2011) ........................32, 60

*Webb v. Sloan*, 330 F.3d 1158 (9th Cir. 2003) .......................................................................45

*Weiner v. San Diego County*, 210 F.3d 1025 (9th Cir. 2000).................................................44

*White v. Roper*, 901 F.2d 1501 (9th Cir.1990)........................................................................35

*Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012) .......................................................34

*Winstead v. Sweeney*, 205 Mich. App. 664, 517 N.W.2d 874 (1994) ....................................61

*Wyke v. Polk County School Bd.,* 129 F.3d 560 (11th Cir. 1997)....................................20, 42

*Wyke v. Polk County School Bd*., 898 F. Supp. 852 (M.D. Fla. 1995) ...................................42

*YG & LG v Jewish Hosp of St Louis*, 795 S.W.2d 488 (Mo App, 1990)................................61

## Statutes

20 U.S.C. § 1232g.....................................................................................................................61

42 U.S.C. § 1983.................................................................................................................passim

Cal. Ed. Code, § 32228 ............................................................................................................27

Cal. Ed. Code, § 32228.1 .........................................................................................................27

Cal. Ed. Code, § 32228.2 .........................................................................................................27

Cal. Ed. Code, § 32228.3 .........................................................................................................27

Cal. Ed. Code, § 32228.4 .........................................................................................................27

Cal. Ed. Code, § 32228.5 .........................................................................................................27

Cal. Ed. Code, § 35294.10 .......................................................................................................27

Cal. Ed. Code, § 35294.11 ...................................................................27
Cal. Ed. Code, § 35294.12 ...................................................................27
Cal. Ed. Code, § 35294.13 ...................................................................27
Cal. Ed. Code, § 35294.14 ...................................................................27
Cal. Ed. Code, § 35294.15 ...................................................................27
NRS § 132(4)(b) ..................................................................................28
NRS § 200.010 ....................................................................................23
NRS § 200.010(1) ................................................................................23
NRS § 200.020 ....................................................................................23
NRS § 202.100 ....................................................................................29
NRS § 388 ...........................................................................................27
NRS § 388.121 ....................................................................................32
NRS § 388.1315(1) ..............................................................................28
NRS § 388.1315(2) ..............................................................................28
NRS § 388.132(4)(b) ...........................................................................32
NRS § 388.133 ....................................................................................28
NRS § 388.134 ....................................................................................28
NRS § 388.135 .................................................................4, 12, 28, 67
NRS § 388.1351 ...........................................................................4, 28
NRS § 388.1351(1) .......................................................................passim
NRS § 388.1351(2) .......................................................................passim
NRS § 392.040 ....................................................................................41
NRS § 41.032(2) ...........................................................................64, 66
NRS § 41.035(1) ..................................................................................67
NRS § 41.085 ......................................................................................54
NRS § 42.00 ........................................................................................68
NRS § 42.085 ......................................................................................54
NRS § 432B.020 ..................................................................................56
NRS § 432B.090 ..................................................................................56
NRS § 432B.150 ..................................................................................56
NRS § 455.010 ....................................................................................30
NRS § 455.020 ....................................................................................30
NRS § 455.030 ....................................................................................30
NRS § 455.040 ....................................................................................30
NRS § 455.050 ....................................................................................30
NRS § 455.060 ....................................................................................30
NRS § 484.597 ....................................................................................30

**Other Authority**

5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure 1356
       (2d ed.1990) ...........................................................................13
71 Op. Att'y Gen. 1 (1971)..................................................................26
Armijo By & Through Chavez v. Wagon Mound Pub. Sch., 159 F.3d 1253
       (10th Cir. 1998).............................................................20, 37, 42
Cal. Const., art. I, § 28, subd. (a)(7) ...................................................27
Center for Disease Control, The Relationship Between Bullying and Suicide: What We
       Know and What it Means for Schools,

http://www.cdc.gov/violenceprevention/pdf/bullying-suicide-translation-final-a.pdf
.................................................................................................................17
HRMAND 1408, Safe & Respectful Learning Environment (SRLE) 2014-2015 ...............28
HRMAND 1411, SRLE - Bullying and Cyber-Bullying 2014-2015, ...................................28
Op. Att'y Gen. 67-384 (1967)............................................................................................26
Restatement (Second) of Torts § 440 (1965) ...................................................................35
Restatement (Second) of Torts § 441(a) (1965) ..............................................................16
Restatement (Second) of Torts § 441(c) (1965) ..............................................................21
Restatement (Second) of Torts § 442 (1965) ..................................................................16
Restatement (Second) of Torts § 558..............................................................................58
W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 37 (5th ed.1984) ............24

## I.    INTRODUCTION

This is a wrongful death and survival action brought by the parents and little brother of a middle school girl, Hailee Joy Lamberth.  Hailee suffered from severe bullying at Defendants' school.  Defendants were aware of the bullying, in some instances witnessed it, and even received a formal bullying report from a fellow middle school girl who was concerned about Hailee.  The report stated that Hailee had been bullied for "a very long time now," that she was being called a "fatass," an "ugly bitch," and "stupid," and that Hailee was crying "almost every day, as these mean comments are said about her."

State law required Defendants to provide written notice of any reported bullying to Hailee's parents.  Defendants did not.  Defendants ignored the law, which was written to protect children like Hailee from the isolating reality of bullying and to make sure parents knew bullying was taking place.  Defendants hid Hailee's bullying from her parents, and sent her back to class.

Prior to taking her own life, Hailee wrote a final note which said, "I only ask that you tell my school I killed myself so maybe next time people like [C.H.] wants to call someone pimple face or emo ass bitch, he won't."

Defendants breached their duty to Hailee and her parents by failing to notify Hailee's parents of the reported bullying, and thereby depriving them of the opportunity to intervene; by failing to provide Hailee with a safe and respectful learning environment; by failing to investigate the bullying she endured; and by failing to address the harassment and pervasive bullying Hailee faced at Thurman White Middle School.

## II.    FACTS

### A.  About Hailee

Hailee Lamberth was the 12 year old daughter of Jason and Jennifer Lamberth and the beloved older sister of her six year old brother, Jacob Lamberth.  *See*, Complaint Paragraph 5.  On or about August 26, 2013, Hailee Joy Lamberth began the seventh grade at Thurman White Middle School ("TWMS").  *See*, Paragraph 19.  TWMS is part of the Clark County School District ("CCSD").  *See*, Paragraph 8.  Hailee enjoyed academics, earning straight As and honor roll awards.  She had many friends and a close and supportive family.  Hailee was very artistic

and enjoyed painting, drawing, and making crafts.  *See*, Paragraph 20.  Hailee played starting goalie on her soccer team, The Quails, and she helped them win multiple Henderson United Youth Soccer league championships.  Hailee also loved to go camping, hiking, and fishing.  *See*, Paragraph 21.  Recently diagnosed with epilepsy, Hailee would endure petit mal and grand mal seizures at times, with grace and determination.  *See*, Paragraph 22.

**B. Bullying at TWMS; and Severe Bullying Endured by Hailee**

Beginning in August 2013 and proceeding until Hailee's suicide on December 12, 2013, severe and abusive acts of bullying[1] confronted Hailee on both discrete occasions and a pervasive basis at TWMS.  *See*, Paragraph 25. A voice mail recorded on Hailee's phone on September 27, 2013 mocked Hailee's seizures, and appeared to state "Where are you Hailee?  I hope you died." *See* Paragraph 26.  After Hailee's death fellow student, C.S., made the following statements to TWMS:  "I have actually seen C.H. bully Hailee.  I don't remember the exact date when it happened but I know it happened at lunch around Thanksgiving time, he was pushing her around and he called her 'fat' and 'ugly.'"  C.S. continued, "I went up to him and said stop but from that day he actually started to bully me." *See*, Paragraph 27.  TWMS previously suspended C.H. for three days on two occasions for the bullying of other students. *See*, Paragraph 28.

Hailee and her peers witnessed acts of bullying by C.H. towards students on a regular basis.  Such acts included threats to "kill you."  *See*, Paragraph 29. C.H. also left letters in Hailee's locker, instructing her to "Drink Bleach and Die," and posing the question "Why don't you die?" *See*, Paragraph 30.  Hailee endured bullying in her P.E. class as well.  On or about November 2013, TMWS student C.G. reported the following:  "Hailee Lamberth was bullied by [J.J.] The bullying took place in Mrs. Jefferson's fourth period P.E. class.  During the P.E.

---

[1] Notably, CCSD's own Policies describe bullying as "a deliberate or intentional behavior using words or actions intended to cause intimidation or fear." CCSD, P-5137(II)(A). Further, CCSD's definition specifically includes: physical acts, such as assaults, kicking, or punching; "indirect acts," such as "spreading cruel rumors, intimidation through gestures, social exclusion, or sending insulting messages or pictures…;" use of power imbalances, such as physical or psychological dominance, or verbal threats such as "teasing and name calling," intimidation, punitive acts aimed at hurting or punishing a targeted individual, or repetitive, systematic acts.  CCSD, P-5137(II)(A)(1)-(6).  *See*, Paragraph 50.

activities, [J.J.] would call Hailee a fat ass, stupid bitch, and a slut.  <u>The bullying had been going on for a long time now (about two months).  Almost everyday…No one was doing anything about the bullying</u>, so I, [C.G.] stood up for my best friend and reported the bullying on the website link."  *See*, Paragraph 31 (emphasis added).  In an interview associated with the statement, C.G. reiterated, "Hailee was being bullied for quite a long time, social and verbal bullying and that she didn't want fingers being pointed."  A list of witnesses to the long term bullying in the P.E. class specifically included P.E. teacher, Mrs. Kim Jefferson.  *See*, Paragraph 32.

## C.  Defendants Ignored State Law and CCSD Policy

Despite Nevada statutory mandates (as set forth in NRS § 388.1351(1)) and a CCSD Policy which require any employee who "witnesses, overhears, or receives a report, formal or informal, written or oral, of bullying, cyberbullying, harassment, and/or intimidation at school…" to report it to a principal or principal's designee, Mrs. Jefferson made no report of the bullying she witnessed Hailee endure in her P.E. class.  *See*, Paragraph 33.

On November 20, 2013, C.G. reported Hailee's bullying on a CCSD website designed to report incidents of bullying at CCSD schools.  According to CCSD's redacted version, the report stated:  "[Redacted name] has called Hailee a "fatass" (which she is not), an "ugly bitch" and has called her stupid (also something she is not).  This has been going on for a very long time now.  [Redacted name] has made Hailee cry almost every day, as these mean comments are said about her."  *See*, Paragraph 34.  According to a March 14, 2014 email from TWMS Principal, Andrea Katona, to Jason Lamberth, "after an entry is made to the anonymous online bullying website, an automated email is generated from the website and sent to the school administration notifying them that a submission was made."  *See*, Paragraph 35.

Having received a report of Hailee's bullying, the TWMS Progressive Discipline Plan required school officials to obtain written statements from multiple witnesses of the reported incident of bullying.  The Defendants ignored this requirement and elected not to interview any of the students in the vicinity of the reported bullying, a P.E. class filled with Hailee's fellow students.  *See*, Paragraph 36.

The online entry and notification also triggered the mandates of NRS § 388.1351, which governs the statutory duties of school staff possessing information related to peer on peer bullying under NRS § 388.135.  Section 1 states:  "A teacher or other staff member who witnesses a violation of NRS § 388.135 or receives information that a violation of NRS § 388.135 has occurred shall verbally report the violation to the principal or his or her designee on the day on which the teacher or other staff member witnessed the violation or received information regarding the occurrence of the violation."  Thus, whoever in the administration received the online report of bullying was required to report the violation to the principal.  *See*, Paragraph 37.  The law required the principal to provide written notice of a reported violation of NRS § 388.135 to the parent of each involved pupil.  NRS § 388.1351(2) mandates that:  "The principal or his or her designee shall initiate an investigation not later than 1 day after receiving notice of the violation pursuant to subsection 1.  <u>The principal or the designee shall provide written notice of a reported violation of NRS 388.135 to the parent or legal guardian of each pupil involved in the reported violation.</u>" (emphasis added).   The law further demands that the "<u>notice must include, without limitation, a statement that the principal or the designee will be conducting an investigation into the reported violation and that the parent or legal guardian may discuss with the principal or the designee any counseling or intervention services that are available to the pupil.</u>"[2] (emphasis added).  *See*, Paragraph 38.  Despite this statutory prescription, no CCSD principal, official or staff member provided parental notification of the bullying report to Jason or Jennifer.  Hailee's family received no information regarding the humiliation and suffering she was enduring.  Nor did the family have the opportunity to access any counseling or intervention services for Hailee.  *See*, Paragraph 39.

On December 12, 2013 – just three weeks after C.G. courageously reported Hailee's bullying on the CCSD website – Hailee took her own life.  *See*, Paragraph 40.  Jason Lamberth and his six year old son discovered Hailee's lifeless body in their den.  *See, id*.

---

[2] The statute requires a timely investigation.  "The investigation must be completed within 10 days after the date on which the investigation is initiated and, if a violation is found to have occurred, include recommendations concerning the imposition of disciplinary action or other measures to be imposed as a result of the violation."  N.R.S. § 388.1351(2).  *See*, Paragraph 38.

Hailee's suicide note illustrates the dangers of a school district ignoring documented acts of bullying and failing to live up to their statutory responsibilities.  "I only ask that you tell my school I killed myself so maybe next time people like [C.H.] wants to call someone pimple face or emo ass bitch, he won't."  The Lamberths were given this note by Las Vegas Metropolitan Police Dept. (Metro)  investigators two weeks after Jason Lamberth and his six year old son, Jacob Lamberth, discovered Hailee's lifeless body in their den.  *See*, Paragraph 40 (emphasis added).  Prior to her suicide, Hailee endured months of daily abuse.  *See*, Paragraph 31.  On a daily basis she was ridiculed and belittled; told to "die"; endured threats to "kill you"; and called ugly and demeaning names like: "fat ass," "ugly bitch, "slut," and "stupid bitch."  *See*, Paragraphs 27, 29-32, 34.  Every day she cried.  *See*, Paragraph 34.  She did not want to point fingers because – if she was at all like most children her age – she feared that doing so would only invite a greater wrath from her tormentors.  *See*, Paragraph 32.

Hailee was a 12 year old girl, who turned 13 a few days before her death, and who needed the aid and intervention of an adult.  Hailee's torment took place in an environment totally controlled by Defendants.  *See*, Paragraphs 8-17. Nonetheless, when Defendants became aware of Hailee's severe and pervasive bullying they ignored statutory mandates, including their obligation pursuant to NRS § 388.1351(2) to inform Hailee's parent of what their child was enduring.  *See*, Paragraph 39.  Had Jason or Jennifer Lamberth only known what was happening to their child at TWMS, they would have had an opportunity to remove her from the torment that Defendants allowed her to suffer.  Sadly, neither Jason nor Jennifer were accorded this opportunity because the Defendants ignored their statutory obligations; and now Hailee is gone. *See*, Paragraph 39.

Following Hailee's suicide, Jason, Jennifer and Jacob were devastated.  They endured sleepless nights, breathtaking trauma, and profound loss.  *See*, Paragraph 41.  They sought solace in Hailee's pictures, comfort from her friends, and explanations from her school.  *See*, *id*. Despite CCSD's claim, discussed infra, that the Complaint lacks "any conscience-shocking allegations," Motion to Dismiss at 39:6-7, the students and parent population at CCSD reeled from the shock and horror that the school knew about Hailee's plight and did nothing to inform

her parents

**D.  Defendants Attempt to Cover Up Their Wrongdoing**

On February 6, 2014, Jason  and Jennifer Lamberth met with Principal Katona  and Andre Long, (Academic Manager for the area of CCSD that includes TWMS), to better understand the events leading up to their daughter's death.  At that meeting, Principal Katona and Academic Manager Long made no mention of the Nov. 20, 2013 bullying report.  Principal Katona stated that she never had any reason to believe that Hailee had ever been bullied, and therefore never had any reason to conduct an investigation; Principal Katona also admitted that she had not conducted an investigation after Hailee's death.  Despite statements by Principal Katona to the contrary, it appears from the record available to Plaintiffs that Principal Katona never told the police about the online bullying report during the police investigation, which followed Hailee's death.  *See*, Paragraph 42.

On February 27, 2014, Jason spoke with the CCSD Board of Trustees to discuss his concerns about the safety of the learning environment at TWMS.  At that meeting, the Board members made no mention of the Nov. 20, 2013 bullying report.  *See*, Paragraph 43.  On March 10, 2014, Jason met with the dean of TMWS, Ron Kamman, and requested any files related to his daughter, including any disciplinary files.  Dean Kamman stated that no disciplinary files existed, since Hailee was an "exemplary" child.  *See*, Paragraph 45.  Troubled by the lack of information, Jason returned to the school again that same day.  Principal Katona met Jason and gave him Hailee's disciplinary file.  The file contained a printout of a computer entry stating: "It was reported using the bullying website that Hailee was being bothered in PE [redaction] Deans investigated and handled the incident."  The incident date provided was November 21, 2013, and the location was listed as the gym.  The disposition description stated only: "conference student." *See*, Paragraph 46.

Jason and Jennifer were stunned.  This was the first time they had heard anything about a bullying incident or the online complaint.  Jason emailed Principal Katona on March 12, seeking answers, asking: "Why is it that in previous meetings with you, you never made any mention of this report?"  *See*, Paragraph 47. Principal Katona admitted her failure to disclose the report in an

email dated March 12, 2014.  *See*, Paragraph 48.  It appears now that the Jason and Jennifer's persistent inquiries from February to mid-March finally prompted CCSD to launch an investigation of the circumstances related to the online complaint and the bullying of Hailee. *See*, Paragraph 49.   As part of the investigation, TWMS officials interviewed student C.G. on March 17, 2014.  TWMS officials interviewed student C.S. on March 19, 2014.  These interview statements, as described previously, substantiated ongoing and severe acts of bullying, including physical violence, against Hailee.  *See*, Paragraph 49.

Increasingly frustrated by the evasiveness of TWMS, Jason Lamberth met with CCSD Superintendent Pat Skorkowski on March 17, 2014 to discuss his concerns.  Superintendent Skorkowski responded to his numbered questions, in a written letter dated March 25, 2014, with attachments.  *See*, Paragraph 51.  Based upon the information available to Plaintiffs, it appears that one such attachment was authored by Principal Katona.  *See*, Paragraph 51. That attachment provided a false chronology related to Hailee Lamberth.  *See*, Paragraph 51.  In this purported chronology, Principal Katona also made egregiously false and malicious statements defaming Jason and Jennifer Lamberth, outrageously and falsely claiming that Jason Lamberth abused Hailee. *See*, Paragraph 52.

