**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JASON LAMBERTH, JENNIFER LAMBERTH,
et al.,
                  Plaintiffs,

vs.

CLARK COUNTY SCHOOL DISTRICT, et al.,

                  Defendants.

)
)
)
)
)
)
)
)
)
)

Case No. 2:14-cv-02044-APG-GWF

**ORDER**

This matter is before the Court on Defendants' Motion to Compel (#26), filed on May 28, 2015; Plaintiffs' Response (#38, #39), filed on June 15, 2015; and Defendant's Reply (#47), filed on June 25, 2015. The Court conducted a hearing in this matter on June 29, 2015.

**BACKGROUND**

This action for declaratory relief, injunctive relief and damages arises out of the December 12, 2013 suicide of Hailee Joy Lamberth, a 13 year old student at Thurman White Middle School in Clark County, Nevada. The action has been brought by Hailee's parents, individually and in their capacities as the representatives of Hailee's estate. Hailee's brother, Jacob Lamberth, who was six years old at the time of his sister's death, is also named as a plaintiff. Plaintiffs allege that Hailee committed suicide because of bullying that she was subjected to at school. Plaintiffs allege that the Defendants breached their duties to provide parental notification of the bullying which, if known, would have allowed Hailee's parents to take action to prevent her suicide. Plaintiffs have also alleged claims for defamation and false light relating to a statement allegedly published by a defendant that Hailee's dad beat her. Defendants have filed a motion to dismiss which is still pending. Without discussing all of the asserted defenses, Defendants state that they were not on notice of any reports of bullying that gave rise to a duty to notify Hailee's parents. Defendants also

1  dispute whether Hailee committed suicide because of bullying.  As to the alleged defamatory

2  statement, Defendants reserve as a potential defense that the statement was true.

3      During the hearing on June 29, 2015, the Court resolved part of Defendants' motion by

4  ordering Plaintiffs to supplement their responses to Defendants' first and second set of requests for

5  production and identify which produced documents are responsive to which requests for

6  production.  The Court did not state a date by which Plaintiffs are required to serve their

7  supplemental responses.  Accordingly, it is ordered that Plaintiffs shall serve their supplemental

8  responses to Defendants' requests for production within fourteen (14) days of the date of this order,

9  unless the time for response is extended by stipulation of the parties or by further court order.

10      Defendants' motion also requested that Plaintiffs Jason and Jennifer Lamberth be ordered to

11  provide signed verifications to their answers to interrogatories.  This issue was resolved when

12  Plaintiffs served the verifications shortly after the motion to compel was filed.  Defendants also

13  moved for an award of costs, including reasonable attorney's fees, pursuant to Fed.R.Civ.Pro.

14  37(a)(5)(A) or (C).  Plaintiffs made a counter request for an award of attorney's fees or sanctions.

15  For the reasons stated on the record, the Court denied an award of costs and attorneys fees to either

16  party.

17      This leaves remaining the Defendants' motion to compel answers to interrogatories by

18  minor Plaintiff Jacob Lamberth.  According to the interrogatory answers of Jacob's father, Jason

19  Lamberth, after Hailee failed to pick up Jacob from his school on December 12, 2013, Mr.

20  Lamberth retrieved Jacob from his school, and then went in search of Hailee.  After determining

21  that Hailee was not at her school, Mr. Lamberth and Jacob Lamberth returned home and discovered

22  Hailee's body.  Hailee had used a firearm to commit suicide.  *Motion (#26), Exhibit 4a, Plaintiff*

23  *Jason Lamberth's Response to Interrogatory No. 26.*  Mrs. Lamberth also described the traumatic

24  scene in the family residence immediately after the discovery of Hailee's body.  Mrs. Lamberth

25  states that upon her arrival at the home, she took Jacob into her bedroom.  *Motion (#26) Exhibit 4b,*

26  *Plaintiff Jennifer Lamberth's Response to Interrogatory No. 26.*

27      Defendants served interrogatories on minor Plaintiff Jacob Lamberth which contain the

28  same questions that were directed to his parents.  *Motion (#26), Exhibits 4a, 4b* and *6.*  Plaintiff

