# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

JASON LAMBERTH, individually and as estate representative of HAILEE JOY LAMBERTH; JENNIFER LAMBERTH, individually and as estate representative of HAILEE JOY LAMBERTH; and JACOB LAMBERTH,

Plaintiffs,

v.

CLARK COUNTY SCHOOL DISTRICT, *et al.*,

Defendants.

Case No. 2:14-cv-02044-APG-GWF

**ORDER DISMISSING FEDERAL CLAIMS AND REMANDING CASE TO STATE COURT**

(DKT. #5)

This case arises out of the tragic suicide of 12-year-old Hailee Joy Lamberth. Her parents, on their own behalf and as representatives of Hailee's estate, along with Hailee's brother Jacob, bring this lawsuit against the Clark County School District ("CCSD") and various school district employees. According to the Lamberths, school district employees knew Hailee was being bullied at school, but they did not protect her from further bullying and did not inform the Lamberths. The Lamberths contend the defendants' failure to notify them about the bullying deprived them of the opportunity to intervene and get Hailee counseling. Additionally, the Lamberths contend CCSD made a defamatory statement about Hailee's father, and an employee's Facebook post portrayed the Lamberths in a false light. They assert various claims for wrongful death, defamation, and false light. The plaintiffs' allegations, though distressing, do not constitute a violation of the Due Process Clause of the Constitution of the United States. Thus, I dismiss the plaintiffs' federal law claims, which are based on that Clause. I decline to exercise supplemental jurisdiction over the remaining state law claims, and I remand those claims to state court.

/ / / /

# I. BACKGROUND

Hailee was a student at Thurman White Middle School ("TWMS").[1] (Dkt. #1-1 at 6.) According to the complaint, Hailee was bullied at the school, starting in August 2013 and ending with her suicide on December 12, 2013. (*Id.* at 6.)  On September 27, 2013, Hailee received a voice mail message stating "Where are you Hailee?  I hope you died." (*Id.*)  One of Hailee's fellow students saw another student, C.H., push Hailee around and call her "fat" and "ugly." (*Id.* at 6-7.)  C.H. also left letters in Hailee's locker with messages such as "Drink Bleach and Die" and "Why don't you die?" (*Id.* at 7.)  The school previously had suspended C.H. for bullying other students. (*Id.*)

Another of Hailee's fellow students, C.G., reported seeing a student, J.J., call Hailee a "fat ass," "stupid bitch," and a "slut." (*Id.*)  According to C.G., J.J. had been bullying Hailee in gym class nearly every day for about two months but no one did anything to stop it. (*Id.*)  C.G. reported this conduct on TWMS's bullying website on November 20, 2013. (*Id.*)  In her report, C.G. stated that J.J. "made Hailee cry almost every day." (*Id.* at 7-8.)  C.G. identified the gym teacher, defendant Kim Jefferson, as a witness to these incidents. (*Id.* at 7.)  Jefferson did not report anything to the school's principal. (*Id.*)  Nevada Revised Statutes § 388.1351(1) requires a teacher who witnesses bullying[2] to report the violation to the principal the same day as the incident.

---

[1] The factual recitation is derived from the complaint's allegations, which I take as true for purposes of resolving the defendants' motion to dismiss. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937 (9th Cir. 2008).

[2] "Bullying" is defined in Nevada Revised Statutes § 388.122 as:

> a willful act which is written, verbal or physical, or a course of conduct on the part of one or more persons which is not authorized by law and which exposes a person repeatedly and over time to one or more negative actions which is highly offensive to a reasonable person and:
>
> 1. Is intended to cause or actually causes the person to suffer harm or serious emotional distress;
> 2. Exploits an imbalance in power between the person engaging in the act or conduct and the person who is the subject of the act or conduct;
> 3. Poses a threat of immediate harm or actually inflicts harm to another person or to the property of another person;

1
2
3
4
5
6

When a report is made on the TWMS website, an email is automatically generated and sent to the school administration notifying them that a report has been submitted. (*Id.* at 8.)  No one from TWMS advised Hailee's parents, Jason and Jennifer Lamberth, of the report that their daughter was being bullied. (*Id.* at 8-9.)  Nevada Revised Statutes § 388.1351(2) requires a principal to initiate an investigation into a report of bullying within one day and to provide written notice to the parents of any student involved in the report.

