UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JASON LAMBERTH, individually and as estate representative of HAILEE JOY LAMBERTH; JENNIFER LAMBERTH, individually and as estate representative of HAILEE JOY LAMBERTH; and JACOB LAMBERTH,<br><br>Plaintiffs,<br><br>v.<br><br>CLARK COUNTY SCHOOL DISTRICT, et al.,<br><br>Defendants. | Case No. 2:14-cv-02044-APG-GWF<br><br>**ORDER (1) DENYING LEAVE TO AMEND AND (2) GRANTING MOTION TO FILE SUR-REPLY**<br><br>(Dkt. #70, #88) |

     This case arises out of the tragic suicide of Hailee Joy Lamberth. Her parents, on their own behalf and as representatives of Hailee's estate, along with Hailee's brother Jacob, brought this lawsuit against the Clark County School District ("CCSD") and various school district employees. They allege that the defendants failed to protect Hailee from bullying by other students at her school and failed to notify her parents of the bullying, and that these failures ultimately led to her suicide. I previously dismissed the federal substantive due process claims and remanded the remaining state law claims to state court.

     The plaintiffs now move to amend, seeking to add facts to support their substantive due process claims in an effort to overcome dismissal. They also seek to add numerous other federal and state causes of action. The defendants oppose amendment.

     I deny leave to amend. The plaintiffs have not shown good cause to amend the scheduling order to allow their untimely amendment as to any of their claims. This is particularly true of their newly asserted claims. Additionally, allowing amendment at this late stage to add new federal claims would prejudice the defendants. Even if I extended the amendment deadline as to the original substantive due process claims, amendment would be futile because those claims still

allege only that the defendants failed to adequately protect Hailee from the acts of third parties. That does not constitute a violation under the substantive due process clause of the Constitution.

## I. BACKGROUND

I set forth the factual background in a prior Order (Dkt. #69), so I will not repeat the facts here except where necessary. The scheduling order set a May 26, 2015 deadline to amend the pleadings. (Dkt. #23 at 3.) The scheduling order stated that "[t]he parties understand that this deadline may be altered by the Court's ruling on the pending motion to dismiss." (*Id.*)

On July 30, 2015, the parties stipulated to extend certain deadlines contained in the scheduling order, but there was no request to extend the deadline to amend the pleadings. (Dkt. #64.) Rather, the stipulation stated that "[a]ll other dates, matters and procedures established by the Court's Discovery Plan and Scheduling Order (ECF No. 23) remain unchanged." (*Id.* at 4.) Less than two weeks later, I partially granted the defendants' motion to dismiss and remanded the remainder of the action to state court. (Dkt. #69.)

Within a month of my ruling, the plaintiffs moved to amend. (Dkt. #70.) The plaintiffs' proposed First Amended Complaint adds allegations, a multitude of new federal claims, and a new state law claim. The plaintiffs seek leave to assert for the first time federal claims for procedural due process violations; equal protection violations; Title IX and Title VI violations; and violations of the Rehabilitation Act, the Americans with Disabilities Act ("ADA"), and the Individuals with Disabilities Education Act ("IDEA"). (*Id.* at 60-89.)

The plaintiffs contend amendment is proper because newly discovered facts support amendment. The plaintiffs also argue amendment would not be futile and the defendants would not be prejudiced.

The defendants respond that the plaintiffs incorrectly rely on the liberal standard for amendment under Federal Rule of Civil Procedure 15. Instead, the defendants contend, the applicable standard is the good cause standard under Rule 16 because the scheduling order's deadline to amend the pleadings has long since passed. The defendants argue the plaintiffs cannot show good cause to extend the amendment deadline. Additionally, the defendants assert

that even under Rule 15, amendment is improper because they would be prejudiced and amendment would be futile.

## II. ANALYSIS

Where a party seeks to amend a pleading after expiration of the scheduling order's deadline for amending the pleadings, the moving party first must satisfy the stringent "good cause" standard under Federal Rule of Civil Procedure 16. *Amerisource Bergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). Rule 16(b)'s "good cause" standard centers on the moving party's diligence. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Johnson*, 975 F.2d at 609.