The lies and evasiveness of the Defendants when confronted with direct questions regarding the death of Hailee strongly suggest that the Defendants were attempting to cover up known wrongdoing.  The false chronology crafted by Principal Katona only adds to the other evidence which suggests that Defendants knew that they violated the law when they ignored their statutory requirement to inform Hailee's parents of her bullying and that they understood the effect that their refusal to abide the law had on the life of Hailee and those of her surviving family members.  This also raises the question as to whether Defendants' election not to contact Hailee's parents after they received notice of her bullying was  motivated by a concern that such disclosure – i.e., that Hailee was permitted to suffer daily torment at TWMS –  could show them in a bad light.

/ / /

/ / /

**E. Sabreena Adams Makes Egregiously False and Malicious Statements Defaming Jason and Jennifer Lamberth.**

As noted above, it appears that Principal Katona drafted a false chronology related to Hailee Lamberth in order to avoid liability for her and the other Defendant's relating to their refusal to abide by CCSD and state law. *See*, Paragraph 51. The false chronology included an outrageously false and defamatory statement: "that Hailee's Dad beat her." *See*, Paragraph 52, 103. On March 31, 2014, CCSD circulated this statement to a third party, the parent of another student in the school district. *See*, Paragraph 53.

**F. Sabreena Adams and CCSD Make Public Exposure of Private Information Related to Hailee and Her Family**

Sabreena Adams was the school guidance counselor at TWMS. *See*, Paragraph 15. In that capacity she had access to sensitive information relating to the lives of the students under her charge, including Hailee. *See*, Paragraphs 108-111, 114-117. School policy and federal law required Adams to maintain the confidentiality of the information she obtained by way of the access to students that her position granted her. *See*, Paragraphs 108-111, 114-117. Nonetheless, in response to a story about Hailee in the Las Vegas Review Journal, Ms. Adams posted the following to Facebook, "Frustrating we have been working tirelessly to help ALL these students and still get painted as the bad guys. Ps…Kid is NOT still at our school nor was he bullying her." *See*, Paragraph 44. Adams continued, "[School principal] Andi has gone above and beyond…And she is still the monster. *See*, Paragraph 44. We even bought her younger brother Christmas and bday presents at the parents request yet were still the enemy." *See*, Paragraph 44. Upon information and belief, these statements appeared before an audience of more than 500 individuals. *See*, Paragraph 44.

The Lamberths have continued to suffer deeply in their grief and sorrow, their loss of their daughter, and in their knowledge that Hailee was suffering so much prior to her death.

**III.   ARGUMENT**

**A.   LEGAL STANDARD**

A complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2),

"a short and plain statement." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007); Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[E]ven after *Iqbal*, we must continue to accept all factual allegations as true, [and] construe the complaint in the light most favorable to the plaintiff." *Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 74 (3d Cir. 2011). "[I]n the context of a motion to dismiss, [a court must] accept [plaintiff's] factual allegations as true," *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1244 (9th Cir. 2013), and "all inferences must be construed in the light most favorable to the plaintiff." *Stocke v. Shuffle Master, Inc.*, 615 F. Supp. 2d 1180, 1186 (D. Nev. 2009).

"It is the burden of the party bringing a motion to dismiss for failure to state a claim to demonstrate that the requirements of Rule 8(a)(2) have not been met." *Gallardo v. Dicarlo*, 203 F. Supp. 2d 1160, 1165 (C.D. Cal. 2002); *see also Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) ("Under Rule 12(b)(6) the defendant has the burden of showing no claim has been stated."); *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005); *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006); *Spinedex Physical Therapy USA, Inc. v. United Healthcare of Ariz., Inc.*, 661 F. Supp. 2d 1076, 1083 (D. Ariz. 2009) U.S. Dist. LEXIS 12754, 15 (E.D. Cal. Jan. 30, 2013); *Ortega v. Univ. of the Pac.*, 2013 U.S. Dist. LEXIS 163186, 9 (E.D. Cal. Nov. 14, 2013).

Here, as set forth below, Plaintiffs have met the foregoing pleading standard with their extensive Complaint, which includes more than 35 very specific and detailed factual allegations, which far exceed mere "naked assertions" or "labels and conclusions."

/ / /

/ / /

/ / /

**B.    CLAIMS I THROUGH III FOR NEVADA TORT CLAIMS ADEQUATELY
ALLEGE PROXIMATE CAUSE UNDER NEVADA LAW.**

**1.    State Law Applies to Substantive Issues Such as Causation, Relating
to State Tort Claims, Which the Federal Court Hears Under
Supplemental Jurisdiction.**

On pages 5-15 of their Brief, Defendants argue that Claims for Relief I through VII of the

Complaint must be dismissed because none of the actions of the CCSD Defendants could have

been a proximate cause of Hailee's death.  The first three claims for relief: 1)

negligence/wrongful death; 2) negligence per se/wrongful death; and 3) negligent infliction of

emotional distress/immediate family bystander, are state tort law claims for which this Court has

supplemental jurisdiction.  When a federal court exercises supplemental jurisdiction over a state

law claim, the district court follows state law in deciding the substantive issues before the court.

*Crowe v. Wiltel Commc'ns Sys.*, 103 F. 3d 897, 899 (9th Cir. 1996).  Causation is a substantive

issue.  *Morrow v. Asamera Minerals*, 112 Nev. 1347, 1349, 929 P.2d 959, 961 (1996).  Thus,

because  Plaintiffs' Claims for Relief I through III involve state tort law claims in federal court

under the doctrine of supplemental jurisdiction, the Court is required under the *Erie* doctrine,

*Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938), to follow Nevada substantive law in adjudicating

those claims.  *See Clausen v. M/V New Carissa*, 339 F.3d 1049, 1064 n.5 (9th Cir. 2003).

**2.    Plaintiff's Complaint Has Met the Test for Pleading Proximate Cause
Under State Law.**

a.    Proximate cause is a question of fact.

 "In Nevada, issues of negligence and proximate cause are considered issues of fact and

not of law, and thus they are for the jury to resolve."  *Nehls v. Leonard*, 97 Nev. 325, 328, 630

P.2d 258, 260 (1981); *citing Merluzzi v. Larson*, 96 Nev. 409, 610 P.2d 739 (1980); *Drummond

v. Mid-West Growers*, 91 Nev. 698, 704, 542 P.2d 198 (1975); *see also Klasch v. Walgreen Co.*,

264 P.3d 1155, 1161 (Nev. 2011); *Van Cleave v. Kietz-Mill Minit Mart*, 97 Nev. 414, 417, 633

P.2d 1220, 1222 (1981) ("Courts are reluctant to grant summary judgment in negligence cases

because foreseeability, duty, proximate cause and reasonableness usually are questions of fact for

the jury."); *Doud v. Las Vegas Hilton Corp.*, 109 Nev. 1096, 1106, 864 P.2d 796, 802 (1993)

("[Q]uestions of negligence, proximate cause, and intervening cause are generally questions of fact and not of law and are thus best left for the jury to decide.") (*citing Frances v. Plaza Pacific Equities*, 109 Nev. 91, 847 P.2d 722 (1993)); *Brascia v. Johnson*, 105 Nev. 592, 781 P.2d 765 (1989).  The questions of negligence and proximate cause become questions of law "only when the evidence will support no other inference."  *Joynt v. Cal. Hotel & Casino*, 108 Nev. 539, 542, 835 P.2d 799, 801 (1992) (*citing Shepard v. Harrison*, 100 Nev. 178, 180, 678 P.2d 670, 672 (1984)).

Proximate cause has been defined as "any cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury complained of and without which the result would not have occurred."  *Taylor v. Silva*, 96 Nev. 738, 741, 615 P.2d 970, 971 (1980), *citing Mahan v. Hafen*, 76 Nev. 220, 225, 351 P.2d 617, 620 (1960).  "An intervening act will supersede the original culpable act where the intervening act is an unforeseeable, independent, non-concurrent cause of the injury; the intervening cause must, effectively, break the chain of causation." *Bostic v. State*, 104 Nev. 367, 370, 760 P.2d 1241, 1243 (1988).  Not every intervening cause serves as a superseding cause absolving the prior negligence.  *Drummond v. Mid-W. Growers Coop. Corp.*, 91 Nev. 698, 705, 542 P.2d 198, 203 (1975); *see also Etcheverry v. State*, 107 Nev. 782, 785, 821 P.2d 350, 351-52 (1991):

> Any "intervening cause must, effectively, break the chain of causation." *Bostic v. State*, 104 Nev. 367, 370, 760 P.2d 1241, 1243 (1988).  Thus, an intervening cause must be a superseding cause, or the sole cause of the injury in order to completely excuse the prior act.  *See Drummond v. Mid-West Growers*, 91 Nev. 698, 705, 542 P.2d 198, 203 (1975) (*citing Konig v. Nevada-California-Oregon Ry.*, 36 Nev. 181, 135 P. 141 (1913); *Alex Novack & Sons v. Hoppin*, 77 Nev. 33, 359 P.2d 390 (1961)). Etcheverry testified that he was only affected by the alcohol "to a small extent."  However, its affect to any extent in contributing to Costa's injuries, no matter how small, may be enough to show proximate cause.  *See Alex Novack & Sons*, 77 Nev. at 39, 359 P.2d at 393 (any act or omission may be "regarded in law as a proximate cause.").

107 Nev. at 785, 821 P.2d at 351-52. (emphasis added)

/ / /

/ / /

b.   <u>The Complaint meets the pleading standards for Claims I, II and III under *Iqbal* and *Twombly*.</u>

Defendants incorrectly argue that "plaintiffs' allegations of proximate cause are conclusory at best." (MTD at 7:2-3.)  To support this argument, they refer to five paragraphs from the Complaint (62-64)(75-56).  In Paragraphs 62-64, Plaintiff's allege that Defendants' negligent actions caused Plaintiffs harm.  Paragraphs 75 and 76 allege the same about Defendants' actions that amounted to negligence per se.  Defendants fail to also recognize Paragraphs 19 through 55 of the Complaint, which detail Defendants' wrongful actions and are specifically incorporated by reference in Plaintiffs' First Claim for Relief (Negligence) at paragraph 56, Plaintiffs' Second Claim for Relief (Negligence Per Se) at Paragraph 65, and Plaintiffs' Third Claim for Relief (Negligent Infliction of Emotional Distress) at Paragraph 78. The pertinent facts, related to the first three claims for relief, as alleged in the Complaint, include:

A.  Hailee Lamberth was a student at Thurman White Middle School who experienced school bullying from August 2013 through approximately December 12, 2013. (Paragraphs: 19-31.)

B.  At least three weeks prior to Hailee's suicide, Defendants were made aware of the severe and protracted bullying Hailee was being subjected to. (Paragraph: 32, 34.)

C.  Despite this knowledge Defendants failed to adhere to NRS § 388.1351(1), which states: "A teacher or other staff member who witnesses a violation of NRS § 388.135 or receives information that a violation of NRS § 388.135 has occurred shall verbally report the violation to the principal or his or her designee on the day on which the teacher or other staff member witnessed the violation or received information regarding the occurrence of the violation." (Paragraph: 33, 37.)

D.  Defendants failed to follow mandated District Procedure by neither properly tracking, nor investigating the report of Hailee being bullied. (Paragraphs: 36, 37.)

E.  The failure to notify Hailee's parents of the report of her being bullied was in direct contradiction to the mandate of NRS § 388.1351(2). (Paragraphs: 38, 39.)

F.   Hailee took her life on December 12, 2013, leaving a suicide note relating the unrelieved bullying she endured at Thurman White Middle School as the cause. The note stated: "I only ask that you tell my school I killed myself so maybe the  next time people like [C.H.] wants to call someone pimple face or emo ass bitch, he won't." (Paragraph 40.)

These are no mere conclusory statements, but instead, are a litany of factual allegations, which meet the pleadings standards under *Iqbal* and *Twombly*.  Defendants have failed to satisfy their burden of demonstrating that Plaintiffs have failed to properly plead causation as to Claims I, II and III.  *See e.g., Gallardo*, 203 F. Supp. 2d at 1160.

c.   <u>Defendants' cited cases do not support dismissal of Claims I, II, and III.</u>

Defendants rely extensively on cases involving motions for summary judgment, rather than motions to dismiss.  A motion for summary judgment goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact, while a Motion to Dismiss only tests whether the claim has been adequately stated in the complaint. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure 1356 (2d ed.1990).  Defendants' cases are inapplicable because standards of analysis differ markedly between those two types of motions. (see, e.g., *Scott ex rel. Scott v. Montgomery County Bd. of Educ.*, 120 F.3d 262, 1997 U.S. App. LEXIS 21258 (4th Cir. Md. Aug. 12, 1997) *12, 16 (finding there was "not sufficient evidence" to support claims on a motion for summary judgment); *Vidovic v. Mentor City Sch. Dist.*, 921 F. Supp. 2d 775, 799 (N.D. Ohio 2013) (state law claims dismissed on jurisdictional grounds following summary judgment motion); *Jasperson v. Anoka-Hennepin Indep. Sch. Dist. No. 11*, 2007 LEXIS 1071, *3-4, 14 (Minn. Ct. App. 2007) (summary judgment granted where evidence presented was insufficient).

Moreover, the cases are factually distinguishable.  As referenced above, the bullying in *Jasperson* took place outside of school and the school was unaware of it.  In *Vidovic*, for example, there was no assertion of affirmative acts by defendants; the suicide note stated the student had been depressed since moving to the US, and - had long history of academic and

disciplinary problems as well as history of institutionalization.  *Id*. at 788.  The student's parents were aware of her mental health problem, and problems with other students going back to junior high.  *Id.* at 782-83.  She was not even enrolled in school when she took her life, but was being home schooled.  *Id.* at 791.  In *Vidovic* neither the school nor the parents, nor even the mental health professionals could prevent the young lady from taking her life.  In contrast, the bullying activities that caused Hailee Lambert to take her life were ignored by Defendants while her parents were kept in the dark.

     *Jasperson* also has a very different factual scenario.  There the bullying that the school was aware of occurred not in school, but in a public park, and by former students of the school.  *Id.* at * 3-4.  The Court ruled that no one at the school was aware of any continuing bullying problems in or out of school.  "The record does not suggest any change in J.S.'s demeanor or behavior indicating that he was experiencing terror or distress, and none of J.S.'s friends alerted his family or school personnel that J.S. was distressed or in fear."  *Id.* at 14.

     *Bogust v. Iverson*, 10 Wis. 2d 129, 102 N.W.2d 228 (1960) involved the suicide of a college student.  This case is distinguishable as colleges are not in the same position *in loco parentis*, as is the case in junior high school.  Moreover, college students have the option of dropping out, while only the parents of a junior high school student can remove the child from school.  That is why the failure to inform Hailee's parents of the bullying was so crucial.  Hailee herself had no way of addressing the problem.

     Defendants also unsuccessfully attempt to equate this case with *Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir. 2001).  The *Sprewell* Court involved an arbitration award which "effectively and persuasively rebut[ted] the conclusory allegations" the plaintiff made in his complaint.  *Id.* at 989.  The distinction is obvious even to the casual reader.

     Finally, Defendants rely on *Rosenstein v. Clark County School Dist.*, 2014 U.S. Dist. LEXIS 90146 (D. Nev. July 2, 2014), which involved abuse of a special education student.  *Id.* at *1-2.  In that case, Defendant CCSD filed a motion asserting that it was immune from the suit, but Court disagreed, finding that the "thrust" of the cause of action was that the defendants had "violated Nevada statutes by not properly investigating N.R.'s injuries and lack of subsequent

communication…." *Id.* at 13-14.  "The factual allegations of N.R.'s injuries as well as the allegedly inconsistent "incident report" provide substance to the third cause of action in this regard."  *Id.*  Thus, the negligence claim against CCSD and the administrative defendants was allowed to proceed.  *Id.*

### 3.   Suicide Is Not An Intervening Superseding Cause Under State Law.

#### a.   *Bower* is inapplicable because the instant case involves no third party

Defendants argue the existence of a practically universal rule that a student suicide is an intervening superseding event that negates CCSD Defendants' negligence as a proximate cause of Hailee's death.  The reality is more complex, as case law indicates that each case was determined based on the specific facts and circumstances alleged in that case, rather than in conformity to any non-existing universal rule.  No two cases are exactly alike.

*Corales v. Bennett*, 567 F.3d 554, 560 (9th Cir. 2009) offers scant support for Defendants' position.  *Corales*, too, involved summary judgment, not a motion to dismiss.  *Id.* at 559.  Furthermore, no bullying, nor failure to notify parents was involved.  Instead, the case involved a middle school student who was disciplined for attempting to leave campus to participate in a neighborhood protest rally.  *Id.*  The student told his mother that school authorities had "caught him walking out, and that he was in trouble and going to lose one of his eighth-grade activities as a result." *Id.* at 160.  His "mother testified that he didn't say anything to make her worry about his safety." *Id.* at 161.  There was no violation of any law requiring the vice principal to report his conversation with the student.  After dismissal and upon returning home the child telephoned his mother and explained what happened.  He was worried that his mother would be upset.  Before his mother returned home from work the decedent killed himself. In the note he left the decedent explained his suicide: "I killed myself because [I] have to[o] many problems." *Corales v. Bennett*, 567 F.3d 554, 560-61 (9th Cir. 2009).  Based on those particular factual allegations, the Court granted summary judgment to Defendant.

On page 9 of their brief, Defendants argue that the question of proximate cause is governed by the six factor test for an intervening cause set forth in *Bower v. Harrah's Laughlin, Inc.*, 125 Nev. 470, 215 P.3d 709, 725 (2009): whether:

"(1) the intervention causes the kind of harm expected to result from the actor's negligence, (2) the intervening event is normal or extraordinary in the circumstances, (3) the intervening source is independent or a normal result of the actor's negligence, (4) the intervening act or omission is that of a third party, (5) the intervening act is a wrongful act of a third party that would subject him to liability, and (6) the culpability of the third person's intervening act."  Restatement (Second) of Torts § 442 (1965).