Jacob Lamberth's responses to the interrogatories were signed on his behalf by Plaintiffs' counsel. Whether objected to or not, Jacob's interrogatory responses state: "Plaintiff responds that he has no knowledge at this time of any information beyond that set forth in the responses of Jennifer and Jason Lamberth to this interrogatory." *Exhibit 6.* Defendants argue that these responses do not constitute actual answers by Jacob and there is no indication that the interrogatories were presented to Jacob for his response. This appears to be confirmed by the Plaintiffs. *See Plaintiffs' Response (#38), pg. 20.* Following a "meet and confer" process between counsel, Defendants agreed to limit their requests for actual answers from Jacob Lamberth to Interrogatory Nos. 17-20, 23-24 and 27. Plaintiffs, however, declined to supplement Jacob's responses to these interrogatories.

The subject interrogatories request the following information: Interrogatory No. 17 asks whether prior to December 12, 2013, Jacob was ever informed or believed that Hailee attempted to take her own life. Interrogatory No. 18 asks whether, on or after December 12, 2013, Jacob was ever informed or believed that Hailee had attempted to take her own life at any time other than the actual suicide on December 12, 2013. Interrogatory No. 19 asks whether Hailee ever expressed to Jacob thoughts about taking her own life. Interrogatory No. 20 asks, for the period of January 1, 2012 through December 12, 2013, whether Hailee ever discussed depression with Jacob. Interrogatory No. 23 asks that if Jacob was ever told by Hailee or anyone else that Hailee wanted to kill herself, that he provide specified information about each occasion on which such information was conveyed to him. Interrogatory No. 24 asks that if Jacob was ever told by Hailee or anyone else that Hailee wanted to injure (but not kill) herself, that he provide specified information about each occasion on which such information was conveyed to him. Interrogatory No. 27 asks Jacob if he had any communications with Hailee on December 12, 2013 between 9:00 a.m. and the time of her death, and if so, that he provide specified information regarding such communication(s). *Motion (#26), Exhibit 6.*[1]

---

[1] Mr. and Mrs. Lamberth answered Interrogatory Nos. 17-20, 23-24 in the negative. *Motion (#26), Exhibits 4a and 4b.* In response to Interrogatory No. 27, they identified a text message that Hailee sent to them on December 12, 2013. *Id.*

1   Defendants argue that Jacob Lamberth may have personal knowledge responsive to the

2   foregoing interrogatories.  Defendants therefore request that the Court order that these

3   interrogatories be presented to Jacob and that his actual answers be obtained and provided to the

4   Defendants.  Defendants also request that Plaintiffs provide certification that the interrogatories

5   were presented to Jacob Lamberth and that he answered them to the best of his ability.

6   Plaintiffs argue that Defendants should first take the depositions of Jacob's parents and

7   therapist before Jacob is required to answer the interrogatories.  Plaintiffs argue that the deposition

8   testimony of Jacob's parents and therapist may make it unnecessary for him to answer the

9   interrogatories.  Defendants oppose this request on the grounds that they will want to question Mr.

10  and Mrs. Lamberth and the therapist at deposition about Jacob's answers to interrogatories.

11  Plaintiffs reply that, if necessary, Mr. and Mrs. Lamberth will appear for a follow-up deposition

12  after Jacob's answers to interrogatories are provided.

13  Although Defendants have not noticed Jacob's deposition, they reserve the right to take his

14  deposition in addition to obtaining his written answers to interrogatories.  Plaintiffs oppose the

15  taking of Jacob's deposition.  They argue that Jacob should only be required to answer limited

16  written questions with the assistance of a court-appointed therapist.  Plaintiffs submitted under seal

17  a declaration by Jacob's mental health therapist, Annise Prewitt, MSW, LCSW.  *Sealed*

18  *Declaration of Annise Prewitt (#39-2).*  Ms. Prewitt states that Jacob suffered post-traumatic stress

19  disorder arising out of his experiences relating to his sister's death, but that his condition has

20  improved significantly with treatment.  She states that it would be detrimental to Jacob's well-being

21  to be subjected to a series of questions about Hailee's death, especially outside the therapeutic

22  process.  She states that if Jacob must be asked questions about Hailee, he should be questioned (a)

23  one time, (b) briefly, and (c) in a safe environment.  She further states that a court-appointed

24  licensed therapist could work with Jacob and his parents to provide answers to the list of written

25  questions.