7
8
9
10
11

Three weeks after C.G. reported the bullying on TWMS's website, Hailee committed suicide. (*Id.* at 9.)  She left a note in which she stated "I only ask that you tell my school I killed myself so maybe next time people like [C.H.] wants to call someone pimple face or emo ass bitch, he won't." (*Id.*)  Hailee's body was discovered in the family home by her father and her brother Jacob, who was then six years old. (*Id.*)

12
13
14
15
16
17
18
19
20

In February 2014, Jason and Jennifer met with defendants Andrea Katona, who is TWMS's principal, and Andre Long, who is the Academic Manager for the area of CCSD that incorporates TWMS. (*Id.* at 5, 9.)  At this meeting, Katona and Long did not mention the November 2013 report of bullying. (*Id.* at 9.)  According to the complaint, Katona stated she had no reason to believe Hailee was bullied and thus had no reason to conduct an investigation. (*Id.*)  Katona also stated that after Hailee's death she had not investigated whether Hailee was bullied. (*Id.*)  Later that month, Jason spoke with defendant CCSD Board of Trustees[3] to discuss the learning environment at TWMS. (*Id.* at 10.)  None of the board members mentioned the November 2013 report. (*Id.*)

21
22
23

The Las Vegas Review Journal printed a news article about Jason's comments to the Board of Trustees. (*Id.*)  That prompted TWMS guidance counselor, defendant Sabreena Adams, to post to her Facebook page the following messages:

24
25
26

4. Places the person in reasonable fear of harm or serious emotional distress; or
5. Creates an environment which is hostile to a pupil by interfering with the education of the pupil.

27
28

[3] The individual board members (Erin A. Cranor, Linda E. Young, Patrice Tew, Stavan Corbett, Carolyn Edwards, Chris Garvey, and Deanna Wright) are named as defendants.

1

2

> Frustrating we have been working tirelessly to help ALL these students and still get painted as the bad guys.  Ps . . . Kid is NOT still at our school nor was he bullying her.

> [Katona] has gone above and beyond what any principal would ever do.  And she is still the monster.  We even bought her younger brother Christmas and bday presents at the parents['] request yet we[']re still the enemy.

(*Id.*; Dkt. #5-2.[4])  This Facebook post was seen by approximately 500 people. (*Id.*)

About two weeks later, Jason met with defendant Ron Kamman, a dean at TWMS. (*Id.* at 5, 10.)  Jason requested any files relating to his daughter, including any disciplinary files. (*Id.* at 10.)  Kamman stated no disciplinary file existed. (*Id.*)

Jason returned to the school later that same day and met with Katona. (*Id.*)  Katona turned over Hailee's disciplinary file, which included a computer entry stating that "It was reported using the bullying website that Hailee was being bothered in [gym] [redaction]. Deans investigated and handled the incident." (*Id.*)  The entry identified the incident date as November 21, 2013 and the location as the gymnasium. (*Id.*)  The disposition description states "conference student." (*Id.*)

According to the complaint, this was the first time Hailee's parents learned of any bullying and the November 2013 report. (*Id.*)  Jason emailed Katona asking why she had not previously mentioned it. (*Id.*)  Katona admitted she had failed to disclose the report earlier. (*Id.*)

Following this email exchange, CCSD initiated an investigation into the November 2013 report. (*Id.* at 10-11.)  TWMS employees interviewed C.G. and C.S., who both stated Hailee was being bullied. (*Id.* at 11.)