I may modify the scheduling order if its deadlines "'cannot reasonably be met despite the diligence of the party seeking the extension.'" *Johnson*, 975 F.2d at 609 (quoting Fed. R. Civ. P. 16 advisory committee's note (1983 amendment)). The good cause standard typically will not be met where the party seeking to modify the scheduling order has been aware of the facts and theories supporting amendment since the inception of the action. *See United States v. Dang*, 488 F.3d 1135, 1142-43 (9th Cir. 2007); *Royal Ins. Co. of Am. v. S.W. Marine*, 194 F.3d 1009, 1016-17 (9th Cir. 1999) ("Late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action.") (quotation omitted); *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (affirming the district court's denial of leave to amend where the plaintiff sought to add a claim based on facts that were available to the plaintiff before he amended his complaint).

Although Rule 16 does not require a showing of prejudice, I may consider whether prejudice would result to the party opposing amendment. *Coleman*, 232 F.3d at 1295. Prejudice has been found where the plaintiff moved to amend late in the proceedings, thereby requiring the defendant to go "through the time and expense of continued litigation on a new theory, with the possibility of additional discovery." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989) (quotation omitted); *see also MV Am. Queen v. San Diego Marine Constr. Corp.*,

708 F.2d 1483, 1492 (9th Cir. 1983) (denial of motion to amend upheld where new allegations would "totally alter the basis of the action" and necessitate additional discovery). Whether to modify the scheduling order's amendment deadline lies within my discretion. *Dang*, 488 F.3d at 1142-43.

If the moving party is able to satisfy the good cause standard under Rule 16, then I examine whether the amendment is proper under Rule 15(a). *Johnson*, 975 F.2d at 608. Under Rule 15(a)(2), I "should freely give leave when justice so requires." *See also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded."). I consider five factors to assess whether to grant leave to amend under Rule 15(a): (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended the complaint. *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013). Whether to grant leave to amend under Rule 15 lies within my discretion. *Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

The plaintiffs did not cite the correct standard in their motion and moved to amend only under Rule 15 even though the amendment deadline expired months ago. Nevertheless, I will consider the motion under both Rules 16 and 15.

The plaintiffs have not met their burden under Rule 16 of showing good cause to amend the scheduling order. In their motion, the plaintiffs contend that newly discovered evidence prompted the late-filed motion to amend. However, the plaintiffs do not show by citation to the record that the newly discovered evidence exists or that it is newly discovered. Although the plaintiffs contend this is not the summary judgment stage and they therefore do not need to cite to the record, the plaintiffs are requesting leave to amend after the deadline has expired on the basis that they have newly discovered evidence. They therefore cannot rest on their conclusory statements that the evidence exists and is newly discovered, particularly when it is clear that many of the newly asserted allegations and legal theories are not new.

For example, the first facts the plaintiffs identify as newly discovered are that Hailee was bullied by two students and that the bullying was motivated by her gender, disability, and race. (Dkt. #70 at 6 fact a.) They also identify as newly discovered that student C.H. called Hailee a "whore" and a "bitch" and that he pushed her. (*Id.* fact d.) However, the original complaint alleged that someone left a voicemail for Hailee mocking her seizures, and the defendants attached to their motion to dismiss a document indicating that someone had heard Hailee was bullied because of her epilepsy. (Dkt. #1-1 at 6; Dkt. #5-1 at 4.) The original complaint also identified by initials two different students who allegedly bullied Hailee and that C.H. pushed Hailee around and called her an "emo ass bitch." (Dkt. #1-1 at 6-7, 9.)