This test is clearly inapplicable to the instant case because no third party was involved. *See  Brooks v. Logan*, 127 Idaho 484, 491, 903 P.2d 73, 80 (1995) ("We do not find this argument persuasive in light of our previous holdings requiring an act by a third person or other force in order to establish an intervening, superseding cause.")  While Section 442 discusses intervening events, the term itself is defined in Restatement (Second) of Torts § 441(a) (1965) ("Intervening Force Defined – (1) An intervening force is one which actively operates in producing harm to another after the actor's negligent act or omission has been committed.") Clearly, this analysis that any intervening action be made by a third party – something that does not exist here —  -illustrates the type of third party action that serves as an intervening, superseding cause.

*Bower* arose from the 2002 lethal battle between the Hell's Angels and the Mongols at Harrah's Hotel in Laughlin, Nevada. 125 Nev. at 475, 215 P.3d at 714.  Two bystanders who were taken into custody by LVMPD (Metro), sued Harrah's for negligence based on the injuries they received while in police custody. 125 Nev. at 492, 215 P.3d at 725. The Court granted Harrah's summary judgment because police misconduct was an unforeseen intervening and superseding cause.

Here, Metro's acts were unforeseeable intentional torts and, therefore, were a superseding intervening cause, precluding Harrah's liability. Metro's intervention caused Lewis to be walked by police with her breast exposed, caused them both to be handcuffed and detained, and prevented Garcia from taking his medication, causing him to suffer seizures. This harm is not the type expected from Harrah's negligence in failing to protect its patrons from the criminal acts of the gangs. Harrah's negligence would cause harm such as patrons suffering injuries in the brawl or having their stay disrupted by the brawl. Metro's intentional mistreatment of Garcia and Lewis is extraordinary and outside the type of harm reasonably expected from Harrah's negligence. Also, although Metro's presence may be a normal result of Harrah's

negligence, Metro's wrongful treatment of Garcia and Lewis was intentional and independent of Harrah's negligence. Further, Metro was a third party, and Harrah's itself was not involved in the altercation between Garcia and Lewis and Metro. Finally, Metro's treatment of Garcia and Lewis was wrongful and suggests a high degree of culpability. Thus, Metro's acts were unforeseeable because Harrah's could not have anticipated that Metro would take advantage of such an emergency to commit tortious acts against its patrons.

*Id.*

Clearly, *Bower* does not present much of an analogy to the instant case. There, the injuries were created by the tortious conduct of an independent third party – the police. Thus, both the plain language of the Restatement, from which *Bower* drew the six-factor analysis and the facts from Bower itself, show why the case does not provide an appropriate analytical tool for the instant case. Moreover, Defendants' analysis of the *Bower* is faulty and misleading.

### b. The correlation between bullying and suicide is well established.

As noted above, *Bower* involved a grant of summary judgment, which addresses the strength of factual assertions, as opposed to a motion to dismiss.  Yet, defendants' argument touches on their rendition of Hailee's state of mind.  This is clearly inappropriate in a Motion to Dismiss.

The First *Bower* factor is "Whether the intervention causes the kind of harm expected to result from the actor's negligence.  Defendants argue that even if Defendants breached their duty to Hailee by: (1) failing to notify her parents of the reported mistreatment; (2) failing to provide her with a safe and respectful learning environment; and (3) failing to investigate and address the bullying she endured at school. . . . the alleged nonfeasance might foreseeably result in continued bullying," but not in her suicide.  This failure or refusal to acknowledge the connection between bullying and childhood suicide can only be described as willful blindness, as the correlation is well-established.

In the April 2014 Center for Disease Control publication, "The Relationship Between Bullying and Suicide: What We Know and What it Means for Schools," available online at, http://www.cdc.gov/violenceprevention/pdf/bullying-suicide-translation-final-a.pdf , the correlation between bullying and suicide clearly presented.  Excerpts of the document – which

compiled and analyzed research in the area – include:

> In the past decade, headlines reporting the tragic stories of a young person's suicide death linked in some way to bullying (physical, verbal, or online) have become regrettably common.  There is so much pain and suffering associated with each of these events, affecting individuals, families, communities and our society as a whole and resulting in an increasing national outcry to "do something" about the problem of bullying and suicide.

*Id.* at 2.

> Youth who report frequently bullying others and youth who report being frequently bullied are at increased risk for suicide-related behavior.

*Id.*

> ANY involvement with bullying behavior is one stressor which may significantly contribute to feelings of helplessness and hopelessness that raise the risk of suicide. (emphasis in original)

*Id.* at 3.

> We know that bullying behavior and suicide-related behavior are closely related. This means youth who report any involvement with bullying behavior are more likely to report high levels of suicide-related behavior than youth who do not report any involvement with bullying behavior.

*Id.*

These data are not new and controversial, as the link between bullying and suicide is, unfortunately, well-established.  Defendant's own website, http://ccsd.net/departments/equity-diversity-education-department/say-no-to-bullying includes links that eventually lead users to http://www.bullyingstatistics.org/content/bullycide.html, where "bullycide" is defined as "suicide caused from the results of bullying."  Yet, Defendants inexplicably argue that in order for there to be proximate cause, "as a matter of law, that death by suicide is the natural, expected consequence of any act of bullying." The CDC publication responds to this type of argument.

> It is particularly important to understand the difference between circumstances being related to an event versus being direct causes or effects of the event. To explore this idea, let's look at a similar but much simpler example:  In the case of drowning deaths among children, those who are not directly supervised by a competent adult while swimming are more likely to die by drowning than those children who are directly supervised. While the lack of adult supervision does not directly cause a child to drown, it is a

critical  circumstance that can affect the outcome of  the situation.

*Id.* at 4.

No one would seriously suggest that an adult who fails to adequately supervise a child who drowns in a swimming pool - would be, as a matter of law, immune from a negligence action. This is true even though not every unsupervised child in a swimming pool ends up drowning. Similarly, not every drunk driver creates a fatal accident. Yet no one would argue that drunk driving is unrelated to such fatalities.

Defendants' position is undermined, and in effect directly contradicted by statements made by Defendant Trustee Deanna Wright at the January 8, 2015 Board Meeting, available at the Clark County School District website, at http://tv.ccsd.net/watch?v=SmVCOU5k1cip.  In discussing proposed changes to the District's bullying policy, *Id.* at 2:26, Trustee Wright, referring to the proposed new requirement that any principal who learns of a reported bullying incident must contact the parents of the bullied child within one day, said about the need for quick parental notification, that such action "may save a life."  Thus, it is incongruous that Defendants can affirm the link between bullying and suicide at the school board meeting, while simultaneously denying such connection in their papers.

The second *Bower* factor is whether the intervening event is normal or extraordinary under the circumstances alleged.  In *Brooks v. Logan*, supra, 127 Idaho at 491, 903 P.2d at 80, the Court ruled that in the context of the failure of school officials to use reasonable means to protect students, a supervening cause does not exist.

> The concept of supervening causation is inapplicable when the actions were the foreseeable result of the school district's alleged failure to exercise due care to protect its students. *Doe v. Durtschi*, 110 Idaho 466, 472, 716 P.2d 1238, 1244 (1986).

127 Idaho at 491, 903 P.2d at 80.

The Court in *Eisel v. Bd. of Educ.*, 324 Md. 376, 597 A.2d 447 (1991) faced the argument that a student suicide is such an extraordinary fact that it cuts off liability of school personnel. Although the *Eisel* Court did not resolve the issue in that case, it did clearly state that generally causation is a question of fact. The Court also went on to note that an intervening and

superseding cause must be something beyond the mere fact of the child's suicide.

> The defendants also argue that "[i]n blaming the Board and the school counselors for his daughter's death, [Eisel], at most, makes out a case for a remote cause, one which is speculative and inconclusive." We have held, supra, Part I, that this issue of causation in fact is not before us on this appeal. Obviously, when the factual skeleton, on which the duty issue has been presented to us, has been fleshed out with evidence at trial, causation may be a question for the jury, or it may develop that, as a matter of law, any causal connection has been severed by some fact, <u>other than that death was essentially self-inflicted.</u>

324 Md. at 390, 597 A.2d at 454-55. (emphasis added)

In *Moore v. Hamilton Southeastern Sch. Dist.*, 2013 U.S. Dist. LEXIS 123507,  (S.D. Ind. Aug. 29, 2013), the Court found that while suicides are generally unforeseeable, when the school becomes aware of certain stresses which  may increase the vulnerability of a child for harms such as suicide, the general rule may not apply.

> Adolescents are more susceptible than other segments of the population to certain dangers, including substance abuse, auto accidents, and self-harm or suicide. A school district cannot be charged with an unlimited duty to guard against the possibility of student mental illness creating a danger of self-harm, just as it cannot be held responsible for ensuring that no car accidents take place in its parking lots.  That calculus may well change, however, when the district has reason to know of an individual student's heightened vulnerability.

*Id.* at 29-13.

Suicides by bullied children and teenagers may not be a normal thing.  It is, however, common enough to be considered a serious public health issue.  Thus, it certainly cannot be considered extraordinary and many courts throughout the nation have recognized a school district's liability for student suicides where appropriate.  *See, e.g., Chavez,* 159 F.3d at 1264 (finding that plaintiffs pled facts sufficient to establish school officials' liability when, in violation of school policy, school returned a student who had been suspended to his home when his parents were not there and the student committed suicide; and denying summary judgment); *Wyke v. Polk County School Bd.,* 129 F.3d 560 (11th Cir. 1997) (holding that a school may be held liable for student's suicide where it failed to notify parents of a known attempt of suicide by

that student); *Eisel,* 324 Md. at 393 (holding that school counselors may be held liable for a student's suicide when they fail to use reasonable means to attempt to prevent a suicide when they are on notice of a child or adolescent student's suicidal intent; and denying summary judgment); *Rogers v. Christina Sch. Dist.*, 73 A.3d 1, 16-17 (Del. 2013) (finding that where student committed suicide following school's failure to notify parent of student's crisis situation in violation of school protocols constituted negligence per se, and denying summary judgment); *Estate of Girard v. Town of Putnam*, No. CV085002754-S, 2011 WL 783599, *4 (Conn. Super. Ct. Jan. 28, 2011) (finding plaintiffs adequately pled that student's suicide was foreseeable result of school's negligence in responding to student's statement of intent to harm himself).

        c.  <u>Under Nevada law, Hailee's suicide cannot be considered a third party intervening/superseding act.</u>

The remaining *Bower* factors also support proximate cause in this case. The third *Bower* factor is "whether the intervening source is independent or a normal result of the actor's negligence."  Defendants do not address the question about whether the alleged intervening source was, in fact, independent.  They merely make the conclusory statement that it was. Comment c to Section 441 of the Restatement of Torts (2nd), *supra*, distinguishes between dependent and independent intervening forces:

> c.  Dependent and independent intervening forces.  An intervening force may be dependent or independent. A dependent, intervening force is one which operates in response to or is a reaction to the stimulus of a situation for which the actor has made himself responsible by his negligent conduct. An independent force is one the operation of which is not stimulated by a situation created by the actor's conduct. An act of a human being or animal is an independent force if the situation created by the actor has not influenced the doing of the act.

Thus, in order for Hailee's suicide to be an independent intervening source, it would have to have been totally divorced from the bullying and lack of response of Defendants, including the failure to inform her parents. In other words it would have to not be stimulated by a situation created by Defendants. It cannot be said, as a matter of law, that such is the case.  *See Rio Grande Reg'l Hosp., Inc. v. Villarreal*, 329 S.W.3d 594, 618-19 (Tex. App. 2010).  It is also important to note that an intervening cause must be the **sole** cause of the injury "in order to

completely excuse the prior act." *Etcheverry*, 107 Nev. at 785, 821 P.2d at 351.  In order for that to be the case, Hailee's suicide note linking her action to the school's inaction about her being bullied, "I only ask that you tell my school I killed myself so maybe next time people like [C.H.] wants to call someone pimple face or emo ass bitch, he won't," must be totally discounted. The argument that Hailee's suicide was totally independent from her being bullied at school and the school's inaction, is not only unsupported, but also absurd.

The fourth *Bower* factor is "Whether the intervening act or omission is that of a third party."  Defendants argue that, "Hailee acted as an intervening third-party when she ended her life."  This statement makes no sense.  Nor can Defendants find any legal authority to support this assertion. They attempt to bolster their argument by citing *Scoggins v. Wal-Mart Stores*, Inc., 560 N.W.2d 564 (Iowa 1997).  *Scoggins* involved a minor who was able to buy ammunition from the store, and to subsequently shot himself to death.  *Id.* at 566. The Court ruled that even though the store was negligent in selling a minor the ammunition, the suicide was a superseding cause relieving the store of liability in the death.

The instant Defendants attempt to cite *Scoggins* for the proposition that in the case of suicide, the decedent stands in the place of the nonexistent third party.  The case, however, says no such thing, because unlike Nevada, Iowa law does not require a third party to be involved in any superseding cause.  *Scoggins* noted the specific definition of intervening or superseding acts under Iowa law:

We have described intervening or superseding acts as follows:

> When conduct or forces occur after an actor's conduct, however, the actor may be relieved of liability if a court finds that the later-occurring event is such as to break the chain of causal events between the actor's negligence and the plaintiff's injury. This is so even when the actor's conduct is a cause-in-fact of the plaintiff's harm.

*Id.* at 570.  Nevada, unlike Iowa, follows the Restatement in limiting intervening and superseding causes to actions of a third party.  Hailee Lamberth's death involved no third party.

The fifth *Bower* factor is: "Whether the intervening act is a wrongful act that would subject the actor to liability. Defendants argue that Hailee's suicide is equivalent to a criminal

act. In Nevada murder is defined in NRS 200.010:

> NRS 200.010  "Murder" defined.  Murder is the unlawful killing of a human being:
>
> 1. With malice aforethought, either express or implied;
>
> 2. Caused by a controlled substance which was sold, given, traded or otherwise  made available to a person in violation of chapter 453 of NRS; or
>
> 3. Caused by a violation of NRS 453.3325.
>
> The unlawful killing may be effected by any of the various means by which death may be occasioned. (emphasis added)

Defendants cite this definition to argue that the term "human being" does not limit the definition of murder to the unlawful killing of another human being, but includes the killing of oneself.  Therefore, Defendants' argument goes, suicide is the equivalent to the criminal act of murder. This argument, however, is a blatant misrepresentation of the law. Malice aforethought is a necessary element of the crime of murder, pursuant to NRS 200.010(1).  Malice is defined in NRS 200.020.

> NRS 200.020  Malice: Express and implied defined.
>
> 1.  Express malice is that deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof.
>
> 2.  Malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart. (emphasis added)

Thus, in Nevada murder can only be the killing of another person (fellow creature). Neither suicide nor attempted suicide is a crime in Nevada.  Defendants' argument to the contrary, Hailee did not commit the equivalent of a crime, and therefore her suicide cannot be deemed a superseding cause for that reason.

The Sixth *Bower* factor looks at "the culpability of the third person's intervening act." Defendants again argue that: a) Hailee was the equivalent of a third person, and b) her suicide was a culpable act equivalent to murder.  As noted above these are made up arguments with no basis in Nevada law.  Thus, none of the *Bower* factors are availing to Defendants' position.  With

the failure of Defendants to show that Hailee's suicide was, under Nevada law, a superseding cause that would negate, as a matter of law, Defendants' liability for negligence and related state torts, Plaintiffs have met the standard of proximate cause for those state law tort claims, sufficient to defeat Defendants' Motion to Dismiss.

### C.   PLAINTIFFS' CLAIM I FOR NEGLIGENCE IS PROPERLY PLED.

#### 1.   Plaintiffs Have Pled Each Element Of Their Claim For Wrongful Death Negligence.

Plaintiffs have made a claim for negligence.[3] In Nevada, in order to maintain a claim for negligence, a plaintiff must show four factors. *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 221 P.3d 1276 (2009).

> It is well established that to prevail on a negligence claim, a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages.

125 Nev. 824, 221 P.3d 1280; *citing Turner v. Mandalay Sports Entertainment*, LLC, 124 Nev. 213, 217, 180 P.3d, 1172, 1175 (2008). The question of whether a "duty" to act exists is a question of law solely to be determined by the Court. *Scialabba v. Brandise Const. Co., Inc.*, 112 Nev. 965, 968, 921 P.2d 928, 930 (1996); *see also* W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 37, at 236 (5th ed.1984). In order to establish entitlement to judgment as a matter of law, a moving defendant must show that one of the elements of the Plaintiff's prima facie case is "clearly lacking as a matter of law." *Scialabba v. Brandise Const. Co., Inc.*, 112 Nev. at 921; *Sims v. General Telephone & Electronics*, 107 Nev. 516, 521, 815 P.2d 151 (1991).

As noted above, the recitation of facts contained within the Complaint shows that Defendants' behavior was the proximate cause of Hailee's death. Defendants argue that the complaint did not set forth each action by each Defendant that created this liability. In reality, as

---

[3] Plaintiffs' Claims I, II, and IV-IX are properly brought by Jason and Jennifer Lamberth only. Jacob Lamberth's claims should be limited to Claims III, IX, X and XI. Plaintiffs also do not object to the Court's dismissal of "Thurman White Middle School" based on counsel's representations that it does not exist as an entity.

the Complaint sets forth the facts that form the basis of the wrongful death related claims with more specificity than is required.  The Ninth Circuit, in *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012) noted,

> [Under] *Iqbal*, 129 S. Ct. at 1950 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). But where the claim is plausible — meaning something more than "a sheer possibility," but less than a probability — the plaintiff's failure to prove the case on the pleadings does not warrant dismissal.  *Id.* at 1949 ("The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (internal quotation marks omitted).

699 F.3d at 1078.

 In *Starr v. Baca*, 652 F.3d 1202, (9th Cir. 2011) the Ninth Circuit looked at apparent inconsistencies in *Iqbal* and *Twombley* on one hand, and the Supreme Court decisions in *Swierkiewicz v. Sorema* N. A., 534 U.S. 506 (2002); and *Erickson v. Pardus*, 551 U.S. 89 (2007) on the other.

> But whatever the difference between these cases, we can at least state the following two principles common to all of them. First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

652 F.3d at 1216.  *See also Queen's Med. Ctr. v. Kaiser Found. Health Plan, Inc.*, 948 F. Supp. 2d 1131, 1140 (D. Haw. 2013).

 Here, as already noted, the Complaint does more than merely recite the elements of the wrongful death claims, but instead provide the facts underlying those claims. Notably, nowhere in the Motion to Dismiss do Defendants assert that they do not have fair notice, or that they are unable to defend themselves.  Under Ninth Circuit standards, these issues are part of the analysis.