26  ## **DISCUSSION**

27  The Court recognizes the seriousness of the mental trauma suffered by Jacob Lamberth as a

28  result of his sister's tragic death, especially in view of the fact that he was present when Hailee's

4

body was discovered.  The Court also recognizes that parties or witnesses may experience additional mental distress by being required to testify about underlying traumatic events, and by being confronted with opposing and conflicting allegations or information.  This concern is heightened in the case of child parties or witnesses.  Although Mr. and Mrs. Lamberth must accept the burdens and stress of litigation that result from their voluntary decision to file this civil action, Jacob Lamberth presumably did not independently decide to be a plaintiff in this case.  Nor is it likely that he has the maturity to fully understand the requirements imposed on a party in litigation.

On the other side, Defendants are entitled to reasonably defend themselves against Plaintiffs' claims and allegations.  Defendants have raised legitimate issues regarding the circumstances that led to Hailee's death, including whether she was, in fact, subjected to bullying at school, whether such bullying caused her to commit suicide, and whether her parents were aware of the bullying or of other factors that may have affected Hailee's mental state prior to her death. Defendants are reasonably entitled to explore these matters in discovery.  Interrogatory Nos. 17-20, 23-24, and 27 are directed at determining if the Plaintiffs have any information relating to whether Hailee attempted to take her own life prior to December 12, 2013, or whether she expressed suicidal thoughts or was depressed.  Such information is clearly relevant to the claims and defenses in this case.  Although Mr. and Mrs. Lamberth have answered these interrogatories in the negative, it is possible that Jacob might have knowledge or information different from theirs.

Courts, while mindful of the adverse emotional effect that discovery may have on a child plaintiff or witness, have generally refused to preclude an opposing party from obtaining the child's testimony on relevant and material issues in the case.  In deciding what restrictions, if any, to impose on discovery directed to a young child party or witness, the court "must compare 'the hardship to the party [or person] against whom the discovery is sought, if discovery is allowed, with the hardship to the party seeking discovery if discovery is denied.'"  *Arassi v. Weber-Stephen Products LLC*, 2014 WL 1385336 (E.D.Wis. 2014),  at *2, quoting *Marrese v. American Academy of Orthopedic Surgeons*, 726 F.2d 1150, 1159 (7th Cir. 1984 (en banc).  The court further stated that the party opposing discovery has the burden of showing that the discovery is overly broad,

1    unduly burdensome or not relevant.[2]

2        In *Arassi*, husband and wife plaintiffs brought an action for personal injury damages that the

3    husband suffered while attempting to assemble a gas grill.  The plaintiffs' 14 and 10-year-old

4    daughters were present in the house when the accident occurred and also had knowledge of the

5    effect that their father's injuries had on him and the family.  Plaintiffs opposed the taking of the

6    daughters' depositions on the grounds that it would be detrimental to their mental health and

7    because the defendant could obtain the sought for information through alternative means.  The

8    court considered the fact that the daughters were receiving mental health treatment and that their

9    therapist had written a letter regarding the potential harm that would occur if they were required to

10   testify.  The court also noted "that litigation can be anxiety-inducing for laypersons, especially for

11   children of a young age."  The court nevertheless concluded:

12              In the end, however, I am not persuaded that the plaintiffs have
             shown with specificity that deposing the children would be
13              irreparably harmful to them.  The cursory (perhaps, understandably
             so) and conclusory letters from the two mental health providers
14              disclose very little on which I can make a specific finding of harm.
             Beyond that, plaintiffs have not shown that there are no alternatives
15              other than quashing the subpoenas to address any potential harm to
             the children. . . . In other words, I am not persuaded that measures
16              and limitations cannot be fashioned to protect the children from any
             irreparable harm.