Jason met with CCSD's Superintendent, defendant Pat Skorkowski, on March 17, 2014. (*Id.*)  Skorkowski responded to Jason's questions in a written letter with attachments. (*Id.*)  One of those attachments was a chronology related to Hailee. (*Id.*)  According to the complaint, this

---

[4] The defendants have attached copies of the Facebook posts as an exhibit to their motion.  I can consider this exhibit without converting the motion to dismiss into one for summary judgment because the complaint "necessarily relies" on the Facebook posts, the complaint refers to the posts, the posts are central to some of the Lamberths' claims, and the Lamberths do not question the exhibit's authenticity. *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).

1    chronology was false. (*Id.*)  The timeline included language to the effect that Jason "beat" Hailee.

2    (*Id.*)  CCSD sent this chronology to a third-party parent at the school. (*Id.*)

3    Jason, Jennifer, and Jacob filed this lawsuit in state court asserting claims against CCSD,

4    the Board of Trustees, TWMS, Jefferson, Katona, Long, Kamman, Adams, and another TWMS

5    Dean, defendant April Barr.  The Lamberths assert claims against all the defendants for wrongful

6    death/negligence (count 1), wrongful death/negligence per se (count 2), negligent infliction of

7    emotional distress on behalf of Jason and Jacob for their discovery of Hailee's body (count 3),

8    and substantive due process violations (counts 4-7).  Jason and Jennifer Lamberth also bring a

9    defamation claim against all the defendants based on the statement in the chronology that Jason

10   "beat" Hailee (count 8).  Jason, Jennifer, and Jacob assert two claims against Adams based on her

11   Facebook post for negligent infliction of emotional distress (count 9) and unreasonable publicity

12   given to private facts (count 10).  Finally, Jason, Jennifer, and Jacob bring a false light invasion of

13   privacy claim against defendant Katona[5] for the statement in the chronology that Jason "beat"

14   Hailee (count 11).  Defendants removed the lawsuit to this court under 28 U.S.C. § 1331 based on

15   the constitutional claims in counts 4-7. (Dkt. #1.)

16   The defendants move to dismiss each of these claims on a variety of grounds.  The

17   plaintiffs oppose dismissal.

18   **II.  ANALYSIS**

19   In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken

20   as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v.*

21   *Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  However, I do not necessarily

22   assume the truth of legal conclusions merely because they are cast in the form of factual

23   allegations in the plaintiff's complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-

24   55 (9th Cir.1994).  A plaintiff must make sufficient factual allegations to establish a plausible

25   entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Such allegations

26

27   _____

[5] The caption for this count mistakenly identifies Adams as the defendant, but the complaint's
28   factual allegations identify Katona as the author of the chronology. (Dkt. #1-1 at 27.)

1    must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a

2    cause of action." *Id.* at 555.

3        **A.  Federal Law Claims under 42 U.S.C. § 1983 (Counts 4 – 7)**

4        Counts 4 through 7 assert § 1983 claims based on alleged substantive due process

5    violations under the Constitution of the United States.  Each of these claims is based on

6    allegations that the defendants failed to protect Hailee from bullying and also failed to notify her

7    parents about the November 2013 report.[6]

8        To state a § 1983 claim, a plaintiff must allege that "(1) the conduct complained of was

9    committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff

10   of a federal constitutional or statutory right." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir.

11   2011).  The defendants do not dispute they acted under color of state law.  The question is

12   whether the complaint adequately alleges the defendants deprived the Lamberths of a

13   constitutional right.

14       The due process clause "generally does not confer any affirmative right to governmental

15   aid, even where such aid may be necessary to secure life, liberty, or property interests," nor does

16   it "impose a duty on [the state] to protect individuals from third parties." *Id.* (quotation omitted);

17   *see also DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989) (stating the

18   due process clause's "purpose was to protect the people from the State, not to ensure that the

19   State protected them from each other").  Thus, generally, "a State's failure to protect an

20   individual against private violence simply does not constitute a violation of the Due Process

21   Clause." *DeShaney*, 489 U.S. at 197.

22

23   _____

24       [6] Count four is asserted on behalf of Hailee's estate against the individual defendants for violation
     of her substantive due process rights.  Count five is asserted on behalf of Hailee's estate against CCSD for
     violation of her substantive due process rights.  Count six is brought by Jason, Jennifer, and Jacob against
25   the individual defendants alleging the defendants' inaction deprived the Lamberths of their liberty interest
     in familial companionship with Hailee.  Count seven is the same as count six, but asserted against CCSD.
26   *See Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) (stating that "parents have a Fourteenth
     Amendment liberty interest in the companionship and society of their children" and "[o]fficial conduct
27   that shocks the conscience in depriving parents of that interest is cognizable as a violation of due process"
     (quotation omitted)).