Similarly, the plaintiffs identify as newly discovered the fact that neither the principal nor the deans interviewed any of the students in Hailee's gym class. (Dkt. #70 at 8 fact l.) However, the original complaint already alleged that "[e]ven though Hailee was subjected to bullying at PE and in the locker room, no attempt to interview pupils with lockers in the vicinity was made or of other students in the class." (Dkt. #1-1 at 8; *see also id.* at 9 (alleging the principal did not conduct any investigation before or after Hailee's death).) Evidence attached to the defendants' motion to dismiss also identified some of the same facts the plaintiffs now rely on as newly discovered.[1]

Other allegedly new facts could have been discovered with reasonable diligence prior to the original complaint being filed, let alone before the amendment deadline expired. For example, the only allegations supporting the plaintiffs' new race-based claims are that J.J. and Hailee were of different races, J.J. bullied Hailee, and the school knew that J.J. bullied Hailee but did not adequately respond to protect Hailee.[2] However, the plaintiffs knew or with reasonable diligence should have known of these facts long before the amendment deadline expired. The

---

[1] (*Compare* Dkt. #70 at 8 facts m & n (allegations that defendant Ron Kamman spoke with Hailee but then did nothing more and did not tell Hailee's parents about it) *with* Dkt. #5-1 at 5 (stating that Kamman spoke with Hailee and deemed the incident an isolated one that was not bullying); *compare* Dkt. #70 at 12 fact cc (allegations that defendant Andrea Katona did not adequately investigate) *with* Dkt. #1-1 at 9 (alleging Katona did not adequately investigate).)

[2] There is no allegation J.J. used language that would suggest racial animus.

plaintiffs knew J.J.'s identity and knew or should have known her race. They knew J.J. had bullied Hailee because they alleged it in the original complaint. (Dkt. #1-1 at 7.) And they alleged in the original complaint that the school did not adequately protect Hailee in response to the report of J.J.'s bullying. (*Id.* at 7-9.)

Additionally, the plaintiffs refer to information from the Center for Disease Control's website regarding the risks associated with bullying. (Dkt. #70 at 11 (fact bb).) The plaintiffs state in their motion that "[t]his information and similar studies relating to the risks of bullying were readily available to Defendants at the time they received reports that Hailee was being bullied in 2013." (*Id.* at 12.) If this publicly available information was readily available to the defendants in 2013, then it was readily available to the plaintiffs as well. It therefore does not constitute newly discovered evidence.

The plaintiffs also do not show good cause to amend the deadline because their newly asserted legal theories were available from the start of the case or should have been investigated with reasonable diligence prior to the amendment deadline. For example, the plaintiffs seek to assert procedural due process claims based on the defendants' failure to provide the "mandatory parental notification created by Nevada state law, N.R.S. § 388.1351." (*Id.* at 60.) This theory was available from the outset of the case. The Nevada law, and any property right it allegedly creates, existed at the time of Hailee's death. Indeed, the plaintiffs relied heavily on the defendants' alleged noncompliance with this law in their original complaint. (Dkt. #1-1 at 4, 7-8, 9 n.1, 14-17, 21, 23.)

As discussed above, the plaintiffs also knew or should have known all facts supporting their race-based claims. Similarly, the plaintiffs knew C.H. had called Hailee a bitch and that there was a possibility Hailee had been bullied based on her disability. Thus, they could and should have attempted to develop facts supporting gender, race, and disability-based theories (including their theories under Title IX, Title VI, the Rehabilitation Act, the ADA, and the IDEA)

before the amendment deadline.[3] Alternatively, they could and should have sought an extension of that deadline. They did neither.

The plaintiffs' lack of diligence is further demonstrated by their failure to request an extension of the amendment deadline when the parties stipulated to extend other deadlines just two weeks before I entered my dismissal order. If the plaintiffs had newly discovered evidence to support amendment, they should have sought an extension at that time, but they did not. The plaintiffs admit in their reply brief that "it was the Court's dismissal of the Plaintiffs' federal claims that necessitated the filing of the Amended Complaint. Without the dismissal, Plaintiffs would not have sought to amend the Complaint in order to cure the deficiencies found by the Court." (Dkt. #79 at 14.) If true, then there is no good cause to extend the amendment deadline to allow the plaintiffs to assert their new legal theories because the plaintiffs would not have moved to add these claims had I not dismissed the substantive due process claims. The plaintiffs contend that they did not assert the new federal claims previously because, had I not dismissed their substantive due process claims, "it would have been a pointless exercise to amend the Complaint when all of the remedies available were already covered by existing claims." (Dkt. #92 at 5.) In other words, the plaintiffs made a strategic choice not to move for leave to add the newly asserted claims until after I had dismissed the substantive due process claims.