## 2.  Nevada Law Recognizes A Special Teacher-Student Relationship.

 Defendants also argue that the wrongful death/negligence claim must fail because none of the Defendants had any duty to protect Hailee from bullying.  This, as a matter of law, is untrue.

Generally, Nevada common law creates no duty for strangers to aid third parties in peril. *Sims v. General Telephone & Electronics*, 107 Nev. 516, 525, 815 P.2d 151, 157 (1991).  The Nevada Supreme Court has established certain exceptions to this general principle, where a special relationship exists between the parties. *Lee v. GNLV Corp.*, 117 Nev. 291, 295, 22 P.3d 209, 212 (Nev. 2001):

> This court, however, has stated that, where a special relationship exists between the parties, such as with an innkeeper-guest, teacher-student or employer-employee, an affirmative duty to aid others in peril is imposed by law. *See Sims*, at 526, 815 P.2d at 157–58 (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 56, at 376 (5th ed.1984). Likewise, we have held that a party who is in " ' control of the premises' is required to take reasonable affirmative steps to aid the party in peril." *Id.* at 526, 815 P.2d at 158 (quoting Keeton et al., § 56, at 376).

117 Nev. at 295, 22 P.3d at 212 (emphasis added)[1]; *See also Sims,* - 107 Nev. at 526 815 P.  at 157; *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. at 221 P.3d 1276 (2009), CHERRY, J., with whom SAITTA, J., agrees, dissenting; *Sparks v. Alpha Tau Omega Fraternity, Inc.*, 255 P.3d 238 (Nev.,2011)*;Beckman v. Match.com*, 2013 U.S. Dist. LEXIS 78339, 21 (D. Nev. May 29, 2013).

Nevada is not unique in recognizing the special duty schools assume when overseeing the safety of the minors under their care.  As the United States Supreme Court stated in *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999).

> The common law, too, has put schools on notice that they may be held responsible under state law for their failure to protect students from the tortious acts of third parties. *See* Restatement (Second) of Torts § 320, and Comment a (1965). In fact, state courts routinely uphold claims alleging that schools have been negligent in failing to protect their students from the torts of their peers. *See, e.g., Rupp v. Bryant*, 417 So. 2d 658, 666-667 (Fla. 1982); *Brahatcek v. Millard School Dist.*, 202 Neb. 86, 99-100, 273 N.W.2d 680, 688 (1979); *McLeod v. Grant County School Dist. No. 128*, 42 Wn.2d 316, 320, 255 P.2d 360, 362-363 (1953).

526 U.S. at 644. *See* also, *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 655 (1995);

---

[1] *See* also 71 Op. Att'y Gen. 1 (1971); Op. Att'y Gen. 67-384 (1967) for support of the requirement that schools have a duty regarding student safety.

*Godoy v. Central Islip Union Free School Dist.*, 117 A.D.3d 901, 901-901 (N.Y. App. Div. 2014).

The California Supreme Court explained the rationale behind the special teacher–student relationship, and basis for the duty of schools, school districts and school personnel to protect students placed in their care, in *C.A. v. William S. Hart Union High School Dist.*, 270 P.3d 699 (Cal. 2012):

> In addition, a school district and its employees have a special relationship with the district's pupils, a relationship arising from the mandatory character of school attendance and the comprehensive control over students exercised by school personnel, "analogous in many ways to the relationship between parents and their children." (*Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 935, 80 Cal.Rptr.2d 811, 968 P.2d 522, *see M.W. v. Panama Buena Vista Union School Dist.* (2003) 110 Cal.App.4th 508, 517, 1 Cal.Rptr.3d 673; *Leger v. Stockton Unified School Dist.*, (1988) 202 Cal.App.3d at 1448,1458–1459, 249 Cal.Rptr. 688.) Because of this special relationship, imposing obligations beyond what each person generally owes others under Civil Code section 1714, the duty of care owed by school personnel includes the duty to use reasonable measures to protect students from foreseeable injury at the hands of third parties acting negligently or intentionally. This principle has been applied in cases of employees' alleged negligence resulting in injury to a student by another student. *J.H. v. Los Angeles Unified School Dist.* (2010) 183 Cal.App.4th 123, 128–129, 141–148, . . .

270 P.3d at 704-705.

The *William S. Hart Union High School Dist.* Court explained that the special duty to students at school is in accord with public policy set forth in Cal. Const., art. I, § 28, subd. (a)(7) [students 'have the right to be safe and secure in their persons']; *see also* Cal. Ed. Code, §§ 32228–32228.5, 35294.10–35294.15 [establishing various school safety and violence prevention programs]." 270 P.3d at 705 n.3. In Nevada, the statutory parallel appears in NRS Chapter 388. In both Nevada and California, the issue is not whether these statutes contain a specific private right of action for public school students whose safety is left in jeopardy by school districts, but instead, a clear and unmistakable statement by the Legislature that school districts have an unequivocal responsibility to protect the students placed in their care, particularly when they have been made aware of a specific danger to specific students.

Moreover, Defendants' responsibility to maintain a safe environment is clearly stated in Nevada statutes. *See*, for example, NRS 132(4)(b); NRS 388.1315(1) and (2) ; NRS 388.1351; NRS 388.133; NRS 388.134; NRS 388.135. Similarly, the Nevada Department of Education, in its September 19, 2014, "Nevada Educator Performance Network Statewide Performance Framework (NEPF) Statewide Evaluation System: Teacher and Administrator Protocols/ Tools for Training and Validation Purposes" available at, http://nsea-nv.org/assets/document/ NV/NEPF_Tools__Protocols_Training_Manual-Sept_2014_%281%29.pdf,, states the criterion of "[t]he teacher takes role in cultivating safe, learning center school culture and community that maintains high expectations for all students." Table 2, Indicator 3, at 5.

Clark County School District Policy P-5137 concerning "Safe and Respectful Learning Environment: Bullying and Cyberbullying," available at "http://ccsd.net/district/policies-regulations/pdf/5137_P.pdf, states that, "The Clark County School District is committed to provide a safe, secure, and respectful learning environment for all students or employees." Clearly, any argument that Defendants had no responsibility for the safety of Hailee Lambereth is without support. Also, as part of CCSD Required Trainings, the viewing of HRMAND 1408, "Safe & Respectful Learning Environment (SRLE) 2014-2015" and HRMAND 1411, "SRLE - Bullying and Cyber-Bullying 2014-2015," is required for all District employees.

The determination of whether there has been a breach of duty is generally a question for the jury. *Doud v. Las Vegas Hilton Corp.*, 109 Nev. 1096, 1104, 864 P.2d 796, 801 (1993). "Litigants are not to be deprived of a trial on the merits if there is the slightest doubt as to the operative facts." *Perez v. Las Vegas Medical Center*, 107 Nev. 1, 4, 805 P.2d 589, 590 (1991). Here, Plaintiffs' Complaint is replete with factual allegations of how Defendants did not take the necessary and appropriate steps to keep Hailee safe.  Nor is it in dispute that Hailee's parents were not informed about the bullying, depriving them of the opportunity to address the situation, and act to prevent the suicide.

"In actions for damages in which the law provides no legal rule of measurement it is the special province of the jury to determine the amount that ought to be allowed." *Southern Pac. Co. v. Watkins*, 83 Nev. 471, 496, 435 P.2d 498, 514 (1967).  There is no argument that Hailee

suffered no damages.  In short, Plaintiffs' negligence claim must stand because Defendants' duty to protect Plaintiffs is based on the Nevada Supreme Court's recognition of the special relationship and duty that Defendants have to Plaintiffs under Nevada law, satisfying the first negligence factor, added to the other three factors of breach, causation and damage comprising questions of fact.  Plaintiffs' Complaint has set forth sufficient factual allegations to withstand a Motion to Dismiss Plaintiffs' negligence claim.

### D.   PLAINTIFFS' CLAIM II FOR NEGLIGENCE PER SE IS PROPERLY PLED.

Defendants argue that "negligence per se cannot be based on violation of a statute which does not provide a private right of action."  This statement is a misstatement of the law, as the case they cite as legal authority, *Hamm v. Carson City Nugget Inc.*, 85 Nev. 99, 102, 450 P.2d 358, 360 (1969), says nothing of the kind.

The issue in *Hamm* involved whether, in the absence of any Nevada dram shop law, a civil action for wrongful death by the heirs of pedestrians who were killed by a drunken driver could be pursued against the tavern keeper who unlawfully sold liquor to the offending driver. 85 Nev. at 99, 450 P.2d at 358. The question before the Court was whether the violation of the penal statute, NRS 202.100, which provided criminal penalties for a bartender serving alcoholic beverages to a person who is already drunk, also provided a private right of action under a negligence per se theory.  85 Nev. at 102, 450 P.2d at 360.

The *Hamm* Court noted that other states were divided concerning that question.  *Id.*  The Court concluded that in looking at the entire legislative scheme involving the sale of tobacco to minors and intoxicated persons, the fact that the Legislature chose to enact specific civil penalties for some violations and not others, indicated an intent to not impose civil penalties in the absence of specific statutory language.

> In other contexts we have recognized that a violation of a penal statute is negligence per se. *Southern Pacific Co. v. Watkins*, 83 Nev. 471, 435 P.2d 498 (1967); *Ryan v. Manhattan Big Four Mining Co.*, 38 Nev. 92, 145 P. 907 (1914). We decline to so rule in this case since to do so would subvert the apparent legislative intention. The statute before us is but one of many in the statutory scheme regulating the sale of tobacco and intoxicating liquor to minors and drunkards. The section immediately preceding NRS 202.100

> (NRS 202.070) does impose a limited civil liability upon the proprietor of a
> saloon who sells liquor to a minor. By providing for civil liability in one
> section and failing to do so in the section immediately following, the
> legislature has made its intention clear. Accordingly, we must conclude that
> a violation of NRS 202.100 does not impose civil liability upon one in
> charge of a saloon or bar, nor is such a violation negligence per se.

85 Nev. at 102, 450 P.2d at 360. In *Hamm*, the Court "adopted the common law rule of non-liability" discerning claims by third parties damaged by an intoxicated person who was served alcohol at a tavern or bar. *Hinegardner v. Marcor Resorts, L.P.V.*, 109 Nev 1091, 1093, 844 P.2d 800, 802 (1992).

Defendants' argument appears to be that a claim for negligence per se can only exist when it is duplicative of a statutory civil cause of action. *Hamm* certainly does not support this position. Nor have Defendants provided any legal authority to provide such support. In fact, Defendants' argument that negligence per se can only exist for a violation of statutes that contain a statutory private right of action is negated by the Nevada Supreme Court's decision in *Atkinson v. MGM Grand Hotel, Inc.*,120 Nev. 639, 98 P.3d 678 (2004). The *Atkinson* Court remanded the case for a new trial because the District Court failed to provide a requested jury instruction regarding negligence per se for a violation of NRS 455.010, which requires the erection of a fence or other safeguard around an excavation, hole or shaft. Nothing in the relevant provisions, NRS 455.010 through NRS 455.060, contains any private right of action, although NRS 455.040 provides for criminal penalties and NRS 455.050 allows for suits to be commenced in the name of the State of Nevada. Yet, the Nevada Supreme Court found the District Court's failure to provide a negligence per se instruction constituted reversible error. 120 Nev. at 644.

In *Brannan v. Nevada Rock & Sand Co.*, 108 Nev. 23, 823 P.2d 291 (1992), too, the Nevada Supreme Court reversed and remanded the case for failure of the District Court to give a negligence per se instruction. The case involved the alleged failure of Defendant to maintain brakes on all vehicles to be maintained in good working order, pursuant to NRS 484.597, even though the statute contained no explicit provision for a private right of action. 108 Nev. at 26-27, 823 P.2d at 293.

Even more damaging to Defendants' argument that there can be no claim for negligence

per se in the absence of a statutory private right of action is *Copper Sands Homeowners Ass'n, Inc. v. Copper Sands Realty, LLC*, No. 2:10–cv–00510–GMN–NJK, 2013 WL 3270430 (D.Nev., June 26, 2013), which directly refutes this faulty premise.

> "A statutory violation is negligence per se if the injured party belongs to the class of persons whom the statute was intended to protect, and the injury suffered is of the type the statute was intended to prevent." *Atkinson v. MGM Grand Hotel, Inc.*, 98 P.3d 678, 680 (Nev.2004). Furthermore, "[w]hether a legislative enactment provides a standard of conduct in the particular situation presented by the plaintiff is a question of statutory interpretation and construction for the court." *Sagebrush Ltd. v. Carson City*, 660 P.2d 1013, 1015 (1983) (*citing Sobrio v. Cafferata*, 297 P.2d 828, 830 (Nev.1956)).

2013 WL 3270430 at *5.

The proposition that negligence per se can only exist where there is also a statutory cause of action is made from whole cloth in Defendants' argument. That is not to say that any and all statutory violations can form the basis for a negligence per se claim. Even in those cases, however, such a violation may still constitute evidence of Defendant's lack of reasonable behavior in a negligence action. *Granados v. Northern Nevada High Speed, LLC,* No. 3:14–cv–00081–LRH–VPC, 2014 WL 5503118 at *3-4 (D.Nev., October 30, 2014), noted that violations of OSHA regulations can be used as evidence for the applicable standard of care.[2] Thus, the statutory scheme sets forth the reasonable person standard against which a Defendant's behavior is measured. *Tally v. Danek Medical, Inc.,* 179 F.3d 154, 1158 (4th Cir., 1999) (Defendant failed to comply with the Federal Food, Drug, and Cosmetic Act.)

> The standard of conduct of a "reasonable man" in a negligence case is generally determined by a jury on a case-by-case basis. Under the doctrine of negligence per se, however, the violation of a statute or ordinance can constitute a violation of the "reasonable man" standard as a matter of law. *See Butler v. Frieden*, 208 Va. 352, 158 S.E.2d 121, 122 (1967). Thus, in negligence per se cases, the courts "adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation." Restatement (Second) of Torts § 286 (1965).

---

[2][T]he Ninth Circuit has held that while OSHA regulations cannot form the basis of negligence per se, they can be considered—along with other evidence—as evidence of negligence. *Robertson v. Burlington N. R.R. Co.*, 32 F.3d 408, 410 (9th Cir.1994).

179 F.3d at 1158.  Here, the standard of conduct is most clearly set forth in the statutory

framework of NRS Chapter 388.121 *et. seq.* NRS 388.132(4)(b).

> All administrators, principals, teachers and other personnel of the school
> districts and public schools in this State demonstrate appropriate behavior on
> the premises of any public school by treating other persons, including,
> without limitation, pupils, with civility and respect <u>and by refusing to
> tolerate bullying and cyber-bullying</u>; (emphasis added)

There is clear Legislative intent that NRS 388.132(4)(b), as well as the other provisions

in Chapter 388 relating to a Safe and Respectful Learning Environment, were not enacted as a

mere wish list, but instead, as a standard that educators need to adhere to.  Failure to do so, by

tolerating bullying, forms grounds for negligence per se.

### E.   PLAINTIFFS' CLAIM III FOR NEGLIGENT INFLICTION OF EMOTOINAL DISTRESS (BYSTANDER LIABILITY) IS PROPERLY PLED.

Paragraph 80 of the Complaint states that Plaintiffs Jason and Jacob Lamberth were

bystanders because they found Hailee's body.  Because of this, they have standing to bring a

claim for Negligent Infliction of Emotional Distress (NIED) in Claim III.  A bystander who

witnesses an accident may recover for emotional distress in certain specific situations.  *State v.

Eaton*, 101 Nev. 705, 716, 710 P.2d 1370, 1377-78 (1985) (citing *Dillon v. Legg*, 68 Cal. 2d 728,

441 P.2d 912, 916, 69 Cal. Rptr. 72 (Cal. 1968)). To recover, the witness-plaintiff must prove

that he or she (1) was located near the scene; (2) was emotionally injured by the

contemporaneous sensory observance of the accident; and (3) was closely related to the victim.

*Eaton*, 101 Nev. at 716, 710 P.2d at 1377-78; *see also Grotts v. Zahner*, 115 Nev. 339, 340, 989

P.2d 415, 416 (1999); *Villagomes v. Lab. Corp. of Am.*, 783 F. Supp. 2d 1121, 1126 (D. Nev.

2011).

Defendants argue that because neither Jason nor Jacob witnessed the actual suicide itself,

but only found the body, they have no standing for this claim.  The Nevada Supreme Court has

never addressed the question of whether the "contemporaneous sensory observance" factor

applies to parties who are immediate family members of the decedent that discover the body.

*Eskin v. Bartee*, 262 S.W.3d 727, 738-40 (Tenn. 2008), however, did make such a ruling.

This case involves plaintiffs who did not actually see or hear the injury-causing accident but who were in sufficient proximity to the accident to be able to arrive at the accident scene quickly before it had significantly changed and before the injured person had been moved. In other words, while the bystanders did not have a sensory perception of the accident as it occurred, they had a direct sensory perception of the accident scene and the results of the accident soon after the accident occurred.   In this circumstance, we have determined that it is appropriate and fair to permit recovery of damages for the negligent infliction of emotional distress by plaintiffs who have a close personal relationship with an injured party and who arrive at the scene of the accident while the scene is in essentially the same condition it was in immediately after the accident.

*Id*. at 738.

Under *Eskin*, in a situation such as the instant one, where the family members did not witness the death-producing event, the  claim for negligent infliction of emotional distress requires proof of four elements: (1) the actual or apparent death or serious physical injury of another caused by the defendant's negligence, (2) the existence of a close and intimate personal relationship between the plaintiff and the deceased or injured person, (3) the plaintiff's observation of the actual or apparent death or serious physical injury at the scene of the accident before the scene has been materially altered, and (4) the resulting serious or severe emotional injury to the plaintiff caused by the observation of the death or injury.  262 S.W.3d at 739.

All four of those elements are present here. As alleged in the Complaint, Defendants' negligence was the proximate cause of the suicide.  Both Jason and Jacob were immediate family, father and brother.  They were the first people to see the body, so the scene had not been materially altered. See Paragraphs 40, 80.  The observation of the death created serious and severe emotional injury to both.  Plaintiffs have set forth adequate factual allegations to defeat Defendants' Motion to Dismiss Claim III of the Complaint.