17       *Id.*, 2014 WL 1385336, at *2.

18       The court also noted that "[t]hough young, the children are fact-witnesses as they were at

19   home on the day of the accident," and "may also possess information on changes in their home life

20   which plaintiffs have asserted as part of their claim.  Although other witnesses have been deposed

21   as to both matters, the children may possess different facts and perspectives."  *Id.* at *3.  In order to

22   protect the children from unnecessary distress during the taking of their depositions, the court

23   imposed the following limitations: (1) the parties were to agree on a location for the depositions

24

25   _____

26       [2] District courts in the Ninth Circuit, including Nevada, impose the same burden on the party
     opposing discovery.  *In re Suzuki*, 2014 WL 69083845, *2 (D.Haw. 2014), citing *Wells Fargo Bank, N.A. v.*
27   *Iny*, 2014 WL 1796216, *2 (D.Nev. 2014) (citing *Painters Joint Comm. v. Emp. Painters Trust Health &*
     *Welfare Fund*, 2011 WL 457449, at *5 (D.Nev. 2011) and *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429
28   (9th Cir. 1975).

which could be plaintiffs' residence, plaintiffs' lawyer's office or the courthouse; (2) the court would be available to supervise the conduct of the deposition; (3) the children would not be questioned on certain matters that were not pertinent to their knowledge; and (4) the deposition of each child was limited to 45 minutes in duration.

In *Graham v. City of New York*, 2010 WL 3034618 (E.D.N.Y. 2010), the plaintiff-father filed suit on behalf of himself and his son against the city and its police officers who allegedly forcibly removed the plaintiff from his vehicle, handcuffed him and placed him in a police vehicle. The plaintiff-child, who was four-years-old at the time of the incident, was in the vehicle. In overruling a magistrate judge's order barring the plaintiff-child's deposition, the court stated that defendants were entitled to discover the child's "testimony on the critical and very meaningful issue of [his] consciousness of confinement, an element of [his] false arrest claim." *Id.* at *4. The court stated that the child's testimony, including his lack of memory, could provide support for defendants' summary judgment motion. The child's testimony was also relevant to the assessment of damages. The court stated that plaintiffs' assertion that the child would be traumatized by a deposition was unsupported. The court also relied on the assurances of the defendant's counsel that he would proceed cautiously and sensitively in questioning the child. The district judge referred the matter back to the magistrate judge to decide whether the child was mentally competent to testify, and if so, to fashion rules governing the conduct of the deposition.

In *Kuyper v. Board of County Com'rs of Weld County*, 2010 WL 4038831 (D.Colo. 2010), the court denied a motion to quash the deposition of a seven-year-old minor plaintiff. The plaintiff's mother alleged that defendants were negligent in placing the child, then age three, in a foster home where the child was sexually assaulted. In holding that defendants were entitled to take the child's deposition, the court stated:

> Here, unlike [*Graham v. City of New York*,] a professional has opined that the questioning could cause substantial harm to K.K. In *Gray v. Howlett Lumber Co.*, No. 051645A, 2007 WL 2705748 (Mass.Super. Aug. 9, 2007), the court determined that despite such allegations made by the ten-year-old child's counselor, "the Court is not satisfied that the concerns expressed by the child's counselor are sufficient to justify precluding D'Von's deposition. However, the risk to D'Von's mental health does warrant the placement of reasonable restrictions on the manner in which D'Von is deposed." *Id.* at *1. The Court

makes the same conclusion here. *See also In re Transit Management of Southwest Louisiana, Inc.*, 761 So.2d 1270 (La. 2000) (allowing deposition despite seven-year-old child's pediatrician and psychologist testifying that deposition would cause considerable emotional distress.

*Kuyper*, 2010 WL 4038831, at *2.

The court scheduled a follow-up hearing to consider reasonable restrictions on the deposition, including a three hour time limit, the court officiating at the deposition, and having the deposition conducted in the courthouse.