28

1    This general rule is subject to two exceptions.  A state's "omission or failure to act may

2    give rise to a § 1983 claim" when either (1) "a special relationship exists between the plaintiff and

3    the state (the special-relationship exception)" or (2) "the state affirmatively places the plaintiff in

4    danger by acting with deliberate indifference to a known or obvious danger (the state-created

5    danger exception)." *Patel*, 648 F.3d at 971-72 (quotation omitted).

6         Here, the defendants allegedly failed to protect Hailee from other students bullying her,

7    and they allegedly failed to notify Hailee's parents about the November 2013 report.  The due

8    process clause does not impose a duty on the defendants to protect Hailee from other students'

9    bullying, nor does it confer a right on Hailee or her parents for governmental assistance to prevent

10   her suicide.  Accordingly, the defendants' alleged inaction does not violate the due process clause

11   unless either the special-relationship or the state-created danger exception applies.

12                        1.  Special Relationship

13        Mandatory school attendance, even when combined with the concept of *in loco parentis*,[7]

14   does not create a special relationship between a public school and its students for substantive due

15   process purposes. *Patel*, 648 F.3d at 972-73; *see also Vernonia Sch. Dist. 47J v. Acton*, 515 U.S.

16   646, 655 (1995) (stating, in dicta, that "we do not, of course, suggest that public schools as a

17   general matter have such a degree of control over children as to give rise to a constitutional duty

18   to protect" under *DeShaney*); *Morrow v. Balaski*, 719 F.3d 160, 170 (3d Cir. 2013) (en banc)

19   (collecting circuit court opinions reaching the same conclusion).  The defendants therefore were

20   not in a special relationship with Hailee or her parents for substantive due process purposes.

21                        2.  State-Created Danger

22        "The state-created danger exception creates the potential for § 1983 liability where a state

23   actor 'creates or exposes an individual to a danger which he or she would not have otherwise

24   faced.'" *Campbell v. State of Wash. Dep't of Soc. & Health Servs.*, 671 F.3d 837, 845 (9th Cir.

25   2011) (quoting *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006)).  To fall

26

27        [7] *In loco parentis* means a person who has "been entrusted with parent-like authority to care for,
     supervise, and, as necessary, discipline the child, even if that authority is limited or brief." *United States v.*
28   *Swank*, 676 F.3d 919, 923 (9th Cir. 2012).

within this exception, there must be "affirmative conduct on the part of the state in placing the plaintiff in danger" and the state must act "with deliberate indifference to a known or obvious danger." *Patel*, 648 F.3d at 974 (quotation omitted).  To determine whether the state-created danger exception applies, I consider: "(1) whether any affirmative actions of the official placed the individual in danger he otherwise would not have faced; (2) whether the danger was known or obvious; and (3) whether the officer acted with deliberate indifference to that danger." *Henry A. v. Willden*, 678 F.3d 991, 1002 (9th Cir. 2012).

Here, the Lamberths do not allege any affirmative action by any of the defendants.  They allege only inaction.  The basis of their § 1983 claims is that the defendants failed to notify Hailee's parents about the November 2013 report and failed to protect Hailee from further bullying.  These omissions do not qualify as affirmative acts.[8]  Regardless of how it is phrased, the substance of these claims is that the defendants failed to render aid.  But the due process clause "does not require the State to provide its citizens with particular protective services, [and] the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them." *DeShaney*, 489 U.S. at 196-97.  The Lamberths therefore have failed to state a claim under § 1983 for the defendants' failure to protect Hailee from other students bullying her or for failing to notify her parents of the November 2013 report.