The plaintiffs argue they were "entitled to have the Court's ruling on the motion to dismiss before seeking to amend." (*Id.* at 4.) And, according to the plaintiffs, it would have been a waste of judicial resources to seek to amend their complaint prior to my ruling on the motion to dismiss. (*Id.* at 4, 7.) The plaintiffs cite no authority for these propositions. Amendment while a motion to dismiss is pending is common and may save judicial resources because a party may correct any pleading deficiencies before the court must address them.

---

[3] The plaintiffs did not propound any discovery until April 28, 2015 and did not schedule any depositions until July 17, 2015 (Dkt. #73 at 27), although they contend the parties have conducted extensive discovery throughout the discovery period. (Dkt. #79 at 12.) The plaintiffs did not initiate any discovery until less than a month before the amendment deadline was set to expire and did not timely move to extend the discovery deadline.

The plaintiffs also rely on the statement in the scheduling order that the amendment deadline may be altered by my dismissal ruling. The plaintiffs argue this shows "the parties contemplated that amending the complaint following the court's ruling on the motion to dismiss would be outside the scope of the scheduling order's deadline to amend." (*Id.* at 4.) But the scheduling order's statement was merely an acknowledgement that depending on when and what I ruled, the amendment deadline might be extended. It did not mean that the plaintiffs were not required to act diligently under Rule 16. Additionally, my dismissal order would have had no impact on any claims not asserted in the original complaint. Thus, this statement in the scheduling order does not provide any justification for the plaintiffs' failure to seek leave to add the newly asserted claims prior to dismissal.

Although prejudice to the defendants is not required under the Rule 16 analysis, prejudice exists here. The plaintiffs seek to add numerous new federal claims based on new theories, including that the defendants were deliberately indifferent to race, gender, and disability discrimination. These new claims and theories likely will require additional discovery.

Finally, the plaintiffs contend that they asked for leave to amend in their opposition to the motion to dismiss and amendment should be allowed even in the absence of a request for leave to amend. At the end of their opposition to the defendants' motion to dismiss, the plaintiffs requested that I grant leave to amend if "any claim is inadequately pled." (Dkt. #17 at 81.) This request does nothing to assist the plaintiffs with their newly asserted claims because their request sought only to correct deficiencies in any claim already asserted. Additionally, the plaintiffs' entire theory of the original complaint was that the defendants did not advise the Lamberths that Hailee was being bullied and did not do anything to protect Hailee from bullying. But, as I explained in the prior Order, "[t]he due process clause does not impose a duty on the defendants to protect Hailee from other students' bullying, nor does it confer a right on Hailee or her parents for governmental assistance to prevent her suicide." (Dkt. #69 at 7.) Thus, amendment was not warranted because "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393,

1395 (9th Cir. 1986); see also *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 926 (9th Cir. 2012) (en banc).

This is confirmed by the plaintiffs' proposed amended pleading. Even if the plaintiffs had shown good cause to amend the deadline to re-plead their substantive due process claims, I still would deny the plaintiffs' motion under Rule 15 because amendment would be futile.[4] The bulk of the additional allegations still allege only that the defendants failed to provide adequate protective services to Hailee by (1) not taking satisfactory measures to protect her from third parties bullying her and (2) not notifying her parents of the bullying.[5] As discussed in my prior Order, such allegations do not state a substantive due process claim.

Even the allegations that attempt to move beyond the theory that the defendants failed to act do not state a substantive due process claim. First, the plaintiffs allege that defendant Kim Jefferson told C.G. that Jefferson had already reported J.J.'s bullying and that Jefferson did so to dissuade C.G. from reporting it. (Dkt. #70 at 32-33.) But by the plaintiffs' own allegations, Jefferson did not succeed in dissuading C.G. from reporting the bullying. Rather, despite her conversation with Jefferson, C.G. made an online report the same day. (*Id.* at 33 (alleging

---

[4] The plaintiffs assert I should allow them to amend and then address the legal sufficiency of their claims if the defendants move to dismiss or for summary judgment. However, futility is a component of the analysis for whether to grant leave to amend under Rule 15. Thus, if the plaintiffs' claims are legally insufficient, amendment would be futile and it is proper to deny leave to amend.

[5] (*See* Dkt. #70 at 6 fact c (asserting the defendants "were indifferent to" and "took inadequate actions to prevent or stop bullying"), 7 facts g-h (asserting defendant Kim Jefferson did not record a bullying complaint, did not follow § 388.1351, and instead reported J.J. to a school counselor), 7 fact i (asserting defendant Sabreena Adams also did not follow the law and did not adequately discipline J.J.), 8-9 facts l-o (asserting defendant Kamman did not investigate, did not inform the Lamberths, and did not impose appropriate discipline on J.J.), 9 fact p (asserting defendant April Barr did not impose appropriate discipline on J.J.), 10 facts t-y & at 11 fact aa (alleging that the defendants should have contacted the Lamberths), 12 fact cc (alleging defendant Katona did not investigate adequately), 26 (alleging the defendants did not give notice to the parents and conducted an inadequate investigation), 27 (alleging the defendants "failed to acknowledge, provide notification of, address and/or investigate the persistent bullying" and "did not take the correct actions to prevent or stop the bullying"); 32-33 (alleging defendant Jefferson did not properly report J.J. bullying Hailee and defendant Adams did not properly report or discipline J.J.), 34 & 36 (alleging defendant Kamman did not properly investigate, did not discipline J.J., and did not inform Hailee's parents), 34 (alleging the defendants chose "not to investigate, contact her parents, or to impose significant discipline on the bully"), 35 (alleging Barr failed to discipline J.J.), 38 (alleging the defendants did not notify Hailee's parents).)

Jefferson tried to dissuade C.G. on November 20), 39 (identifying the date of C.G.'s online report as November 20).) Thus, Jefferson's alleged efforts to dissuade C.G. could not have had a causal effect to support a due process violation. Additionally, Jefferson's alleged actions did not place Hailee in "a more dangerous position than the one in which [the defendants] found [her]." *Penilla v. City of Huntington Park*, 115 F.3d 707, 710 (9th Cir. 1997). Hailee was already allegedly subject to bullying before Jefferson told C.G. not to report it. Thus, Jefferson's alleged conduct did not "place [Hailee] in danger that she otherwise would not have faced." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1063 (9th Cir. 2006).[6]

Second, the plaintiffs allege the defendants represented to Hailee through bullying training (1) that they would protect students from bullying and (2) that not intervening was tantamount to supporting the bully. (Dkt. #70 at 34-35.) The plaintiffs further allege the defendants interjected themselves into the bullying situation but then did not adequately respond, thereby sending a message to Hailee that the defendants were supporting the bullying against her. (*Id.* at 35.)

---

[6] Calling off private rescue efforts may result in a finding that the state actor engaged in affirmative conduct supporting a state-created danger theory under extreme circumstances. But those circumstances are not present here. For example, in *Ross v. United States*, the Seventh Circuit held that a county's policy of "cutting off private aid to drowning victims, even where the county's replacement protection would not effect a rescue" was unconstitutional when, pursuant to that policy, a county official prohibited well-trained, on-the-spot rescuers from attempting to save a child who was drowning in a lake. 910 F.2d 1422, 1424-25, 1430-31 (7th Cir. 1990). In contrast, the Ninth Circuit held there was no state-created danger to support a substantive due process claim where police officers "halted civilian rescue efforts" following a car crash. *Estate of Amos v. City of Page, Ariz.*, 257 F.3d 1086, 1089 (9th Cir. 2001). In *Amos*, a driver of one of the cars involved in an accident was seen running off into the desert. *Id.* The police officers arrived at the scene and instructed the civilians, who had been searching for the driver, to leave the scene. *Id.* The police then conducted their own search but did not find the driver, although they found blood in the car suggesting the driver was injured. *Id.* The Ninth Circuit ruled that the police had not put the driver in any worse condition than they found him, in part because the civilians were not well-trained rescuers and there was no reason to believe they would have found the driver had the police not called them off. *Id.* at 1092. Thus, "the probability that the officers' conduct made [the driver] worse off [was] extremely speculative," and "any danger that presented itself to [the driver] as a result of the state's action or inaction did not implicate due process." *Id.*
    This case is closer to *Amos* than to *Ross*. First, C.G. was a fellow student at Hailee's school, not someone who was specially trained to rescue Hailee from others' bullying. Thus, even if Jefferson called off C.G.'s private rescue efforts, "there is no reason to believe that [C.G.'s] rescue efforts would have been successful had [Jefferson] not intervened." *Id.* Indeed, the plaintiffs affirmatively allege that C.G.'s efforts were not successful because they allege that C.G.'s online report did not result in the defendants satisfactorily responding to the report to prevent further bullying.

Page 10 of 12

1   These allegations fail under the rationale set forth in *DeShaney v. Winnebago County Department of Social Services*. There, social workers and other local officials had received complaints that a father was abusing his son, Joshua. 489 U.S. 189, 191 (1989). They investigated the complaints and even placed Joshua in temporary custody of a hospital at one point. *Id.* at 191-92. But then they returned Joshua to his father's home. *Id.* at 192. Despite several more incidents indicating Joshua was being abused, no action was taken to remove him from the home or otherwise protect him. *Id.* at 192-93. Joshua's father eventually beat him so severally that Joshua suffered permanent brain damage. *Id.* at 193.

Joshua and his mother sued the county and its social workers, asserting substantive due process violations for not intervening to protect Joshua from his father's abuse. *Id.* They argued that "[h]aving actually undertaken to protect Joshua from this danger . . . the State acquired an affirmative 'duty,' enforceable through the Due Process Clause, to do so in a reasonably competent fashion." *Id.* at 197. The Supreme Court disagreed, explaining that such an affirmative duty arises when the State "so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs." *Id.* at 198, 200. This "affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* at 200. The Supreme Court specifically rejected the premise that the State was liable because it undertook an affirmative duty to protect Joshua due to previously having taken temporary custody of him. *Id.* at 201. The Court reasoned that when the State returned Joshua to his father's home, "it placed him in no worse position than that in which he would have been had it not acted at all." *Id.*

Likewise, here, the defendants did not place Hailee in a dangerous situation that she otherwise would not have faced, even if they expressed intentions to help her and actually intervened at one point. Rephrasing the defendants' alleged inadequate response measures as affirmative choices does not alter the substance of what the plaintiffs are alleging. They still allege that the defendants did not notify the Lamberths of the bullying and did not adequately

prevent third parties from bullying Hailee. The due process clause "does not require the State to provide its citizens with particular protective services, [and] the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them." *DeShaney*, 489 U.S. at 196-97; *see also Amos*, 257 F.3d at 1091 (stating there is no "right to competent rescue services" in the due process clause) (quotation omitted). Thus, the plaintiffs' amended allegations fail to state a claim under the substantive due process clause based on the defendants' failure to protect Hailee from other students bullying her or for not notifying her parents of the bullying. I therefore deny leave to amend.[7]

### III. CONCLUSION

IT IS THEREFORE ORDERED that the plaintiffs' motion to amend **(Dkt. #70) is DENIED**.

IT IS FURTHER ORDERED that the defendants' motion to strike or to file a sur-reply **(Dkt. #88) is GRANTED** to the extent that I have considered the attached sur-reply as well as the plaintiffs' response to the motion to strike or to file a sur-reply.

DATED this 7th day of December, 2015.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[7] The parties have filed various motions related to whether and to what extent filings in this case should be sealed. I will address those motions by separate order.