## F.   CLAIMS IV THROUGH VII FOR FEDERAL SECTION 1983 CLAIMS ADEQUATELY ALLEGE PROXIMATE CAUSE UNDER FEDERAL LAW.

### 1.   Plaintiffs Have Met the Test for Pleading Proximate Causation Under Federal Law.

Claims IV through VII properly and adequately plead proximate causation.  In an action brought under Section 1983, proximate causation is well-pled if a plaintiff alleges that the constitutional violation committed by a defendant was "closely related to the ultimate injury"

suffered by plaintiff.  *City of Canton v. Harris*, 489 US 378, 391 (1989); *cf* Ninth Circuit Model Jury Instruction 9.8 (explaining "causation" as "acts/failure to act [which] were so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury").  Plaintiffs need not prove, at this stage, that the constitutional violations resulted in the injury alleged; but must only plead facts which show a close relationship between the two.  *City of Canton*, 489 U.S. at 391(noting that the sometimes difficult job of determining whether a failure by a municipality to uphold a government policy resulted in the injuries alleged is properly accorded to the "factfinder").  Moreover, sufficiently pled proximate causation is in no way diminished by the fact that there exists more than one "moving force" or more than one violation "closely related to the ultimate injury."  *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012) (finding that "Defendants are liable for the harm proximately caused by their conduct… [and the fact] [t]hat conduct of other people may have concurrently caused the harm does not change the outcome as to Defendants."); *see also Whitlock v. Brueggemann*, 682 F.3d 567, 583 (7th Cir. 2012) ("it does not matter that other acts are also proximate causes of the ultimate violation").  "[M]any factors or things or the conduct of two or more persons can operate at the same time either independently or together to cause injury or damage and in such a case each may be a proximate cause." *Jones v. Williams*, 297 F.3d 930, 937 n.7 (9th Cir.2002).

Here, the Complaint adequately pleads that Defendants' unconstitutional actions were closely related to, and in fact were the moving force that caused Plaintiffs' injuries.  As discussed in Section III(B), *supra*, the Complaint properly alleges that the Defendants' actions and deliberate inactions caused Hailee great emotional distress and suffering, and ultimately death.  *See generally* Section III(B).

### 2.   Suicide Is Not An Intervening Superseding Cause Under Federal Law.

Suicide is not an intervening superseding cause under federal law.  "'Foreseeable intervening causes … will not supersede the defendant's responsibility.'" *Conn v. City of Reno*, 591 F.3d 1081, 1101 (9th Cir. 2010) *cert. granted, judgment vacated sub nom. City of Reno, Nev. v. Conn*, 131 S. Ct. 1812, 179 L. Ed. 2d 769 (2011) *and opinion reinstated*, 658 F.3d 897 (9th

Cir. 2011), *quoting White v. Roper*, 901 F.2d 1501, 1506 (9th Cir.1990). "Where a defendant's actions are a 'moving force' behind a series of events that ultimately lead to a foreseeable harm, defendant is not relieved of liability on account of the intervening acts." *See Conn,* 591 F.3d at 1101. Moreover, the question of whether an intervening superseding cause exists is a question of fact. "If reasonable persons could differ over the question of foreseeability, [even] summary judgment is inappropriate and the question should be left to the jury." *Id.* [internal quotations and citations omitted]. Therefore, the question of whether an intervening cause was foreseeable in a suicide case is a question of fact that must be decided by a jury. *See Id.* at 1101-02.

Furthermore, because suicide is not carried out by a third-party, it is typically not considered an intervening, supervening cause. As Defendants admit[4], "[f]ederal courts turn to the causation factors developed in the common law of torts to supply the necessary causation factor in the civil rights field." *Stevenson v. Koskey*, 877 F.2d 1435, 1438 (9th Cir. 1989); *Rodriquez-Cirilo v. Garcia*, 115 F.3d 50, 52 (1st Cir. 1997) ("In applying basic tort principles to the facts raised by a particular Section 1983 claim, the causation requirement may be fleshed out with reference to state law tort principles."). The general rule at common law is that "[a] superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." Restatement (Second) of Torts § 440 (1965). This rule has been recognized by state courts as excluding suicide as an intervening, superseding cause. *See generally* Section III(B)(3), *supra; see also, e.g., Brooks v. Logan*, 127 Idaho 484, 491 (1995) (in a case against a school administrator arising from a student's suicide, the court found that the suicide did not constitute a supervening cause because "[i]n the present case there is no allegation that a third party or some 'other force' was the intervening, superseding cause; rather" plaintiff alleges that it was defendant's "negligence which caused Jeff's death, not some third party's intervening action."); *see also, Eisel v. Bd. of Educ. of Montgomery Cnty.*, 324 Md. 376, 390 (1991) ("Legally to categorize all suicides by adolescents as knowing and voluntary acts

---

[4] *See* Motion to Dismiss, p. 14:10-15.

which insulate the death, as a matter of law, from all other acts or omissions which might operate, in fact, as causes of the death is contrary to the policy manifested by the Act. The Act does not view these troubled children as standing independently, to live or die on their own.")

Plaintiffs have sufficiently pled that decedent Hailee's suicide was a foreseeable consequence of Defendants' constitutional violations.  The Complaint: i) states that decedent Hailee suffered months of severe, abusive and pervasive acts of bullying while attending TWMS (see, Paragraphs: 5, 25); ii) describes in detail numerous instances of bullying which decedent Hailee was forced to endure while attending TWMS (see, Paragraphs 25-40); iii) explains that after receiving notice of the bullying endured by decedent Hailee, Defendants did not intervene to stop it and did not notify decedent Hailee's parents as required by NRS 388.1351(2)  (see, Paragraphs: 38-39); iv) cites to the note left by decedent Hailee wherein she explains that her suicide was caused by the bullying she was forced to endure at TWMS (see, Paragraph: 40)  and v) therefore, alleges that Defendants "placed decedent Hailee Joy Lamberth in a known and obvious danger by ignoring [CCSD] policies and Nevada law related to bullying at public schools and failing to report bullying of decedent Hailee Joy Lamberth or to protect her from such bullying while she was a student at" TWMS. *See*, Paragraphs: 84 (Claim IV), 90 (Claim V), 95 (Claim VI) and 99 (Claim VII.  Plaintiffs not only pled the foreseeability of decedent Hailee's suicide but also supported this pleading with numerous, relevant and detailed factual allegations. The Complaint easily satisfies the relevant pleading requirement.

Finally, the portion of *Corales v. Bennett* (Def.'s Motion at 8, 10) that addressed the plaintiff's suicide relied on a California state tort cause of action, not federal law, and is distinguishable from this case for the reasons set forth in Section III(B)(3), *supra*:  in *Corales* there was no violation of law, the parents were aware of the incidents at school, and the decedent wrote in his suicide note that he had killed himself because he had "to[o] many problems." *Corales*, 567 F.3d at 560-61.

### G.   PLAINTIFFS' CLAIM IV FOR VIOLATION OF SUBSTANTIVE DUE PROCESS (SURVIVAL ACTION) AGAINST INDIVIDUAL DEFENDANTS IS PROPERLY PLED.

Plaintiffs Jason and Jennifer Lamberth's Fourth Claim for violation of Substantive Due Process (Survival Action) is properly pled against the individual defendants who violated Hailee's substantive due process rights.

### 1.   Hailee Had a Cognizable Right to Substantive Due Process From Individual State Actors.

Defendants incorrectly argue that Plaintiff has failed to plead that their affirmative conduct left Hailee in a situation that was "more dangerous than the one in which they found [her]."  Defendants ignore precedent that establishes that Defendants are liable under the state-created danger doctrine, and misconstrue the facts alleged in Plaintiffs' complaint.

> a.   Under the state-created danger doctrine Defendants' affirmative conduct and deliberate indifference to danger violates Substantive Due Process Rights.

When a state actor (i) engages in affirmative conduct that places a plaintiff in danger and (ii) acts with deliberate indifference to a known and obvious danger, the state actor has violated the substantive due process rights of the individual.  *Patel v. Kent School Dist.* 648 F.3d 965, 974 (9th Cir. 2011).[5]

The test of "affirmative conduct" is met where defendants place the plaintiff into a known dangerous situation.  *See Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1067; *see also Armijo By & Through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1263-64 (10th Cir. 1998) (state-created danger properly pled where school administrators violated express school policy by returning a suspended student to his home when his parents were not there, and student shot and killed himself). Where defendants place an individual back into a dangerous situation that <u>already existed</u>, the case still properly falls within the state-created danger doctrine.  *Henry A. v. Willden*, 678 F.3d 991 (Nev. 2012).  The test "that the official must do more than expose[] the plaintiff to a danger that already existed <u>is not the law of this circuit</u>."  *Id.*  (emphasis added,

---

[5] Defendants acknowledge that *Patel v. Kent* applies.

internal quotations and citations omitted).  The test of "affirmative conduct" is whether the affirmative actions of a state official exposed an individual to a danger she would not have otherwise faced.  Here, as set forth below, Hailee was exposed to a danger she would not have otherwise faced if the Defendants had followed the law.

The second prong of the state-created danger doctrine, deliberate indifference, is established when a state actor "disregarded a known or obvious consequence of his action." *Patel*, 648 F.3d at 974, *quoting Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997).  For example, a student may raise constitutional claims pursuant to 42 U.S.C. 1983 against a school district, its governing board and superintendent, for their inadequate response to peer on peer harassment. *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009) (recognizing Section 1983 claim where schoolchild was being sexually harassed by another student).  An individual supervisor's deliberate indifference may be shown through the supervisor's action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others. *Baca*, 652 F.3d  at 1207-08.  Setting in motion a series of acts by others or "knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury" is sufficient to show deliberate indifference. *Id.* at 1207-08 (internal quotations and citations omitted).

Here, Plaintiffs have adequately pled that state actors: i) engaged in affirmative conduct that placed Hailee in danger, and ii) acted with deliberate indifference to a known and obvious danger.  The individual Defendants are the Superintendent of CCSD (Skorkowsky), the Board of Trustees of CCSD (Cranor, Young, Tew, Corbett, Edwards, Garvey, and Wright), the principal (Katona), the deans of students (Kamman and Barr), the gym teacher overseeing the children when Hailee was being bullied (Jefferson) and the academic manager (Long).  Each individual Defendant is responsible for some combination of overseeing students, overseeing disciplinary matters, overseeing staff, ensuring a positive and safe learning environment, and overseeing activities at the school. *See*, Complaint Paragraphs 11-17.

The Complaint adequately pleads that each of these Defendants "engaged in affirmative

conduct that placed decedent Hailee Joy Lamberth in a known and obvious danger by ignoring [CCSD] policies and Nevada law related to bullying at public schools and failing to report bullying of decedent Hailee Joy Lamberth or to protect her from such bullying while she was a student at [TWMS]." *See*, Paragraph 84.  Hailee was a student at a public middle school, a locale which was totally controlled by Defendants.  Again, each of the Defendants named in the Fourth Claim were individually responsible for overseeing and safeguarding the students placed in their care, including Hailee.  *See*, Complaint Paragraphs: 9-17.  Nonetheless, Hailee was subjected to months of severe, abusive and pervasive acts of bullying while attending TWMS. *See*, Paragraphs: 5, 25-40. Defendant Jefferson, who reportedly witnessed the bullying firsthand, did not report it to the school administration as required by NRS 388.1351(1).  *See*, Paragraphs: 31-33.  Eventually, an anonymous tipster informed the defendants of the daily harassment and abuse endured by Hailee while at TWMS.  *See*, Paragraph 34.  Having been put on notice of Hailee's bullying, the named defendants were under a statutory obligation to intervene in the bullying and to contact Hailee's parents.  *See*, Paragraph 38; NRS 388.1351(2).  The named Defendants ignored their statutory obligation; and failed to contact Hailee's parents, thus depriving them of an opportunity to intervene in events that were under the exclusive control of the named Defendants.  *See*, Paragraph 39.  Instead, Defendants placed Hailee back into a place of known and obvious danger, and sent her back into the school without ever telling her parents about the bullying report, as they were required by law to do.  In taking these actions, the named Defendants engaged in affirmative conduct and acted with deliberate indifference to a known and obvious danger.  *See Patel,* 648 F.3d at 974.

Moreover, there can be no question that Defendants' violation of a state safety law, mandating reporting to parents, placed Hailee in a worse position than she otherwise would have been if the state officials had not ignored the law. Plaintiffs have stated a claim for a Substantive Due Process violation.  Hailee was entitled to protection under a law passed by the legislature mandating reporting to her parents.  This law put Hailee in a position of safety at school. Defendants affirmatively violated this law, which removed Hailee's safety net.  Thus, the school officials took affirmative actions by actively violating a state law, placing Hailee in a worse

position than she would have been without the school official's actions.  The school officials then acted with deliberate indifference regarding the danger Hailee was in by failing to notify her parents or take action to stop the bullying.

Worse yet, Hailee knew that the adults at the school were aware of the bullying, and knew that no actions were taken to inform her parents of the bullying.  The reason for the statute requiring direct parental notification of bullying is the fact that bullied children are often too afraid or too embarrassed to tell their parents of predicament they face. They need to depend on the adults at school who are aware of the problem. Here, the school officials' unspoken message to Hailee that the bullying report was not important enough to inform her parents about made Hailee even more despondent.  That despondency based on the school's inaction is reflected in Hailee's final note, which stated, "I only ask you to tell my school I killed myself so maybe next time people like [C.H.] wants to call someone a pimple face or emo ass bitch, he won't." *See*, Complaint Paragraph 40.  The school officials' actions in intentionally violating a law that was in place to protect the very harm that resulted in this case constituted an affirmative action.  The school officials made things worse for Hailee when they made her aware that they knew about the bullying report, but did not follow the law and tell Hailee's parents about it.

> b.  The Authority Relied Upon By Defendants Is Inapplicable and Distinguishable.

Defendants devote a substantial part of their brief to discussing *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189 (1989).  *See* Defs.' Mot. To Dismiss at 26-29. Their efforts, however, are misplaced because the claims asserted here clearly fall within the state created danger exception articulated in *DeShaney* and the factual circumstances in *DeShaney* are materially different from the facts alleged here.

As acknowledged by Defendants, *Deshaney* itself recognizes the "state created danger" exception that Plaintiff has pled in this case.  *See DeShaney,* 489 U.S. at 198–202. As set forth above, Plaintiffs have already shown here that Defendants properly and adequately alleged that the named Defendants engaged in affirmative conduct to place Hailee in danger and acted with deliberate indifference to a known or obvious danger.  *See*, Section III(G)(1)(a), *supra*.

The claims in *DeShaney* did not fit within this exception.  There, the claim involved a family in which the father abused his son, Joshua.  The Department of Social Services responded to reports of abuse and made visits to Joshua's home.  Joshua's father controlled the environment where the abuse took place (the home) and was the source of the abuse.  The outcome of *DeShaney* would have been different if it had been more similar to this case—that is, if DSS had required Joshua to go to its offices for seven hours every day for classes, stood by and allowed Joshua to be severely bullied at its offices by children under the care of DSS, and decided to hide the bullying in violation of a state law that required it to tell Joshua's loving parents about the abuse he had suffered in this trusted location.  Those facts would be closer to the facts in this case.[6]

Here the abuse took place while Hailee was attending public middle school. *See*, Paragraphs: 5, 25.  Hailee's attendance at TWMS was required by law.  NRS 392.040.  The named Defendants were the overseers of the school and were responsible for it environment. *See*, Paragraph: 9-17.  They alone had the requisite power and authority to control the conditions of the institution which the state required Hailee to attend.  The named Defendants affirmatively defied the law and made the affirmative decision to hide Hailee's bullying from her parents, both before and even after her death. *See*, Paragraph 84.  In making the decision to defy the law, the named Defendants placed Hailee in a known and obvious danger, causing her to suffer great emotional distress and pain. *See id*.  The actions of the named Defendants – through the conditions which they required Hailee to endure at school – caused her suffering.   The bullying continued, and Hailee was left believing that the adults charged with her safety and well-being did not believe it was important enough to call her parents.   The named Defendants ignored their statutory obligation to intervene in the bullying and to inform Hailee's parents when they were informed of the daily abuse suffered by Hailee.   Plaintiffs thus adequately allege that the named Defendants intervened in the life of Hailee and through their affirmative actions placed her in a

---

[6] Similarly, Defendant's reliance on *Arrington v. Clark County Dep't of Family Services*, 2014 WL 4699698*5 (D. Nev., Sept. 22, 2014) is misplaced.  In that case, the claim was against the Department of Social Services for not responding immediately to a call to a home regarding suspected abuse.  The abuse did not take place at a school with the school's full knowledge of the abuse.

dangerous situation, and acted with deliberate indifference to that danger.

Defendants' reliance on *Morrow v. Balaski*, 719 F.3d 160 (3d Cir. 2013), is similarly misplaced.  In *Morrow*, there was no affirmative violation of a state law by the administrators. The Defendant school administrators informed the parents of the victimized students of the situation involving their children in school, and took significant measures to protect the victimized students.  *See Morrow*, 719 F.3d at 164-65.  For instance, when the school became aware of a fight involving the offending student and the victimized students, the school (in accordance with express policy) suspended all of the students and contacted the parents of the victimized students.  *Id.* at 164.  When the offending student continued to harass the victimized students, the school suspended the offending student.  *Id.* Moreover, when the harassment continued the Defendant school administrators granted the parents of the victimized students permission to remove their children from the school and place them in another public school, which they did. *Id.* at 165.  Here, the school administrators affirmatively violated a law requiring them to notify Hailee's parents, and instead sent Hailee back into the lion's den.

Finally, the remaining district court cases from Alabama, Ohio and Florida are not from the Ninth Circuit, are not controlling here and are distinguishable in any event.  *See Vidovic,* 921 F. Supp. 2d at 792 (complaint did not assert affirmative acts by defendants, suicide note stated student had been depressed since moving to the US, and student had long history of academic and disciplinary problems as well as history of institutionalization); *Wyke v. Polk County School Bd.*, 898 F. Supp. 852, 858 (M.D. Fla. 1995) (no allegation that school affirmatively placed decedent in a dangerous situation, and decedent committed suicide because he was upset with his grandmother); *Moore v. Chilton County Bd. of Educ.*, 936 F. Supp.2. 1300, 1309 (M.D. Ala. 2013) (plaintiff did not argue a state-created danger existed).  Again, many other courts have found that schools may be liable for suicides.  *See, e.g., Chavez,* 159 F.3d at 1264; *Eisel,* 324 Md. at 393; *Rogers,* 73 A.3d at 16-17; *Estate of Girard,* 2011 WL 783599.  The *Wyke* Court of Appeal held that even under the facts in that case, the school may be held liable under state law for the student's suicide where it failed to notify parents of a known attempt of suicide by that student. *Wyke,* 129 F.3d at 571.

2.   **Plaintiffs Have Standing To Bring A Survival Cause Of Action For Substantive Due Process.**

Defendants do not, and cannot, argue that Plaintiffs lack standing to bring the Fourth Claim.  Standing is clear in this case.  Survivors have standing to bring a Section 1983 claim on a decedent's behalf if the relevant state's law authorizes a survival action. *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998); *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1103 (9th Cir.) *cert. denied sub nom. City of Los Angeles, Cal. v. Chaudhry*, 135 S. Ct. 295 (2014); *see* Section III.D., *supra,* (Nevada state law authorizes survival action).   Moreover, in a Section 1983 action the Court is not limited by any limitations on types of damages available which may be imposed under the applicable state law.  *See Chaudhry*, 751 F.3d at 1105 (noting that any prohibition against pre-death pain and suffering damages limits recovery too severely to be consistent with § 1983's deterrence policy).  "[A] prohibition against pre-death pain and suffering awards for a decedent's estate has the perverse effect of making it more economically advantageous for a defendant to kill rather than injure his victim."  *Id.* at 1104.

3.   **The Pleading Requirements Have Been Met.**

Defendants' motion, in effect, ask this Court to require Plaintiffs to prove their case.  This, however, is not the standard.  As set forth above, the Complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S at 678.  Plaintiffs have easily met this standard.

As shown above, Plaintiffs need only plead that: i) the named Defendants engaged in affirmative conduct that placed plaintiff in danger, ii) the named Defendants acted with deliberate indifference to a known and obvious danger, and (iii) the foregoing substantive due process violation caused damage to Hailee.  *Patel v. Kent School Dist*. 648 F.3d 965, 974 (9th Cir. 2011.)  Plaintiffs have pled all of these elements as set forth in Section III(G)(1), supra, and the pleading requirement has therefore been met.

H.   **PLAINTIFFS' CLAIM V FOR SUBSTANTIVE DUE PROCESS- *MONELL* LIABILITY IS PROPERLY PLED.**

1.   **Hailee Had A Cognizable Right To Substantive Due Process From CCSD Under *Monell*.**

Defendants incorrectly argue that there can be no CCSD liability.  Municipal liability can

be established by showing: 1) a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity; 2) that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or 3) that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.  *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005); *see also Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

The first type of municipal liability (longstanding practice of entity), may be established by the existence of a government "policy or custom" that leads to a constitutional deprivation. *See*, e.g., *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978); *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 983 (9th Cir. 2002); *Weiner v. San Diego County*, 210 F.3d 1025, 1028 (9th Cir. 2000).

The other two theories of municipal liability (action by decision-making official or action by subordinate to whom authority was delegated) attach either when the final policymaker is "a final policymaking authority" who made the allegedly unconstitutional action, or when that action is ratified, or delegated to a subordinate.  *Menotti*, 409 F.3d at 1147; *Ulrich*, 308 F.3d at 984-85; see also *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986) ; *Monell*, 436 U.S. at 694; *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004); *Ulrich*, 308 F.3d at 985; *Weiner*, 210 F.3d at 1028; *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999); *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992). Determining whether a government official is a final policymaker for purposes of the second two theories of municipal liability is a question of fact.  *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989); *Praprotnik*, 485 U.S. at 124-25; *Lytle*, 382 F.3d at 982-83.  When determining whether an individual has final policymaking authority, the pertinent query is whether he or she has authority "in a particular area, or on a particular issue."  *McMillian v. Monroe County*, 520 U.S. 781 (1997).  The individual must be in a position of authority to the extent that a final decision by that person may appropriately be attributed to the District.  *Lytle*, 382 F.3d at 983; *see also Christie*, 176 F.3d at 1235.  In order to determine authority, the Court

should look not only at explicit legislative grants of authority, but also at the actual custom of the government entity.  *Lytle*, 382 F.3d at 983.  Nor is there a requirement that the policymaker be the only one with final authority in the area, provided they are able to make the decision without higher review.  *See Webb v. Sloan*, 330 F.3d 1158, 1165 (9th Cir. 2003) (finding deputy district attorneys in Nevada to be final policymakers over conduct of prosecutions); *Larez v. City of Los Angeles*, 946 F.2d 630, 646-47 (9th Cir. 1991) (police chief of LAPD was policymaker for the Department).  What is required is that in exercising policy authority, the decision maker "make a deliberate choice from among various alternatives to follow a particular choice of action." *Gillette*, 979 F.2d at 1348; *see also Pembaur*, 475 U.S. at 483-84.

In this case, Plaintiffs have alleged that Defendant CCSD violated Hailee's rights through:

(a)   The customs and *de facto* policies of CCSD of ignoring its own policies and Nevada law related to harassment at public schools and failing to report bullying of students and to protect students from such bullying;

(b)   Inadequate and arbitrary training, supervision, and discipline of the named individual defendants by CCSD; and

(c)   Deliberate indifference by CCSD of the named individual defendants' unconstitutional conduct.

*See*, Complaint Paragraph 91.

Plaintiffs have alleged that CCSD's conduct constituted affirmative actions and deliberate indifference of its obligation to preserve and protect the constitutional rights of students.  *Id.* Moreover, Plaintiffs specifically pled that the online bullying report by Hailee's classmate was sent to the school administration, but the school administration failed to interview students with lockers in the vicinity of the site of bullying or of other students in the class.  *Id.*, Paragraphs 35-36.  Again, state law required a report of the violation to the principal.  The principal in turn was required to report the bullying report to Hailee's parents.  *Id.*, Paragraphs 37, 38.  Instead, the Principal and the CCSD Board of Trustees hid and denied that Hailee had ever been bullied.  *Id.*, Paragraphs 42, 43.  The Principal and the Board of Trustees, as well as the Deans who were

aware of the bullying reports, were all final decision makers who failed to follow the law and/or delegated that authority to subordinates. *See*, *e.g*., Compliant Paragraph 91.  Moreover, Plaintiffs have alleged that Defendants' failure to follow state law was a long-standing de facto policy. These allegations are sufficient to state a claim under *Monell*.  *Id.*

Defendants baselessly challenge Plaintiffs' allegation of inadequate and arbitrary training, supervision, and discipline of the named individual defendants by CCSD.  On page 35 of its Brief, Defendants incorrectly assert that Plaintiffs' "failure to train" claim fails because it does not allege a pattern or sufficient number of bullying incidents to evidence a de facto policy of CCSD or to show that CCSD was on notice of a need for training.  In support of this assertion, Defendants cite only to Paragraph 91 of the Complaint.  Paragraph 91 alleges in part "inadequate and arbitrary training, supervision, and discipline of these individual Defendants by their employer Defendant Clark County School District."  However, Paragraph 91 is not the exclusive source of pertinent allegations, as Defendants incorrectly suggest. The additional factual allegations (which are incorporated by reference) appear elsewhere in the Complaint. Paragraphs 23, 27 and 28 allege many instances of bullying of other children at TWMS, including physical violence at the school.  Paragraphs 26, 27, 29, 30, 31, 32 and 34 allege numerous instances of severe bullying endured by Hailee herself, which occurred at TWMS.  From this allegation of widespread bullying alone a court could draw the conclusion that a systematic problem existed at TWMS in respect to how its administration and personnel handled bullying.  However, there is more.  Paragraphs 32 and 33 allege specific incidences of one teacher, Mrs. Jefferson, turning a blind eye to vicious bullying which occurred in her P.E. class (in violation of CCSD Policy) and her violation of state law (NRS 388.1351(1)) when she failed to report the bullying to the school's principal.  In addition, Paragraphs 37 through 39 allege a refusal among school administrators to follow NRS 388.1351(2) and TWMS Progressive Discipline Plan (at page 5 #2) in respect to the investigation of known bullying.  Paragraphs 37 through 39 also allege that school administrators ignored their obligation arising under NRS 388.1351(2) to issue a written report to the parent or legal guardian of any child involved in an incident of bullying. In addition, Paragraphs 42 through 54 allege a widespread effort – which involved the school's principal and

dean, members of the CCSD Board of Trustees, and other school officials – to cover up evidence of:  i) individual and collective knowledge of the severe bullying endured by Hailee prior to her suicide and ii) the school administrators' failure to report the bullying to Hailee's parents in violation of NRS 388.1351(2).

Taken together, these factual allegations strongly support a pattern of failure to train exists sufficient to i) "represent a policy for which [CCSD] is responsible, and for which [CCSD] may be held liable if it actually causes injury," *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989), or ii) "show that the school district was on notice of a need for training." *Drussel v. Elko County School District*, 2013 WL 3353531 *3 (D. Nev., July 2, 2013).

Plaintiffs have further alleged that the unconstitutional actions of the individual defendants were ratified by Defendant Pat Skorkowsky, acting in his official capacity as superintendent and final decision maker of CCSD.  *Id.*  Superintendent Skorkowski's ratification of CCSD's policies of evading CCSD's statutory responsibilities was evident in his response to Jason Lamberth's concerns following their meeting on March 17, 2014.  Rather than acknowledge the bullying that Hailee suffered from, and articulate a policy of notifying parents consistent with state law, Superintendent Skorkowski responded with the false chronology described in the Complaint.  *See*, Paragraphs 51-52.  During discovery, Plaintiffs will show that Plaintiffs asked Superintendent Skorkowski whether he believed the school district policies should be changed, or whether a policy can be set in place that parents are notified if a dean calls a student to talk about bullying.  Superintendent Skorkowski did not state that a policy was already in place to follow the law of disclosing any report of bullying to parents—instead he said he would listen to recommended changes by the Superintendent's Internal Task Force on Bullying, and the Task Force could consider that "suggestion."  Thus, Superintendent Skorkowski clearly acknowledged that prior to Hailee's death the de facto policy was that parents were not always notified when there was a report of bullying, as required by law.

Defendants' assertion that *Monell* liability does not attach based on actions of the CCSD

Board of Trustees because the Board members are elected officials,[7] and not employees, reflects a lack of understanding of *Monell* liability.  The Ninth Circuit's guidance in *Lytle* applying *Monell* to school district claims does not change the most basic reading of *Monell* liability—that a governmental entity is liable under Section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Monell*, 436 U.S. at 694.  Here, the Board of Trustees is the governing body for CCSD.  "[T]he real party in interest in an official-capacity suit is the entity represented and not the individual officeholder."  *Karcher v. May*, 484 U.S. 72, 98 (1987); *see also Brandon v. Holt*, 469 U.S. 464 (1985).  Members of a governing body for a government entity are certainly proper Defendants in a *Monell* claim, and their improper actions create liability for the entity.  *See, e.g., Monell*, 436 U.S. at 690, n. 55 (noting that members of local governing bodies comprised of elected officials may be sued, and "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent").

Defendants disingenuously claim they cannot "imagine" how a failure-to-act could be ratified.  *See* Motion to Dismiss at 35:8-11.  Defendants need not "imagine," as the wrongful conduct in this case was in fact ratified by the Superintendent (as discussed above), the Deans, the Principal and the Trustees, all of whom steadfastly supported, <u>even after Hailee's death</u>, the de facto policy of hiding bullying allegations from parents.  *See*, e.g., Complaint, Paragraphs 39, 42-48.  Even to this day Defendants insist that being made to cry every day by being called a fatass and an emo-ass bitch was simply "rude," did not rise to the level of "bullying," and that Defendants need not have told Hailee's parents about the bullying report.  (Motion to Dismiss at 1:16-2:18.)  Given that Defendants are continuing to stand by their de facto policy that they were under no obligation to report the bullying, it is "difficult to imagine" that their clients did not ratify the conspiracy of silence about Hailee's suffering.

---

[7]  Board members are compensated for their service and are employees in any event.

### 2. Plaintiffs Have Standing To Bring A Survival Cause Of Action For Substantive Due Process.

Just as Defendants do not argue that Plaintiffs lack standing to bring the Fourth Claim, Defendants do not, and cannot, argue that Plaintiffs lack standing to bring the Fifth Claim for a survival cause of action under *Monell*. *See* Section I(2), *supra*; see *Moreland*, 159 F.3d at 369; *Chaudhry*, 751 F.3d at1103. As noted in Section I(2), *supra*, the Court is not constrained by any limitations on types of damages available which may be imposed under the applicable state law. *See Chaudhry*, 751 F.3d at 1105.

### 3. The Pleading Requirements Have Been Met.

In order to state a claim for their Survival claim for Substantive Due process under *Monell*, as set forth above, Plaintiffs need only show:

(a)  Defendant engaged in affirmative conduct that placed plaintiff in danger. *Patel v. Kent School Dist*., 648 F.3d at 974.

(b)  Defendant acted with deliberate indifference to a known and obvious danger. *Id.*

(c)  One of the following:

(1) a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;

(2) that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or

(3) that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate. *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005); see also *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

(d)  Causation. *See* Section F.

(e)  Damages. *See id.*

As set forth above, Plaintiffs have met all of these pleading requirements.

I.   **PLAINTIFFS' CLAIM VI FOR ASSOCIATION/LIBERTY INTERST IN FAMILIAL COMPANIONSHIP IS PROPERLY PLED.**

1.   **Plaintiffs Have A Cognizable Right To Bring A Wrongful Death Claim For Violation Of Substantive Due Process From The Individual Defendants.**

Defendants admit that parents have a liberty interest in the companionship of their children and therefore can state a claim for substantive due process for their federal wrongful death claim.  *See* Motion to Dismiss at 38:20-25, *citing Vasquez-Brenes v. Las Vegas Metro Police Dep't*, ___ F.3d ___, 2014 WL 4471542 *8; *see also Chaudhry, supra*, 751 F.3d at 1106; *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 371 (9th Cir.1998).  This right is also sometimes referred to as "family association" or "intimate association" rights.[8]  *See, e.g., Moreland*, 159 F.3d at 373; *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001) (finding plaintiff sufficiently alleged violations of First and Fourteenth Amendments based on state's interference with familial relationship with son), abrogation on other grounds recognized in *Castro v. Melchor*, 760 F.Supp.2d 970, 978 n.3; *Adler v. Pataki*, 185 F.3d 35 (2nd Cir. 1999) (noting that the source of intimate association right has been suggested to be a component of personal liberty protected by the Due Process Clause, but that it has also been implied to be rooted in the First Amendment).  This liberty right exists even where the deprivation is incidental to the state's acts.  *See Moreland*, 159 F.3d at 371.

For the reasons set forth in Section III(G)(1), *supra,* Plaintiffs have also adequately pled a violation of Substantive Due Process based on the state-created danger doctrine.  Defendants note that in order to state a federal claim for wrongful death based on  the Substantive Due Process violation,  an allegation that the conduct of Defendants "shock the conscience" should also be pled.  *See Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).  Where a state actor must make a split second decision about how to act, such as when a police officer must decide whether to shoot a suspect, the standard is whether the official acted with the "purpose to harm."

---

[8] The Complaint's reference to "expressive association" should have been "intimate association" rights, which is coextensive with the liberty rights Defendants admit exist.  In the event that the Court requires Plaintiffs to do so, Plaintiffs request leave to amend their Sixth and Seventh causes of action to eliminate reference to "expressive association" rights.

*Osborn*, 546 F.3d at 1137-39.  However, "[a]t the other end of the spectrum are

situations…where extended opportunities to do better are teamed with a protracted failure even

to care."  *Id.* at 1139, *quoting County of Sacramento v. Lewis*, 523 U.S. 833, 853 (1998).  "Then,

'indifference is truly shocking.'"  *Id.*

Outrageously, Defendants assert that "[a]bsent from the complaint are any conscience-

shocking allegations."  Motion to Dismiss at 39:6-8.  Defendants' argument that Plaintiffs'

allegations against them are unremarkable only highlights their breathtaking callousness and

deliberate indifference to Hailee and her parents.  As alleged in the Complaint, Defendants broke

a law that was specifically written to protect children like Hailee from the devastating impact of

bullying on a middle school girl.  They hid from Hailee's parents the fact that a bullying

complaint had been submitted to the school advising school officials that Hailee was being called

a "fatass," an "ugly bitch," and "stupid."  *See*, Complaint Paragraph 34.  The complainant told

the school in writing that Hailee was being made to "cry almost everyday [sic], as these mean

comments are said about her."  *Id.*  Finally, the complaint advised the school officials that "[t]his

has been going on for a very long time now."  *Id.*  Instead of following the law requiring these

reports to be disclosed to Hailee's parents, whom Defendants claim were responsible for Hailee's

safety, Defendants hid the claims from Plaintiffs.   Defendants' "protracted failure to even care"

shocks the conscience, and their ongoing position that none of the foregoing "shocks the

conscience" is itself shocking and reprehensible.  *See Osborn*, 546 F.3d at 1139.  Regardless of

Defendants' assertions on this issue, however, this is a question of fact for the jury and cannot be

decided as a matter of law.

### 2.  Plaintiffs Have Standing To Bring A Wrongful Death Cause Of Action For Substantive Due Process Violations Against Individual Defendants.

As set forth above, Defendants admit that parents have a liberty interest in the

companionship of their children and therefore can state a claim for substantive due process for

their wrongful death.[9]  *See* Motion to Dismiss at 38:20-25, *citing Vasquez-Brenes v. Las Vegas*

---

[9] The fact that a state court claim for wrongful death is also brought does not eliminate this claim.  *See Chaudhry*, 751 F.3d at 1106.  As noted in *Chaudhry*, prevailing on their substantive due process claims under Section 1983 would entitle Plaintiffs to attorneys' fees, while their state law claim would not.  *Id.*

*Metro Police Dep't*, ___ F.3d ___, 2014 WL 4471542 *8; *see also Chaudhry, supra*, 751 F.3d at 1106; *Moreland*, 159 F.3d at 371.

### 3. The Pleading Requirements Have Been Met.

As set forth above, Plaintiffs need only plead: i) Hailee was their child, ii) that Defendants' actions or inactions shock the conscience, iii) that Plaintiffs lost Hailee as a result of Defendants' action or inactions, and potentially that iv) the named Defendants engaged in affirmative conduct that placed plaintiff in danger, and v) the named Defendants acted with deliberate indifference to a known and obvious danger. *See Chaudhry, supra*, 751 F.3d at 1106; *Porter v. Osborn*, 546 F.3d at 1137. As set forth above, Plaintiffs have adequately pled each of these elements.

## J. PLAINTIFFS' CLAIM VII FOR EXPRESSIVE ASSOCIATION - *MONELL* LIABILITY IS PROPERLY PLED.

### 1. Plaintiffs Have A Cognizable Right To Substantive Due Process From CCSD Under *Monell*.

As set forth in Section III(H), *supra*, municipal liability can be established by showing: 1) a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity; 2) that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or 3) that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate. *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005); *see generally* Section III(H).

Defendants wrongfully assert that Plaintiffs must allege that employees acted pursuant to an "expressly adopted official policy." There is no such requirement. As set forth above, acting pursuant to an expressly adopted official policy is only one of the ways to show *Monell* liability. *See Menotti v. City of Seattle*, 409 F.3d at 1147. Here, Plaintiffs have adequately pled *Monell* liability as set forth in Section III(H), *supra*, based on

    (a)   Inadequate and arbitrary training, supervision, and discipline of the named individual defendants by CCSD;

    (b)   Deliberate indifference by CCSD of the named individual defendants'

1    unconstitutional conduct;

2    (c)    The customs and *de facto* policies of CCSD of ignoring its own policies and

3    Nevada law related to harassment at public schools and failing to report bullying

4    of students and to protect students from such bullying.

5    *See* generally Section III(H); s*ee*, Compliant Paragraph  35-38  42-48, 91.

6    The foregoing wrongful actions caused Plaintiffs to lose their daughter, giving rise to a

7    wrongful death *Monell* claim based on Plaintiffs' loss of their daughter.   To the extent

8    Defendants have repeated each of their arguments relating to Claim V, and for the purposes of

9    avoiding duplication, Plaintiffs incorporate by reference their arguments set forth in Section

10   III(H), *supra*.

### 2.    Plaintiffs Have Standing To Bring A Wrongful Death Cause Of Action For Substantive Due Process Violations Against CCSD.

12   As set forth above, Defendants admit that parents have a liberty interest in the

13   companionship of their children and therefore can state a claim for substantive due process for

14   their wrongful death.[10]  *See* Motion to Dismiss at 38:20-25, *citing Vasquez-Brenes v. Las Vegas*

15   *Metro Police Dep't*, ___ F.3d ___, 2014 WL 4471542 *8; *see also Chaudhry, supra*, 751 F.3d at

16   1106; *Moreland*, 159 F.3d at 371.

### 3.    The Pleading Requirements Have Been Met for a wrongful death cause of action for Substantive Due Process violations against CCSD.

19   As set forth above, Plaintiffs need only plead: i) Hailee was their child, ii) that

20   Defendants' actions or inactions shock the conscience, iii) that Plaintiffs lost Hailee as a result of

21   Defendants' action or inactions, and potentially that iv) the named defendants engaged in

22   affirmative conduct that placed plaintiff in danger, and v) the named defendants acted with

23   deliberate indifference to a known and obvious danger.  *See Chaudhry, supra*, 751 F.3d at 1106;

24   *Porter v. Osborn*, 546 F.3d at 1137.  As set forth above, Plaintiffs have adequately pled each of

25   these elements.

26

27

28   [10] The fact that a state court claim for wrongful death is also brought does not eliminate this claim.  *See Chaudhry*, 751 F.3d at 1106.  As noted in *Chaudhry*, prevailing on their substantive due process claims under Section 1983 would entitle Plaintiffs to attorneys' fees, while their state law claim would not.  *Id.*

**K.   NRS 41.085 DOES NOT PRECLUDE PLAINTIFFS' CLAIM FOR WRONGFUL DEATH NEGLIGENCE BECAUSE THAT CLAIM IS MADE PURSUANT TO THE STATUTE.**

On page 16 of their Brief, Defendants incorrectly state that "[a]ccording to the Complaint, it appears that Plaintiffs Jason and Jennifer Lamberth are attempting to plead multiple claims for wrongful death under various negligence and expressive association theories—which is not permitted under NRS 41.085.  *See* Compl. at pp. 11, 13, 20, and 21." Plaintiffs' claims for wrongful death/negligence and wrongful death/negligence per se are state tort claims, pursuant to NRS 42.085.  The other two wrongful death claims are federal civil rights claims made pursuant to 42 U.S.C. 983.  In making this argument, Defendants appear to assert that Nevada tort law statutes somehow place limitations on or even preclude federal civil rights actions.  This is clearly not the case.  *See Chaudhry*, 751 F.3d at 1106.  As noted in *Chaudhry*, prevailing on their substantive due process claims under Section 1983 would entitle Plaintiffs to attorneys' fees, while their state law claim would not.  *Id.*  State law can expand but cannot contract federal causes of action.  *Sager v. Woodland Park*, 543 F. Supp. 282, 294 (D. Colo. 1982) (citing *Sullivan v. Little Hunting Park*, 396 U.S. 229 (1969).

Defendants also argue that Plaintiffs' state law wrongful death/ negligence and wrongful death negligence per se claims must be dismissed because they are precluded by NRS 41.085. In making this argument, Defendants ignore the fact that these claims are made pursuant to the statute.  *See* Complaint, Par. 6. ("Plaintiffs Jason, Jennifer, and Jacob Lamberth institute this action, pursuant to the authority of NRS 41.085.")  Plaintiffs' wrongful death claims are proper under both of NRS 41.085 and 42 U.S.C. 1983.

**L.   PLAINTIFFS' CLAIMS VIII AND XI AGAINST PRINCIPAL KATONA ARE PROPERLY PLED**

**1.   Jason Lamberth And Jennifer Lamberth, In Their Individual Capacities, Possess A Cognizable Claim For Defamation Against CCSD Defendants**

a.   A Statement Presented as Fact Relating to "Beating"  Constitutes Defamation

Plaintiffs have properly pled that Defendant Katona made a false and defamatory statement in her chronology against Jason Lamberth by stating "that fact that Hailee's Dad beat

her."  CCSD deliberately circulated this statement to a third party, another parent in the school district.

Defendants fail to quote from the relevant section of the chronology in characterizing Defendant Katona's statements, as mere memorializations of unverified double hearsay.  The quote presented in the Motion to Dismiss relates an entry from 12/13/14.  *See* Motion to Dismiss at 44: 14-18.  The defamatory statement referenced in the Complaint took place in the chronological entry titled 3/12/14.  It appears as follows:

> Mr. Lamberth inquired if there had been any reports made to any staff member either written or verbal regarding any incidents with Hailee…Mrs. Green and Mrs. Adams, counselors, stated that no reports were ever made to them prior to the incident, but that each had received reports from students after the fact regarding <u>that fact that Hailee's dad beat her</u>.  (emphasis added).

Katona presents it as an acknowledged reality "that fact that Hailee's dad beat her."  Her chronology states this information as if it is well known, among the counselors, students and her that "Hailee's dad beat her."  Here, Katona does not provide mere recitation of others' words, but a factual presentation of the state of affairs.  The reports the counselors received regard, what according to Katona's statement, is "that fact that Hailee's dad beat her."  This remark amounted to a statement of existing fact.  *Pegasus v. Reno Newspapers, Inc*., 118 Nev. 706, 714, 57 P.3d 82, 87 (2002).

Perhaps, Defendants deliberately miscite the passage in question to taint any understanding of the nature of the familial relationships Hailee possessed.  No court of law would, of course, admit what amounts to a double-hearsay form of statement, allegedly made by Hailee herself.  The passage cited in the Motion to Dismiss allegedly concerns a statement made by Hailee, to another student, and this other student allegedly then reported this statement to Mr. Kamman, who then relayed this statement to Katona.  No indicia of reliability could attach to such an attenuated report of alleged statements.

Furthermore, given that the passage cited by the Defendants was not used by the Plaintiffs in the defamation claim raised in the Complaint, it should be stricken from the Motion to Dismiss.  It is outside the "four corners of the complaint."  A district court may not consider

any materials beyond the pleadings in analyzing a motion to dismiss.

        b.   <u>"Beating" Exceeds Acceptable and Legal Forms of Family Discipline</u>

     "That fact that Hailee's dad beat her" presents more than a factual statement relating to typical forms of physical discipline.  Pursuant to NRS 432B.020, "Abuse or neglect of a child" means:  (a)  Physical or mental injury of a non accidental nature… of a child caused or allowed by a person responsible for the welfare of the child under circumstances which indicate that the child's health or welfare is harmed or threatened with harm."  Nevada law, under NRS 432B.090, further defines physical injury to include:

1. A sprain or dislocation;
2. Damage to cartilage;
3. A fracture of a bone or the skull;
4. An intracranial hemorrhage or injury to another internal organ;
5. A burn or scalding;
6. A cut, laceration, puncture or bite;
7. Permanent or temporary disfigurement; or
8. Permanent or temporary loss or impairment of a part or organ of the body.

Most notably, Nevada specifies that "excessive corporal punishment" resulting in physical or mental injury constitutes abuse or neglect. NRS 432B.150.

     Furthermore, Merriam-Webster's dictionary defines "beating" as "an act of striking with repeated blows so as to injure or damage."  http://www.merriam-webster.com/dictionary/beating. To "beat" means "to hit (someone) repeatedly in order to cause pain or injury." http://www.merriam-webster.com/dictionary/beating.  Thus, a statement presented as "fact" regarding the beating of Hailee implies the very type of injury which would constitute child abuse in the state of Nevada.  Katona did not state "the fact that Hailee's dad spanked her" or "that fact that Hailee's dad used physical discipline."  Instead she stated "the fact that Hailee's dad beat her."  This is highly offensive to a reasonable person, as it amounts to a statement that Hailee's dad engaged in child abuse.

     In addressing defamation as it relates to statements regarding child abuse, the Nevada Supreme Court's opinion in *Lubin v. Kunin et al*, 117 Nev. 107, 17 P.3d 422 (2001), is instructive.  There, parents of students attending Las Vegas Hebrew Academy circulated a

handout describing a 1996 lawsuit against the Academy's Director Tamar Lubin, the Board and others, which alleged child abuse, assault, and battery, among other causes of action.  The handout included the following paragraph:

> **This is not a frivolous law suit there is an abundance of evidence as well as eye-witnesses**.  These parents never envisioned that anything of this nature could or would happen to their child.  **IT DID!**  It is time to protect our children.  (emphasis in the original).

117 Nev. 110.  Lubin filed an action against the parents, alleging that the parents' statements were false and defamatory.  The Nevada Supreme Court reversed a dismissal of the Complaint.  At the outset, the Nevada Supreme Court highlighted the appropriate frame of analysis:

> In reviewing an allegedly defamatory statement, "the words must be reviewed in their entirety and in context to determine whether they are susceptible of a defamatory meaning." *Chowdry v. NLVH, Inc.*, 109 Nev. 478, 484, 851 P.2d 459, 463 (1993). Whether a statement is defamatory is generally a question of law; however, where a statement is "susceptible of different constructions, one of which is defamatory, resolution of the ambiguity is a question of fact for the jury."  *Posadas v. City of Reno,* 109 Nev. 448, 453, 851 P.2d 438, 442 (1993).

117 Nev. 111-112.  The Court then applied this standard to the facts of the case.

> Like the statement in *Posadas*, the Parents' inclusion of the phrase "IT DID!" in the handout is susceptible of two interpretations:  (1) that the child abuse did happen; or (2) that the lawsuit alleging the child abuse was filed. Regarding the first interpretation, we conclude it is defamatory because such a statement would clearly lower Lubin in the estimation of the community and excite derogatory and contemptuous opinions against her…

117 Nev. 112.  Thus, the Nevada Supreme Court has expressly acknowledged that a statement of fact indicating that an individual has engaged in child abuse is defamatory.  *Id.*  The Court also held that interpretation of the handout's phrasing was a matter best left to the jury.

> Regarding the latter interpretation, the district court correctly found that merely publishing the fact that a lawsuit alleging child abuse was filed would not be actionable.  We conclude, however, that whether the "IT DID!" language is defamatory is ultimately an issue for the trier of fact because this language is susceptible of two different interpretations, one of which is capable of defamatory construction."

117 Nev. 112.  So too, in this case, Katona's statement of "that fact that Hailee's dad beat her"

is a defamatory statement relating to child abuse.  At the very least, the construction of this phrase is a question of fact for the jury.  A jury question arises whenever a statement is susceptible of different meanings, one of which is defamatory.  *Branda v. Sanford*, 637 P.2d 1223, 1225 (1981).

c.   <u>The Pleading Requirements for Defamation Have Been Met</u>

As noted by the Restatement (Second) of Torts, § 558, the elements of defamation include: (i) false and defamatory statement concerning another, (ii) un unprivileged publication to a third party, (iii) fault amounting to at least negligence on the part of the publisher, and (iv) actionability of the statement.  *See PETA v. Bobby Berosini Ltd.*, 111 Nev. 615, 626, 895 P.2d 1269, 1276 (1995).  As evidenced by the previous arguments, the words used in the chronology implied specific facts, which are actionable.  *See Riggs v. CCSD*, 19 F. Supp. 1177, 1181 (1998).

Compl. paragraphs 52 and 53 detail Jason's discovery of the defamatory statements sent by CCSD to a third party parent.  Compl. paragraph 55 identifies the suffering and harm endured by the Lamberths as a result of all of the Defendants' egregious behavior, including Defamation.  Both Jason and Jennifer Lamberth suffered harm to their reputation from the Defamation.

**2.   Jason Lamberth and Jennifer Lamberth, in their individual capacities, Possess a Cognizable Claim for False Light Invasion of Privacy Against Defendant Katona**

a.   <u>"Beating" Amounts to False Statement</u>

Defendant Katona made a false and derogatory statement in her chronology as against Jason Lamberth by stating "that fact that Hailee's Dad beat her."  CCSD then deliberately circulated this statement to a third party, another parent in the school district.  As with the discussion of defamation, Plaintiffs note at the outset that Defendants have miscited the relevant portions of the chronology in presenting their opposition claims.  The full statement in context, "that Hailee's Dad beat her," is false.

False light invasion of privacy arises when: one who gives publicity to a matter concerning another that places the other before the public in a false light…if:

- The false light in which the other was placed would be highly offensive to a

reasonable person, and

- The actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*See Franchise Tax Board of Cal.v. Hyatt*, ___Nev.___, 335 P.3d 125 (2014).

We refer to the discussion of defamation, above, to demonstrate that the false light of stating that Jason "beat" Hailee, his deceased daughter, amounts to statement of child abuse, which is highly offensive to a reasonable person. "Beating" is more than physical discipline, in our common understanding of the word, and implies repeated strikes to inflict injury. In the interest of judicial economy, the Lamberths adopt and fully incorporate this argument from the defamation claim, *supra.*

        b.   <u>The Pleading Requirements for False Light Invasion of Privacy Have Been Met.</u>

As noted in Compl. paragraphs 122-124, Katona's chronology stated specific false allegations of fact which placed Jason Lamberth in a false light which would be highly offensive to a reasonable person. Katona had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Plaintiff Jason Lamberth would be placed.

Katona's disclosures resulted in specific mental distress for the Lamberths. We direct Defendants' attention to paragraph 55 of our Complaint. "The Lamberths have suffered harm in the form of their grief and sorrow…They are enduring the symptoms of post-traumatic stress disorder, including sleeplessness, among other sufferings." Naturally, paragraph 118 of the Complaint, the first paragraph under Claim for Relief XI, incorporates this allegation by reference. Plaintiffs have clearly identified physical manifestations of their mental distress, including sleeplessness and the symptoms of post-traumatic stress disorder. Defendants' suggestion that Plaintiffs have failed to allege any specific physical symptoms or illnesses associated with their mental distress is without merit.

On page 53, Defendants argue that unlike defamation, which requires publication of the material to a third party, false light privacy claims must show publicity to a public audience. No such distinction exists. "[F]alse light privacy action differs from a defamation action in that the

injury in privacy actions is mental distress from having been exposed to public views, while the injury in defamation actions is damage to reputation. *See Dobson v. Sprint Nextel Corp.*, 2014 U.S. Dist. LEXIS 16353 *16 (D. Nev. February 10, 2014).

### M.   PLAINTIFFS' CLAIMS IX AND X AGAINST SABREENA ADAMS ARE PROPERLY PLED.

Defendants argue that Plaintiffs' Ninth and Tenth claims for relief, against Sabreena Adams should be dismissed. These claims concern Ms. Adams' Facebook post (*See* Complaint, Par. 44). Claim for Relief IX is for Negligent Infliction of Emotional Distress (NIED) concerning this post.  Defendants argue that a NIED claim is unavailable to Plaintiffs because they were not bystanders. "If such a claim is brought by a direct victim, the claim fails as a matter of law." MTD at 47.

This assertion misrepresents the law in Nevada. In *Shoen v. Amerco, Inc.*, 111 Nev. 735, 748-49, 896 P.2d 469, 477 (1995), the Nevada Supreme Court stated that, "negligent infliction of emotional distress can be an element of the damage sustained by the negligent acts committed directly against the victim-plaintiff." The Court noted that, "[i]f a bystander can recover for the negligent infliction of emotional distress, it is only logical that the direct victim be permitted the same recovery." *Id.*

*Villagomes v. Lab. Corp. of Am.*, 783 F. Supp. 2d 1121, 1126 (D. Nev. 2011) clarified the ruling in *Shoen* by distinguishing between stand alone NIED claims, and "parasitic" NIED claims  that includes emotional distress as part of the damage suffered. Here, the NIED claim is parasitic in nature. The emotional distress claim is inextricably intertwined with Plaintiffs' Tenth Claim for Relief for Public Disclosure of Private Facts. Adams owed a duty to maintain the confidentiality of information related to Hailee, which she breached in her Facebook post discussing Hailee and her family, particularly her brother, Jacob. This resulted in serious emotional distress causing physical illness to Jason, Jennifer and Jacob.

That the information in the Facebook post was private is shown by Federal law as well as CCSD policies. CCSD Policy R-5125.1 provides that all school records of students are confidential, and any information related to the student, except for directory information (such as

name, etc) should not be disclosed without the written consent of the parent or eligible student. Also, the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g, protects the privacy of student information. The assertion that Ms. Adams was responding to public statements made by Jason Lamberth at the public school board meeting does not negate the breach of both policy and FERPA.

That the material was objectionable is similarly undeniable. The Facebook post was clearly designed to show the Lamberth family in an unfavorable light, portraying them as ungrateful and unappreciative of the allegedly positive things the school was doing for them after Hailee's death, such as providing presents to her younger brother. Defendants claim that this is not offensive or objectionable to ordinary sensibilities. This is a question of fact for the jury. *Beaumont v Brown*, 401 Mich 80, 106; 257 N.W.2d 522 (1977); *Winstead v. Sweeney*, 205 Mich. App. 664, 673, 517 N.W.2d 874, 878 (1994); *YG & LG v Jewish Hosp of St Louis*, 795 S.W.2d 488, 503 (Mo App, 1990); *Doe v. Mills*, 212 Mich. App. 73, 81, 536 N.W.2d 824, 829 (1995).

Defendants also argue that disclosing private facts on Facebook does not meet the test of "publicity" necessary for public disclosure. There is no legal authority for this proposition. The Court in *Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 873 (S.D. W. Va. 2014) found just the opposite.

> The plaintiffs allege that the defendants created the fictitious Facebook Profile in order to associate Rubio's name with Transformations — a competitor-business with which he has no reasonable connection — for the purpose of suggesting that Rubio endorsed or "liked" Transformations. The Profile existed on the Internet, making it necessarily widespread. Accordingly, drawing all reasonable inferences in the plaintiffs' favor, Count IV states a claim for false light invasion of privacy.

Id. at 887-88.

Defendants argue that the Facebook post is protected by the newsworthiness exception. Clearly this argument runs counter to the assertion that the information was not publicly distributed. "The tort of invasion of privacy by publication of private facts pits society's interest in a free press against an individual's right to privacy." *Montesano v. Donrey Media Grp.*, 99 Nev. 644, 650-51, 668 P.2d 1081, 1085 (1983*); citing Cox Broadcasting Corp. v. Cohn*, 420

U.S. 469, 489 (1975). Nowhere does Ms. Adams claim that her Facebook post was undertaken as part of her role in a free press. In fact, she asserts just the opposite. The claim of newsworthiness, however, is still a question for the trier of fact. *Capra v. Thoroughbred Racing Asso.,* 787 F.2d 463, 464 (9th Cir. 1986).

Finally, citing *Jacobs v. Adelson*, 325 P.3d 1282, 1288 (Nev. 2014), Defendants argue that the Facebook post is protected by the Reply Privilege. This argument is misplaced because that privilege applies only to defamation.  The common law conditional privilege of reply "grants those who are attacked with defamatory statements a limited right to reply." *State v. Eighth Judicial Dist. Court (Anzalone)*, 118 Nev. 140, 149, 42 P.3d 233, 239 (2002). Lack of privilege is part of the prima facie case for defamation. *Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 125 Nev. 374, 378, 213 P.3d 496, 499 (2009) "An action for defamation requires the plaintiff to prove . . . an unprivileged publication to a third person . . . ." *Id.*  The right to reply privilege has no application to the claim of Public Disclosure of Private Facts.

### N.    DEFENDANTS ARE NOT SUBJECT TO QUALIFIED IMMUNITY UNDER FEDERAL OR STATE LAW.

#### 1.    Defendants Are Not Entitled To Qualified Immunity On Plaintiffs' Federal Claims.

Defendants incorrectly assert in passing, in Footnotes 16 and 21, that the individual Defendants are entitled to qualified immunity because they allege that Plaintiff have failed to plead sufficient facts.  It is unclear whether Defendants are asking the Court to make a determination of qualified immunity at this stage, and if so, Plaintiffs request a full opportunity to brief the specific and complex issue of qualified immunity in the context of a full motion for qualified immunity.  At this early stage, it is sufficient to deny Defendants' request because qualified immunity is a question of fact.  *Espinosa v. City and County of San Francisco*, 598 F.3d 528, 532 (9th Cir. 2010). The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  A right is "clearly established" if a reasonable official or employee "would know that his conduct was unlawful in the situation he confronted." *Espinosa,*

598 F.3d  at 532 (9ᵗʰ Cir. 2010).   Here, as alleged in the Complaint, Defendants violated a

clearly established statutory right of Hailee and her parents to notify Hailee's parents, and a

clearly established Constitutional Substantive Due Process rights of Hailee and her parents, as set

forth herein.

Defendants also incorrectly claim they are entitled to discretionary immunity from

Plaintiffs' state law Claims I and II.   Nevada's state law immunity doctrine mirrors the two-part

Federal Tort Claims Act "discretionary-function exception." (28 U.S.C. 2680). *Martinez v.*

*Maruszczak*, 123 Nev. 433, 435-36 (2007).

> Because Nevada jurisprudence concerning the scope of the discretionary-
> function exception is unclear, and because Nevada's statutory language
> mirrors the Federal Tort Claims Act, we adopt the two-part federal test, as
> articulated in *Berkovitz v. United States*, 486 U.S. 531 (1988), and *United
> States v. Gaubert*, 499 U.S. 315 (1991) for determining when the
> discretionary-function exception to the general waiver of governmental
> immunity applies. Under this two-part test, state-employed physicians enjoy
> immunity from medical malpractice liability only when their allegedly
> negligent acts involve elements of judgment or choice, and the judgment or
> choice made is of the kind that the discretionary-function exception was
> designed to shield, that is, a judgment or choice involving social, economic,
> or political policy considerations.

*Martinez v. Maruszczak*, 123 Nev. 433, 435-36, 168 P.3d 720, 722 (2007)

Nevada has explicitly abrogated discretionary immunity where actions consist of

"negligence unrelated to any plausible policy objectives." *Butler v. Bayer*, 123 Nev. 450 (2007)

(denying discretionary immunity where the act involved personal judgment, but did not involve

policy-making considerations). "In a close case…[the court] must favor a waiver of immunity

and accommodate the legislative scheme." *State v. Silva*, 86 Nev. 911, 914 (1970); *Martinez*, 123

Nev. at 448 ("Nevada's waiver of sovereign immunity is to be broadly applied.").

This action does not implicate the "discretion" of state employees; it implicates

"negligence unrelated to any plausible policy objectives," *Butler*, 123 Nev. at 466.  Discretionary

immunity under NRS 41.032(2) is a qualified immunity. *State, University and Community*

*College System v. Sutton*, 120 Nev. 972, 980, 103 P.3d 8, 14 (2004). While absolute immunity

defeats a suit at the outset of litigation, as long as the official's actions were within the scope of

the immunity, qualified immunity depends on the circumstances and motivation of the official's actions as established by evidence presented at trial. *State v. Second Judicial Dist. Court ex rel. County of Washoe*, 118 Nev. 609, 616, 55 P.3d 420, 424 (2002); *Imbler v. Pachtman*, 424 U.S. 409, 419 n. 13  (1976). The "application of sovereign immunity under NRS Chapter 41 presents mixed questions of law and fact." *City of Boulder City v. Boulder Excavating, Inc.,* 124 Nev. 749, 755, 191 P.3d 1175, 1179 (2008); *Martinez v. Maruszczak*,  123 Nev. 433, 438, 168 P.3d 720, 724 (2007); *see also*, *Benigni v. City of Hemet*, 879 F.2d 473 (9th Cir 1988).

> It is clear that qualified immunity is an affirmative defense, *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982), and we think it equally clear that the burden of proving the defense lies with the official asserting it, *Id*. at 819, 102 S.Ct. at 2738.

879 F.2d at 479.

Recently, in *Franchise Tax Bd. of Cal. v. Hyatt*, ___Nev.___, 335 P.3d 125 (2014), the Nevada Supreme Court clarified the scope of discretionary function immunity in Nevada.

> This court's treatment of discretionary-function immunity has changed over time. In the past, we applied different tests to determine whether to grant a government entity or its employee discretionary-function immunity. *See, e.g., Arnesano v. State ex rel. Dep't of Transp.*, 113 Nev. 815, 823–24, 942 P.2d 139, 144–45 (1997) (applying planning-versus-operational test to government action), abrogated by *Martinez*, 123 Nev. at 443–44, 168 P.3d at 726–27; *State v. Silva*, 86 Nev. 911, 913–14, 478 P.2d 591, 592–93 (1970) (applying discretionary-versus-ministerial test to government conduct), abrogated by *Martinez*, 123 Nev. at 443–44, 168 P.3d at 726–27. We also recognized an exception to discretionary-function immunity for intentional torts and bad-faith conduct. *Falline v. GNLV Corp.*, 107 Nev. 1004, 1009 & n. 3, 823 P.2d 888, 892 & n. 3 (1991) (plurality opinion). More recently, we adopted the federal two-part test for determining the applicability of discretionary-function immunity. *Martinez*, 123 Nev. at 444–47, 168 P.3d at 727–29 (adopting test named after two United States Supreme Court decisions: *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), and *United States v. Gaubert*, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)). Under the *Berkovitz–Gaubert* two-part test, discretionary-function immunity will apply if the government actions at issue '(1) involve an element of individual judgment or choice and (2) [are] based on considerations of social, economic, or political policy.' *Martinez*, 123 Nev. at 446–47, 168 P.3d at 729. When this court adopted the federal test in *Martinez,* we expressly dispensed with the earlier tests used by this court to determine whether to grant a government entity or its employee immunity, *id*. at 444, 168 P.3d at 727, but we did not address the *Falline*

exception to immunity for intentional torts or bad-faith misconduct.

335 P.3d at 135.

In analyzing whether the exception to discretionary immunity for intentional torts or bad-faith conduct, as set forth in *Falline,* was still good law in Nevada, the *Hyatt* Court looked to other jurisdictions which utilize two separate lines of case law.  It contrasted "Courts that consider whether an employee subjectively intended to further policy by his or her conduct," as exemplified by the Second Circuit's decision in *Coulthurst v. United States,* 214 F.3d 106 (2nd Cir., 2000), with "Courts that decline to recognize bad-faith conduct that calls for an inquiry into an employee's subjective intent," as exemplified by the Tenth Circuit case of *Franklin Sav. Corp. v. United States,* 180 F.3d 1124 (10th Cir. 1999).  *Hyatt,* 335 P.3d at 137-139.

> The difference in the *Franklin Savings* and *Coulthurst* approaches emanates from how broadly those courts apply the statement in *Gaubert* that "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred ..., but on the nature of the actions taken and on whether they are susceptible to policy analysis." 499 U.S. at 325, 111 S.Ct. 1267. *Franklin Savings* interpreted this requirement expansively to preclude any consideration of whether an actor's conduct was done maliciously or in bad faith, whereas  *Coulthurst* applied a narrower view of subjective intent, concluding that a complaint alleging a nondiscretionary decision that caused the injury was not grounded in public policy. Our approach in *Falline* concerning immunity for bad-faith conduct is consistent with the reasoning in *Coulthurst* that intentional torts and bad-faith conduct are acts "unrelated to any plausible policy objective[ ]" and that such acts do not involve the kind of judgment that is intended to be shielded from "judicial second-guessing." 214 F.3d at 111 (internal quotations omitted). **We therefore affirm our holding in *Falline* that NRS 41.032 does not protect a government employee for intentional torts or bad-faith misconduct, as such misconduct, "by definition, [cannot] be within the actor's discretion.**" *Falline*, 107 Nev. at 1009, 823 P.2d at 891–92.

335 P.3d at 139-140.

Similarly, in the instant case, the bad-faith misconduct of deliberate inaction and indifference on the part of Defendants' are also not within the actors' discretion. Because Nevada does not include bad-faith conduct under the umbrella of immunities set forth in NRS 41.032(2), Defendants' actions are not immunized, pursuant to *Falline* and *Hyatt*. Moreover, as *Hyatt* clearly placed Nevada among the jurisdictions, such as *Coulthurst*, that "consider whether

an employee subjectively intended to further policy by his or her conduct," 335 P.3d at 138, that requisite "state of mind" analysis is an appropriate question to be determined by the trier of fact at trial. *State v. Second Judicial Dist. Court ex rel. County of Washoe,* 118 Nev. at 616, 55 P.3d at 424 (2002). Qualified immunity will not protect the plainly incompetent or those who knowingly violate the law. *Preschooler II v. Clark County School Bd. of Trustees,* 479 F.3d 1175, 1180 (D.Nev. 2007). Therefore, dismissal on qualified immunity grounds is inappropriate at this juncture.

### O.    PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES IS PROPERLY PLED.

#### 1.    Plaintiffs Have Pled Sufficient Facts To Warrant An Award Of Punitive Damages Under Section 1983.

Plaintiffs acknowledge that no punitive damages are available for Claims I, II and III. Punitive damages, however, are available for Plaintiffs' claims arising under Section 1983, i.e., Claims IV, V, VI and VII.   Punitive damages are proper in Section 1983 cases when the defendant not only has acted with evil motive or intent or with reckless or callous indifference, but also has acted in an oppressive manner. *Dang v. Cross,* 422 F3d 800, 806–11 (9th Cir.2005). The pleading standard for punitive damages is the same as the standard for pleading the underlying cause of action. *Coppola v. Smith,* 982 F. Supp. 2d 1133, 1144 (E.D. Cal. 2013) ("Although malice, intent, and knowledge may generally be alleged, the allegations that request punitive damages must still meet the standards elaborated under *Iqbal* and *Twombly*").   To satisfy *Iqbal* and *Twombly* a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 679 (*citing Twombly,* 550 U.S. at 556).   There is no question that Plaintiffs have pled facts from which the Court may draw the reasonable inference that Defendants acted with reckless or callous indifference and in an oppressive manner. These facts include the following:

- At least three weeks prior to Hailee's suicide, Defendants were made aware of the severe and protracted bullying Hailee was being subjected to. (Paragraph: 32, 34.)

- Despite this knowledge Defendants ignored NRS 388.1351(1), which states: "A teacher or other staff member who witnesses a violation of NRS 388.135 or receives information that a violation of NRS 388.135 has occurred shall verbally

report the violation to the principal or his or her designee on the day on which the teacher or other staff member witnessed the violation or received information regarding the occurrence of the violation." (Paragraph: 33, 37.)

- Defendants likewise ignored NRS 388.1351(2), which required that they report the bullying to Hailee's parents. (Paragraphs: 38, 39.)

- Defendants also ignored mandated District Procedure by not properly tracking or investigating the report of Hailee being bullied. (Paragraphs: 36, 37.)

- After Hailee's death the Defendants lied about their knowledge of Hailee's bullying prior to her death and the fact that they ignored their statutory obligation to inform Hailee's parents. (Paragraph 41-51.)

Obviously, Plaintiffs have more than met the pertinent pleading standard and this Court must reject Defendants' request to strike Plaintiffs' petition for punitive damages.

### 2. Plaintiffs Have Pled Sufficient Facts To Warrant An Award Of Punitive Damages For Claims VIII Through XI

Claims VIII through XI are not subject to the limits imposed by NRS 41.035(1) because the tortious conduct alleged by Plaintiffs did not arise "out of an act or omission within the scope of the [Defendants'] public duties or employment." NRS 41.035(1). Claims VIII and XI allege that the named Defendants transmitted a false and defamatory statement, i.e., that "Hailee's Dad beat her," to another parent in the school district. Claims IX and XI allege that the named defendant posted on Facebook derogatory statements regarding Plaintiffs. Neither the transmission of a defamatory statement to another parent nor the posting of statements on a personal Facebook page constitute acts within the scope of employment with CCSD. As such, NRS 41.035(1) does not bar punitive damages here.

Under Nevada law, punitive damages are appropriate "in an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied." NRS 42.00. State law "sets the substantive requirements that must be met in order to obtain punitive damages, but Federal Rules of Civil Procedure 8 and 9 sets the pleading standards that must be met in federal court." *Coppola*, 982 F. Supp. 2d at 1144. Again, there is no question that Plaintiffs have met the standard set by *Iqbal* and *Twombly* and have pled facts which, at the very least, allow the court to draw the reasonable inference that the named defendants are guilty of oppression, fraud

or malice. These facts include the following:

- In respect to Claims IX and X: Sabreena Adams was the school guidance counselor at TWMS.  In that capacity she had access to sensitive information relating to the lives of the students under her charge, including Hailee.  School policy and federal law required Adams to maintain the confidentiality of the information she obtained by way of the access to students that her position granted her.  In spite of this, she posted on Facebook potentially embarrassing information about Hailee's family which she obtained by way of her position at TWMS. She also posted on Facebook information about Hailee's suicide which she obtained through her position as the school's counselor.  *See*, Paragraphs: 44, 108-111, 114-117.

- In respect to Claims VIII and XI: Andrea Katona drafted a false and misleading chronology in order to evade liability for her and the other Defendant's role in Hailee's death.  The false chronology included an outrageously false and defamatory statement: "that Hailee's Dad beat her."  On March 31, 2014, CCSD deliberately circulated this statement to a third party, another student in the school district. *See*, Paragraphs: 51-53, 103, 104, 119, 120, 122, and 123.

Once again, there can be no questions that Plaintiffs have more than met the pertinent pleading standard and this Court must reject Defendants' request to strike Plaintiffs' petition for punitive damages.

### 3.   Defendants' Argument That Plaintiffs Must Specify Which Claims Give Rise To Punitive Damages Is Not Supported By Any Legal Authority.

Defendants argue that because Plaintiffs failed to "identify which specific claim(s) they are asking punitive damages to be awarded," the Complaint is somehow deficient.  Motion at 55. Defendants cite no law in support of this theory; and, indeed, there is none.  As noted already, the pleading requirement for punitive damages is the same as it is for underlying claims.  A plaintiff need only to allege facts which "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).   The facts which describe the conduct of the Defendants as set forth in the claims themselves, including the allegations incorporated therein, satisfy this pleading requirement and implicitly identify which claims are subject to punitive damages.

For all of the foregoing reasons this Court must reject Defendants' request to strike Plaintiffs' petition for punitive damages.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss. In the event the Court determines that any claim is inadequately pled, Plaintiffs request that the Court grant them leave to amend.

Dated this 20th day of January 2015

Respectfully submitted by:

 /s/ Allen Lichtenstein
Allen Lichtenstein, Esq.
Nevada Bar No. 3992
Staci Pratt, Esq.
Nevada Bar No. 12630
Allen Lichtenstein, Ltd.
3315 Russell Road, No. 222
Las Vegas, NV 89120
Tel: 702-433-2666
Fax: 702-433-9591
allaw@lvcoxmail.com
stacijpratt@gmail.com

James A. Quadra, Esq. (Admitted *pro hac vice*)
Rebecca Coll, Esq. (Admitted *pro hac vice*)
Quadra & Coll, LLP
649 Mission Street, 5th Floor
San Francisco, CA 94105
Tel:  415-426-3502
jquadra@quadracoll.com
rcoll@quadracoll.com

*Attorneys for the Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that I served a copy of the foregoing Plaintiff's Response and Countermotion to all parties via the Court's electronic filing system on January 20, 2015.

/s/ Allen Lichtenstein