In *Galbreath v. Braley*, 733 S.E.2d 412 (Ga.App. 2012), the court overruled a trial court's protective order in a child custody matter, barring the deposition of a 13-year-old female whom the defendant was accused of molesting. The plaintiff, who was defendant's ex-wife, alleged that defendant's conduct warranted the suspension of his visitation rights with his son. The trial court granted the protective order even though it found that the 13-year-old female's testimony was both relevant and highly important to defendant's defense to the allegations against him. The appellate court remanded the case to the trial court to consider whether and to what extent the deposition of the witness could be taken without exacerbating the psychological harm that might have occurred due to the alleged molestation. The court set forth a number of conditions that the trial court might impose in the supervising the taking of the deposition. *Id.* at 415.

In *Doe v. New Fairfield Board of Education*, 2014 WL 7271522 (D.Conn. 2014), the court refused to bar the defendant school board from deposing the plaintiff's minor child whom it was accused of failing to protect from sexual harassment by an older student when the child was in the sixth grade. The plaintiffs submitted declarations by the child's treating psychologist and a rabbi and family friend, who was also a psychologist, stating that the child should not be asked any questions about the sexual abuse because of its adverse impact on her recovery. The court noted that these declarations were undermined by the family's statements that the child was more than happy to testify and wanted to testify at her abuser's criminal trial. The court, however, imposed limitations on the deposition, including that defendants not inquire into the child's past sexual behavior or predisposition, and that the deposition be conducted in the courthouse on a date that the court could oversee it.

1      The issue whether Jacob Lamberth should be required to appear for deposition is not yet

2 before the Court.  The above cases are also instructive, however, in regard to Defendants' motion to

3 compel Jacob to answer interrogatories.  Jacob may experience some emotional distress in

4 answering the subject interrogatories.  His answers can be obtained, however, in an environment

5 that is more protective and therefore less stressful than it will be if these questions are posed to him

6 at deposition.  The emotional stress that Jacob is likely to experience by being required to answer

7 these interrogatories is not so substantial as to preclude them from being asked and answered.  The

8 Court will therefore order Plaintiff Jacob Lamberth to answer Interrogatory Nos. 17-20, 23-24, and

9 27.  The Court leaves it to Jacob's parents and counsel, in consultation with Jacob's mental health

10 therapist, to determine the manner in which the interrogatories are presented to Jacob and his

11 answers are obtained, so long as Plaintiffs certify that the interrogatory questions have actually been

12 posed to Jacob and that he has answered each interrogatory to the best of his ability based on his

13 personal knowledge or lack thereof regarding the subject matter of the interrogatory.  The answers

14 to interrogatories may also be signed on Jacob's behalf by one or both of his parents.

15      Because it is reasonable to anticipate that there will be a dispute regarding the taking of

16 Jacob Lamberth's oral deposition, the Court directs the parties to further meet and confer on this

17 issue.  Without pre-determining whether Jacob's deposition will be allowed, the parties should

18 discuss whether a deposition pursuant to Rule 32 of the Federal Rules of Civil Procedure can be

19 avoided or limited by having Jacob answer additional interrogatories or written questions pursuant

20 Rule 31.  The parties should also discuss limitations on a possible oral deposition of Jacob,

21 including location, court supervision, a time limit for the deposition, and restrictions of the scope of

22 questioning.  Accordingly,

23      **IT IS HEREBY ORDERED** that Defendants' Motion to Compel (#26) is **granted**, in part

24 as follows:

25      1.      Plaintiffs shall serve their supplemental responses to Defendants' first and second

26 set of requests for production of documents on or before July 15, 2015.

27 . . .

28 . . .

9

2.      Plaintiff Jacob Lamberth shall answer Interrogatory Nos. 17-20, 23-24, and 27 in accordance with the foregoing provisions of this order.  Jacob's answers shall be served on Defendants on or before July 15, 2015.

3.      The date for response set forth in 1 and 2 above may be extended pursuant to stipulation of the parties, or pursuant to court order for good cause shown.

DATED this 1st day of July, 2015.


_____
GEORGE FOLEY, JR.
United States Magistrate Judge

10