The cases the Lamberths rely on do not compel a different result.  In *Armijo by and through Chavez v. Wagon Mound Public Schools*, the defendants engaged in affirmative acts by "suspending [a student] from school, which caused him to become distraught and to threaten

---

[8] *Compare Kennedy*, 439 F.3d at 1062 (finding affirmative acts creating danger where the police told a teen his neighbors accused him of molesting their daughter without first warning the neighbors they were going to confront him, as the officer had promised to do, after which the alleged child molester shot the accusing neighbors, killing one of them); *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (same, where police officer ejected an obviously drunk man from a bar and left him outside in nothing but jeans and a t-shirt on a cold night during which he froze to death); *Penilla v. City of Huntington Park*, 115 F.3d 707, 710 (9th Cir. 1997) (same, where police officers found a man in need of serious medical attention, cancelled his request for paramedics, dragged him off his porch into his house and locked him inside, where he died); *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992) (same, where state hospital supervisor assigned a nurse to work alone with a known, violent sex-offender who raped her); *Wood v. Ostrander*, 879 F.2d 583, 586, 591 (same, where police removed a woman from a car and then left her alone at night in a known high crime area where she was subsequently raped).

violence, and then taking him to his home and leaving him alone with access to firearms," even though they had information suggesting the student was suicidal. 159 F.3d 1253, 1264 (10th Cir. 1998). There is no allegation the defendants here had any indication Hailee was suicidal or that they engaged in affirmative conduct such as taking her home and leaving her unsupervised. The other three cases the Lamberths cite for the proposition that a school may be liable for a student's suicide were decided under state law, and thus do not analyze what constitutes an affirmative act under the state-created danger doctrine for a § 1983 substantive due process claim. *See Rogers v. Christina Sch. Dist.*, 73 A.3d 1, 6-7 (Del. 2013); *Estate of Girard v. Town of Putnam*, No. CV085002754-S, 2011 WL 783599, at *1 (Conn. Super. Ct. 2011); *Eisel v. Bd. of Educ. of Montgomery Cnty.*, 597 A.2d 447, 448 (Md. 1991).

I express no opinion whether the defendants may be liable under some other source of law. But the defendants' inactions and omissions as alleged in the complaint, distressing as they are, "simply do[] not constitute a violation of the Due Process Clause." *DeShaney*, 489 U.S at 202. I therefore dismiss the Lamberths' § 1983 substantive due process claims asserted in counts 4 through 7 of the complaint.

**B. State Law Claims**

All of the Lamberths' remaining claims arise under state law, and those claims are before me under supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). I may decline to exercise supplemental jurisdiction over a state law claim if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). Should one of these factors be present, I consider whether continuing to exercise supplemental jurisdiction promotes economy, convenience, fairness, and comity. *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997). Whether to decline the exercise of supplemental jurisdiction under § 1367(c) lies within my discretion. *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1090 (9th Cir. 2008).

I have dismissed the only claims supporting original jurisdiction in this court.  The Lamberths originally brought suit in state court, and now that all claims supporting removal have been dismissed, remand is appropriate.  The remaining claims raise novel issues of Nevada state law, including whether suicide constitutes a superseding intervening act.  The potential liability of state actors under state law for their alleged inaction is best resolved by the Nevada courts.  The case has not progressed so far in federal court that concerns about economy or convenience are implicated.  The Lamberths' state law claims should be resolved by the state court.  I therefore decline to exercise supplemental jurisdiction over the state law claims, and I remand this case to the Eighth Judicial District Court, Clark County, Nevada.

## III.  CONCLUSION

IT IS THEREFORE ORDERED that the defendants' motion to dismiss **(Dkt. #5) is GRANTED IN PART**.  I dismiss the plaintiffs' substantive due process claims asserted under 42 U.S.C. § 1983.

IT IS FURTHER ORDERED that I decline to exercise supplemental jurisdiction over the plaintiffs' remaining state law claims, and **this action is REMANDED** to the Eighth Judicial District Court, Clark County, Nevada.

DATED this 12th day of August, 2015.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE